Exhibit 20

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

_____

GAVRILIDES MANAGEMENT COMPANY,

                Plaintiff,

vs.                            File No. 20-258-CB

MICHIGAN INSURANCE COMPANY,

      Defendant.

_____/


DEFENDANTS MOTION FOR SUMMARY DISPOSITION
BEFORE THE HONORABLE JOYCE DRAGANCHUK, CIRCUIT COURT JUDGE
LANSING, MICHIGAN – WEDNESDAY, JULY 01, 2020


APPEARANCES:

For the Plaintiff:          Matthew J. Heos-P73786
                            3452 East Lake Lansing Road
                            East Lansing, Michigan 48823
                            517-256-4240


For the Defendant:          Henry Emrich-P29948
                            2025 East Beltline Avenue SE-#600
                            Grand Rapids, Michigan 49546
                            616-285-0143


Recorded/transcribed by:    Susan C. Melton, CER 7548
                            Certified Electronic Reporter
                            (517) 483-6500 x6703

```
                         TABLE OF CONTENTS




WITNESSES                                           PAGE

None.




EXHIBITS

None admitted.
```

WITNESSES                                           PAGE

None.

EXHIBITS

None admitted.

Lansing, Michigan

Wednesday, July 01, 2020

2:58:57 PM

4      THE COURT: This is, pardon me if I massacre

5 this, Gavri--, Gavrilides Management Company, et al versus

6 Michigan Insurance Company, docket number 20-258-CB. And

7 this is the time set for Defendant Michigan Insurance

8 Company's Motion for Summary Disposition. And just for the

9 record, could I have your appearances, please?

10      MR. HEOS: Yes, your Honor. Matthew Heos and Nick

11 Gavrilides is here in the courtroom also with me. He is

12 the owner of the immediate plaintiff company's.

13      MR EMRICH: Henry Emrich on behalf of Michigan

14 Insurance Company, your Honor and my assistant Chenney

15 Ward.

16      THE COURT: Okay, thank you. And your motion, Mr.

17 Emrich, if you wish to go ahead.

18      MR. EMRICH: Thank you, your Honor. I am going to

19 assume that the Court has read all of the pleadings in

20 this case, so I'll try not to belabor some of the points.

21 I think the, the key fact that we need to focus on is that

22 as we've argued is that there's no question here but the

23 policies that insure Mr. Gavrilides properties against,

24 against direct physical loss or damage to the property and

25 contrary, any claim with the policy benefits in question

3

1   this business income coverage is illusory, the policy in

2   question here clearly provides that for the business

3   coverage, the business income coverage to apply and, and

4   most of the other primary coverages under their policy,

5   there must be a direct physical loss of or damage to the

6   insured property in order for it to apply.

7       And I think it's important as we'll discuss

8   later in our argument depending on what Mr. Heos has to

9   say, why this is important, we must focus on the fact that

10  there must be direct physical loss or damage to the

11  insured property and not direct physical loss of use of or

12  damage to the property as has been suggested by Mr.

13  Gavrilides and his attorney in order for the coverage at

14  issue to apply.

15      While I acknowledge, your Honor, that this is a

16  somewhat unique, extraordinary if you will, matter to be

17  filing at this point in the proceedings as our initial

18  pleading; I think it's important to understand that when

19  we look at Mr. Gavrilides complaint, it does not contain

20  one single allegation that this insured property has in

21  any way been damaged or lost. To the contrary, the

22  allegations in the complaint affirmatively allege that the

23  plaintiff business interruption claim is based on the

24  "Stay at Home" orders of Governor Whitmer. There is no

25  allegation of any kind that the property in question has

4

in any way been damaged, lost or anything of the sort.

Given that this motion has been brought under 2.116(c)(10), plaintiff must produce some evidence to contradict the uncontroverted facts that have been alleged not only in the complaint, but in the affidavit submitted Mr. Gavrilides and in any of the other materials that Mr. Heos has attached to his response as, as indicated, most importantly, the affidavit of Mr. Gavrilides that reiterates the admissions in the complaint that there has not been any loss of or damage to either of the properties for which they seek coverage.

The insureds property today exists in the very same condition as it existed the day prior to the effective date of the "Stay at Home" order. They have not been lost, they have not been damaged, they have not required any repairs because of any damage to those properties. The business operation, its, its operation as a restaurant today is, is the same as the day prior to the effective date of the order, albeit with some modifi- cations that had been required to avoid grouping and to maintain social distancing in, in a sense improvements to the real estate. Not repairs, you know, and, and it's been maintained as a take-out, take-out operation at least until recently when they resumed the dining operation. There has been no loss of or damage to either building

5

that has prevented the plaintiff from operating as a
restaurant or entering it for that matter if--, as they
have. If plaintiffs wanted to sell either building today,
they could do so. And while plaintiffs have provided some
speculative evidence about the decreased value of that
property, although, as I read Mr.--, as I read the
materials that Mr. Heos kindly attached to his response,
the fact of the matter is it pointed out in that article
was that while they operation of a commercial property may
get harder, it's not impossible to operate it in the
future under our new normal.

Because plaintiffs complaint, the affidavit, the
other information that has been provided to your Honor
provides no evidence of any damage to that property.
Plaintiffs could never prove that either property suffered
any direct physical loss from the imposition of Governor
Whitmer's emergency order. And thus, could never recover
business interruption coverage under this policy based on
the facts that have been presented to the Court. The same
holds true under the business cover, income coverage, if a
civil authority prevents or prohibits access to either
property because of direct physical damage to an adjacent
or nearby property for the very same reason. There has
been no direct physical loss or damage to any adjacent
property that has been alleged, that has been provided to

1      the Court in Mr. Heos response. And frankly, when you look

2      at the order that they have, that is at issue in this

3      case, there's nothing there that prevents access to Mr.

4      Gavrilides properties whatsoever.

5      In summary, your Honor, there are no facts

6      alleged in the complaint or in any of the materials that

7      I've looked at, including Mr. Gavrilides affidavit, that

8      shows there has been direct physical loss of or damage to

9      the insured property. And for those reasons, your Honor,

10      we believe that our motion--, for those reasons alone, we

11      believe our motion for summary disposition should be

12      granted.

13      I'd just like to make a couple of additional

14      points before I shut up. I really believe summary

15      disposition is warranted on this basis alone and I would

16      turn the Court to the case that we've discussed in our, in

17      our brief, your Honor, that's referred to Universal

18      Insurance Production versus Chubb. And that's the decision

19      of the Eastern District of Michigan involving a claim that

20      involved insured property. It was damaged by a pervasive

21      odor that developed in the property as a result of mold

22      that grew in the property because of some water seepage.

23      And why that case is important is because it discusses the

24      Michigan Rules of Contract Interpretation, that still

25      apply today, policy language is clear and unambiguous on

7

its face, which we believe is clearly the case here that states that the words and the terms of the policy should be enforced utilizing plain and commonly understood meanings.

And when I said earlier that that's important when we talk about what direct physical loss of or damage to property means, it means we look at those words. We don't add words such as loss of use, that Mr. Heos and Mr. Gavrilides have added in order to understand what we're talking about here. We look at the language in the policy. Every case that Mr. Heos produced your Honor, says the very same thing. In Univer--, Universal, like here, the policy was an 'all-risk' policy that required, like here, direct physical loss or damage to the insured property in order to trigger coverage unless that coverage was excluded.

As Universal pointed out, applying a dictionary meaning of direct and physical as meaning something immediate or proximate as a premise to something that is distant or incidental and physical meaning something that has a material existence meant in the context of a loss involving a contaminant that, unlike here, per the uncon-troverted allegations of the complaint and other evidence produced by plaintiff in response to this motion. That in order for direct physical loss of the property in this

8

| 1 | context, the contaminant must actually alter the structure |
| 2 | integrity of the property in order to trigger coverage |
| 3 | under language that is at issue in this case. And it |
| 4 | didn't happen in Universal, as the Court denied coverage |
| 5 | there, granted affirmed summary disposition. And |
| 6 | importantly your Honor, it hasn't even been alleged in |
| 7 | this case. Regardless of any authority to the contrary, |
| 8 | anywhere else in the country, this remains the law in our |
| 9 | courts when interpreting policy terms at issue. There is a |
| 10 | requirement that there be direct physical loss of or |
| 11 | damage to property. And the allegations produced here in |
| 12 | the complaint and the evidence that's been attached have |
| 13 | specifically acknowledged no such contamination and no |
| 14 | such damage to the property as a result of that contami- |
| 15 | nation. |

As in Universal, your Honor, the mere presence of odor or even mold was not any evidence of structural or tangible damage to the insured property. And as such, no direct physical loss or damage to the property had-, was occurred. Here, your Honor, we have the very same thing except that we have not even had any allegations of any damage to the property caused by this unfortunate, this horrible virus.

Finally, and although we do not believe the Court even has to get to this point, even if we assume for

9

| 1 | purposes of this motion that contamination occurred on |
| 2 | each premises and that somehow effected the structural |
| 3 | integrity of either building, again, neither scenario is |
| 4 | alleged. And even if it were, we do not believe under the |
| 5 | circumstances and the science that exists that it would |
| 6 | necessarily constitute direct physical loss over damage to |
| 7 | the property. The buyer's exclusion of the policy, which |
| 8 | clearly and unequivocally states that it applies to all |
| 9 | coverages and endorsement and that the company will not |
| 10 | pay for loss or damages caused by or resulting from any |
| 11 | virus, bacteria or other microorganism that induces or is, |
| 12 | is capable of inducing physical distress, illness or |
| 13 | disease. And Lord knows, that that has certainly been the |
| 14 | case with what's happened with Covid-19 throughout our |
| 15 | country. |
| 16 | Clearly, your Honor, that exclusion, again, I |
| 17 | don't believe you even have to get there, but that |
| 18 | exclusion would clearly exclude any claim here even if |
| 19 | plaintiff's could prove direct physical loss of or damage |
| 20 | to the insured property or any nearby property that |
| 21 | resulted in a civil authority issuing an order prohibiting |
| 22 | access to the property. As of eight days ago, your Honor, |
| 23 | they have only been few jurisdictions in this country, |
| 24 | Florida and Pennsylvania, that have discussed and applied |
| 25 | this, a similar exclusion as at issue in this case and in |

1    every one of those cases, the Court has enforced that

2    exclusion as written because it's clear and unambiguous.

3    Again, your Honor, for all the reasons that we've set

4    forth here today and the brief that we filed and our

5    reply, we request that the Court grant our Motion for

6    Summary Disposition at this time. Thank you.

7              THE COURT:   Thank you. Mr. Heos?

8              MR. HEOS: Thank you, your Honor and may it

9    please the Court. And obviously Mr. Emrich and I have a

10   different interpretation of direct physical loss of or

11   damage to covered properties because here the loss comes

12   from the issue of the executive order restricting use of

13   property. Physically you cannot use for, for dine-in

14   services any of the interior of the building for a period

15   of time. And a complete prohibition isn't contemplated by

16   the language of the contract, I think a limited

17   restriction also falls within the coverage. And I think

18   that if you're gonna accept the defendants argument you

19   would have to limit the meaning to destruction of the

20   physical building itself, but we know that the coverage

21   extends to non-destructive loss, civil authority being

22   one.

23             I put in example in the brief subterranean

24   pollution, you can look at asbestos or a computer virus is

25   something that would occur that there would be no physical

11

destruction to the property itself. The fact of the matter is that Mr. Gavrilides can't use the covered properties because of or he's lost rather the use of those properties because of the order and it looks like that will continue in some form for a while. So, I think that counsel is wrong in trying to limit the scope even with the case law he cited, most of which is persuasive and not binding. That's number one, Judge.

And as for the virus exclusion itself, the only case law we have relates to person to person transmission of a virus at the covered property. And I think that fits more with what's going on. We see in the news that Harpers in East Lansing and even the Hotcat in Kalamazoo is making headlines of people contracting Covid there. But, the impetus of the order was to protect public health and welfare, which is the governor's duty. It's not caused by a virus. It would be the same order as with the damn in Midland being issued to protect public health and welfare. It wasn't caused by a flood. It was caused by the Governor's duty to act and protect the people she's charged with protecting and I think that's what happening.

Or it's distinguishable from the case and I think it's Bowler, the case cited regarding the virus. And I think that if you go further in accepting defendant's position, then we get into the illusory promise of well if

|    |                                                                |
|----|----------------------------------------------------------------|
| 1  | the government issues an order, we're not gonna cover it       |
| 2  | because any decision of a government body or group of          |
| 3  | people is excluded. And so then, you get into the circle       |
| 4  | in the contract where if you're going to buy into counsels     |
| 5  | logic, it would make that provision illusory. And for          |
| 6  | those reasons, I think that the motion should actually         |
| 7  | roll back on the defendants because the language to            |
| 8  | support the claim, to the extent that the Court thinks         |
| 9  | there's a deficiency in my pleading and is gonna grant         |
| 10 | defendants motion, I'd like Leave to Amend the Complaint.      |
| 11 | But, I don't think that's the case here. And with that,        |
| 12 | I'll leave it, if the Court would like to ask any              |
| 13 | questions, I'm happy to take them.                             |
| 14 | THE COURT: I don't have any. Thank you. I'll                   |
| 15 | give Mr. Emrich rebuttal time.                                 |
| 16 | MR. EMRICH: Thank you, your Honor. Your Honor,                 |
| 17 | what I would say is that when we talk about these cases        |
| 18 | that Mr. Heos has mentioned that might provide coverage in     |
| 19 | certain situations, I read those cases a little while ago      |
| 20 | and I'm kind of tired reading some of these cases about        |
| 21 | insurance coverage. But, the point in every one of those       |
| 22 | cases is that the condition she referred to actually           |
| 23 | caused damage to the property.                                 |
| 24 | In this case, there has not been any such                      |
| 25 | damage. And if we look at what the coverage for business       |

13

loss or business--, the business income loss that they're seeking says, it says that if the business, the coverage would apply if the business operation is suspended provided the suspension must be caused by the direct physical loss of or damage to property. In this case, that hasn't occurred. Nothing prevents Mr. Gavrilides from using that property. It has been used as such. The fact that there may be other coverages that may provide some limited coverage, they're against what Mr. Heos is arguing because clearly, if those coverages were covered under this language, then why have a special coverage that provides certain conditions for its application.

The point is, in each of those civil authority cases that he talked about, the property actually sustained damage. Here it didn't sustain damage. As to his claim in this case, that he wants an opportunity to amend his complaint if the Court feels compelled to grant my motion, what is that going to accomplish? He's already alleged in his complaint and his client has already signed an affidavit where he no doubt put his hand up and swore to the contents of that affidavit in which he said there has been no damage to that property.

We don't create coverage by-, because somebody thinks they ought to have coverage. But, that, that, that whole line of cases Roy versus Continental Insurance and

some of the other cases in our, in our brief that we cited, clearly supports the notion that the reasonable expectation concept doesn't apply in Michigan. It just doesn't cut it. There is no coverage here, your Honor. That exclusion is clear. If the Court feels that there may be or that there may be a situation that would give rise to, but again, you have to come forward at the time that you, that you respond to this motion with some evidence that suggests that. That hasn't happened here. I mean even when you look at the response that he's filed, he talks about scenario's that have absolutely no bearing to this case.

And you know, I'll just make one last point, your Honor, you know, when I was a young Prosecutor, I had the benefit of being able to argue a number of cases to juries that required me to prove the defendant's guilt beyond a reasonable doubt. And in those cases, I was trained to listen closely to the defendant's argument and had been the case where the facts were particularly egregious, a defense attorney would often not even talk about those facts and talk about the law. And he talked about how that law was somehow created this reasonable doubt in hopes of creating some confusion on the part of one juror who might then find in his clients favor because reasonable doubt existed. And, and in those cases, I would

15

make sure that when I got up in rebuttal, just as I have been given the opportunity to here, I would point that out to the jury and indicate to them that there's a reason for that. And that's because they didn't want you to talk about the facts that clearly supported conviction.

On the other hand, if it was a case where the law, you know, or the facts may have been murky, but the law was clear, the defense attorney would only focus on, you know, on those facts and not talk about the law. And again, I point that out to the jury there. But, in this case, you know, and there were cases back then to, like our case here that were neither supported by the facts or the law. Which I believe is clearly the case in this case. And the defense attorney would get up and argue something that to the jury that had absolutely nothing to do with the case in hopes of confusing them. Just like Mr. Heos has suggested by talking about these asbestos cases or some of these other cases that have nothing to do with this.

Well in this case, when you look at his responsive pleading, he talks about an accident situation that has absolutely no application here. Nothing to do with this case. While in his argument, he starts out talking about a discussion of the virus of racism and as there, as there, we would point out, if we were in front

1    of a jury, just like I'd point out to them and I'm

2    pointing out to you, it hasn't got anything to do with

3    this case. Your Honor, the reason for that and the reason

4    for the topic of that is that he knows that neither the

5    facts or the law support his claim and nothing he could

6    file as an amendment would change that.

7         He is hoping to somehow create this little bit

8    of possibility, some scintilla that some evidence is gonna

9    pop up that shows that the property has been damaged in

10   hopes that he could trigger coverage. And as this Court

11   knows under the cases we've discussed in our brief, that

12   is not sufficient to deny summary disposition in a case

13   that clearly warrants it even at this early stage.

14        Thank you your Honor for your patience. Thank

15   you Mr. Heos, we've never met. I've heard a lot of good

16   things about you. Mr. Gavrilides, nice to have met you,

17   very sorry for the situation you're in. It's just crazy

18   all the way around. And just like having to argue this

19   case on TV is really just disconcerting for me. But, in

20   any event, thank you your Honor for your patience.

21             THE COURT: Thank you. You're on Youtube not TV.

22   But--

23             MR. EMRICH: I meant screen. Yeah, whatever.

24             THE COURT: Right.

25             MR. EMRICH: The screen.

17

1    THE COURT: I, I did read the briefs. I studied

2    them very carefully and I've listened to the argument of

3    counsel today. And taking all the-, that together I, I

4    note that the plaintiff speaks of and focuses on arguments

5    about access to the property, use of the property and

6    definitions of loss and damage. But, the first inquiry has

7    to start with a full look, not just isolating some words

8    or phrases from the policy. But, a full look at the

9    coverage that's provided under the policy.

10    Coverage is provided for actual loss of business

11    income sustained during a suspension of operations. The

12    policy goes on to provide the 'suspension must be caused

13    by direct physical loss of or damage to property.' And it

14    also provides 'the loss or damage must be caused by or

15    result from a covered cause of loss. The causes of loss

16    special form provides that a covered cause of loss means

17    risks of direct physical loss.'

18    So, whether we're talking about the cause for

19    the suspension of the business or the cause for the loss

20    or the damage, it is clear from the policy coverage

21    provision only direct physical loss is covered. Under

22    their common meanings and under federal case law as well,

23    that the plaintiff has cited that interprets this standard

24    form of insurance, direct physical loss of or damage to

25    the property has to be something with material existence.

1    Something that is tangible. Something according to the one

2    case that the plaintiff has cited from the Eastern

3    District, that alters the physical integrity of the

4    property.  The complaint here does not allege any physical

5    loss of or damage to the property. The complaint alleges a

6    loss of business due to executive orders shutting down the

7    restaurants for dining, for dining in the restaurant due

8    to the Covid-19 threat.

9        But, the complaint also states that a no time

10    has Covid-19 entered the Soup Spoon or the Bistro through

11    any employee or customer and in fact, states that it has

12    never been present in either location. So, there simply

13    are no allegations of direct physical loss of or damage to

14    either property. The plaintiff seems to make in the

15    briefing, at least, two arguments about the language in

16    the coverage provision and what it means.

17        The first argument is that the plaintiff says

18    coverage applies to "direct physical loss or damage to

19    property."  Even if that were the wording of the coverage

20    provision, it wouldn't save the plaintiff from the

21    requirement that the loss or damage must be physical and

22    the analysis could end right there. But, I have to go on

23    to say that this is not even the wording of the coverage

24    provision. Coverage according to the policy applies to a

25    suspension caused by "direct physical loss of or damage to

19

property." So, I'm not going to get into a detailed analysis of the rules of grammar. But, common rules of grammar would apply to make that phrase a short-cut way of saying "direct physical loss of property or direct physical damage to property." So, again, the plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. There has to be some tangible, i.e., physical damage to the property.

Then the plaintiff in the briefing, at least, seems to make a second argument that and this is not 100% clear, but, it seems like the plaintiff is saying that the physical requirement is met because people were physically restricted from dine-in services. But, that argument is just simply nonsense. And it comes nowhere close to meeting the requirement that there's some, there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building.

So, the next argument that the plaintiff makes is that the virus and bacteria exclusion is vague and can't apply here. The plaintiff has not adequately explained how the term virus is vague. And in fact, supplies a completely workable, understandable, usable definition of the word virus. The argument in this regard really seems to be more that the virus exclusion doesn't

apply. And it goes something like this as far as I can tell, first, a virus can't cause physical loss or damage to property because virus' harm people, not property. Second, the damage caused here was really caused by actions of the civil authority to protect public health. And then third, therefore, coverage for acts of any person, group, organization or governmental body applies. But, that argument bring us right back to the direct physical loss or damage requirement. Again, going back to the cause of loss special form B, as in boy, exclusions provides that acts of government are only covered when they result in a covered cause of loss. A covered cause of loss, again, is direct physical loss. So, even if the virus exclusion did not apply, which the plaintiff has not supported that it doesn't apply, I only argue that it's vague, which I reject. But, even if it did not apply, it could only be coverage for governmental actions that resulted in direct physical loss or damage.

And then, finally, the plaintiff argues that the policy has a contradiction in it that renders it illusory. So, the plaintiff says that the policy extends coverage for governmental acts. But, then, it takes it away in the causes of loss special form. But, that's simply not true. Coverage is provided for actual loss of business income sustained during the suspension of operations. However,

1  according to the coverage provision, the suspension must
2  be caused by direct physical loss of or damage to
3  property. And governmental acts are likewise covered if
4  it results in a covered cause of loss, which is again, a
5  direct physical loss. There is no granting of coverage
6  and then excluding the same coverage in the policy. As a
7  matter of fact, the policy is consistent throughout and
8  consistent with federal law cited by the plaintiff. It
9  requires physical loss or damage.

10  There is a virus exclusion even if plaintiff was
11  alleging, was alleging, even if there were allegations in
12  the complaint alleging actual physical loss or damage,
13  which the complaint does not do. But, there is a virus
14  exclusion that would also apply. And governmental action
15  that results in direct physical loss is covered. But
16  again, there is no direct physical loss alleged here.

17  Now, I have to address a little bit this, that
18  it was brought as a (c)(10) motion. The actually the
19  defendant hasn't provided any support by way of factual
20  support, depositions, affidavits, et cetera, for a (c)(10)
21  motion. So, if the defendant doesn't do that, then the
22  plaintiff has no burden under Maiden versus Rosewood. So,
23  there's no shifting burden until the moving party first
24  does it. But, I don't think it properly is labeled a
25  (c)(10) motion. I think it's a (c)(8) motion. Because this

22

| | |
|---|---|
| 1 | is the motion that can be decided as a matter of law. Take |
| 2 | all the allegations in the complaint as true and examine |
| 3 | nothing more than the contract upon which the complaint is |
| 4 | based, the policy of insurance and as a matter of law, the |
| 5 | plaintiffs complaint cannot be sustained. And although the |
| 6 | plaintiff has requested a chance to amend without any |
| 7 | indication of how they would do that, there actually is no |
| 8 | factual development that could change the fact that the |
| 9 | complaint is complaining about the loss of access or use |
| 10 | of the premised due to executive orders and the Covid-19 |
| 11 | virus crisis. So, there's no factual development that |
| 12 | could possibly change that or amendment to the complaint |
| 13 | that could possibly change that those things do not |
| 14 | constitute the direct physical damage or injury that's |
| 15 | required under the policy as I've outlined. |
| 16 | So, for those reasons, I am granting the |
| 17 | Defendant's Motion for Summary Disposition. I'm doing it |
| 18 | under MCR 2.116 (c)(8). And Mr.— |
| 19 | MR. EMRICH: Thank you, your Honor. |
| 20 | THE COURT: Mr. Emrich, will you submit an order? |
| 21 | MR. EMRICH: Certainly will, your Honor. |
| 22 | THE COURT: Okay. |
| 23 | MR. EMRICH: Thank you. |
| 24 | THE COURT: Thank you. |
| 25 | MR. HEOS: Thank you very much. |

23

1       THE COURT: That will conclude our hearing.

2               (Hearing concludes at 3:32:35 PM.)

3

4

5

6

7

8

9

10      STATE OF MICHIGAN)

11                      )

12      COUNTY OF INGHAM)

13

14

15

16      I certify that that this transcript, consisting of 24

17  pages, is a complete, true, and correct transcript of the

18  proceedings and testimony taken in this case on Wednesday,

19  July 01, 2020.

20

21

22  July 09, 2020                    _____

23                                   Susan C. Melton-CER 7548
24                                   30th Circuit Court
25                                   313 West Kalamazoo Avenue
26                                   Lansing, Michigan 48901
27                                   517-483-6500 ext. 6703

28

                                    24