Exhibit 22

Michael J. Reiser (Bar. No. 133621)
Michael J. Reiser, Jr. (Bar No. 320452)
Matthew W. Reiser (Bar. No. 315301)
Isabella Martinez (Bar No. 315299)
REISER LAW, p.c.
1475 N. Broadway, Suite 300
Walnut Creek, California 94596
Telephone: (925) 256-0400
michael@reiserlaw.com
michaeljr@reiserlaw.com
matthew@reiserlaw.com
isabella@reiserlaw.com

Tyler Meade (Bar No. 160838)
Sam Ferguson (Bar No. 270957)
Seena Forouzan (Bar No. 317777)
THE MEADE FIRM p.c.
12 Funston Ave., Suite A
San Francisco, California 94129
Telephone: (415) 724-9600
tyler@meadefirm.com
sam@meadefirm.com
seena@meadefirm.com

Attorneys for Plaintiff,
The Inns by the Sea

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 4/20/2020 4:45 PM
By: Christina Flores, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF MONTEREY

| | |
|---|---|
| THE INNS BY THE SEA, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA MUTUAL INSURANCE COMPANY, a California Corporation, and DOES 1 to 25, Inclusive,<br><br>Defendants. | Case No.: 20CV001274<br><br>**COMPLAINT FOR:**<br><br>1) **DECLARATORY RELIEF;**<br>2) **BREACH OF CONTRACT;**<br>3) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**<br>4) **BAD FAITH DENIAL OF INSURANCE COVERAGE** |

Plaintiff The Inns by the Sea ("Plaintiff") brings this action against California Mutual Insurance Company ("California Mutual" or "Defendant" or, together with the DOES, "Defendants") based upon the investigation of counsel and information and belief.

**INTRODUCTION**

1. Plaintiff The Inns by the Sea is a California corporation formed in 1975 that operates four inns in the heart of Carmel-by-the-Sea, including the Carriage House Inn (Junipero between 7th & 8th Avenue), the Wayside Inn (7th Avenue & Mission Street), the Candle Light Inn (San Carlos between 4th and 5th Avenue), the Svendsgaard's Inn (Corner of 4th and San Carlos); and one inn located in Half Moon Bay, the Cypress Inn on Miramar Beach (407 Miranda Road). (Collectively, the five inns are referred to herein as the "Inns").

2. On March 17, 2020, the Inns were forced to cease operations based on the COVID-19 coronavirus and orders from the County of Monterey and the County of San Mateo ordering cessation of all non-essential travel and directing all businesses and governmental agencies to cease non-essential operations at physical locations. These orders and/or the virus itself (collectively, the "Closure Orders"), prohibited Plaintiff from selling any rooms to the public. Since the forced shutdown, Plaintiff has had to lay off nearly all of its workers, including front desk staff, maintenance workers and room cleaners, as the occupancy rate at the Inns has dropped to zero.

3. To insure against this type of disaster (as it had for close to forty-five years), Plaintiff purchased an insurance policy from Defendant California Mutual, Policy Number No. CPP602654-06, covering each of the Inns. Plaintiff paid extra for business interruption coverage and coverage for losses caused by civil authority orders. Plaintiff's total annual premium was $38,353.

4. Plaintiff is forced to bring this lawsuit to obtain insurance coverage improperly and unlawfully denied by California Mutual at a time when Plaintiff is at its most vulnerable. For decades, Plaintiff has been a staple of the central coast tourism industry, providing hundreds of local jobs and accommodations. Without the promised coverage, Plaintiff may not survive its loss of business owing to the Closure Orders.

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

## PARTIES AND JURISDICTION

5. Plaintiff The Inns by the Sea is a California corporation formed in 1975 under the laws of the State of California, with its principal place of business in Carmel-by-the-Sea, California, and at all relevant times herein has been operating the Inns.

6. Defendant California Mutual Insurance Company is a corporation formed in 1920 under the laws of the state of California, with a principle place of business in Hollister, California. California Mutual sells insurance, and represents on its website to be rated "A-Excellent" by A.M. Best Company.

7. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25, and therefore sues said Defendants by fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the acts or omissions alleged herein and Plaintiff's injuries as herein alleged were proximately caused by those acts or omissions.

8. At all times mentioned herein, each of the Defendants was the agent, servant or employee, joint venture, or alter ego of each of the remaining Defendants, and in doing the things hereinafter alleged were acting within the course and scope of such agency and employment.

9. The conduct, acts and omissions of Defendants, and each of them, as described herein, were undertaken by California Mutual's officers, directors, or managing agents, identified as DOES 1-10, who were responsible for claims operations, underwriting, communications, investigations and decisions. The conduct of the managing agents and individuals was, therefore, undertaken on behalf of California Mutual. Further, Defendants, and each of them, had advance knowledge of the actions and conduct of those individuals, whose actions and conduct were ratified, authorized and approved by managing agents and by other corporate officers, directors or managing agents whose precise identities are unknown to Plaintiff at this time. Plaintiff thus identifies and designates those individuals as DOES 15-20.

10. This Court has jurisdiction over this dispute, and venue lies within this district because: (a) the amount in controversy exceeds the jurisdictional minimum; (b) four of the five properties at issue are located in Monterey County; (c) Plaintiff has its principal place of business and sustained damages within Monterey County; and (d) California Mutual breached its legal and contractual duties to perform services within Monterey County.

## GENERAL ALLEGATIONS

### The Inns' Policy:

11. On January 9, 2020 Plaintiff renewed its policy of insurance with California Mutual, policy number of CPP602654-06 (hereinafter the "Policy"), with a Policy Term from 1/9/2020 to 1/9/2021. Plaintiff agreed to make an annual premium payment of $38,353.00 in exchange for California Mutual's promise to indemnify Plaintiff for losses and expenses, including, but not limited to, Business Interruption Coverage (including Extra Expense Coverage) and Civil Authority Coverage. The Policy is attached hereto as Exhibit A and incorporated herein by reference.

12. Plaintiff's Policy includes "Business Income (and Extra Expense) Coverage Form," number CP 00 30 04 02, which states, in part: "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by the direct physical loss of or damage to property at premises . . ."

13. Plaintiff's Policy also includes additional coverage for "Civil Authority," which provides that California Mutual "will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

14. Plaintiff faithfully paid California Mutual the premiums owed for the Policy (as it had done for prior policies over nearly forty-five years), and the Policy has been in full force and effect at all times pertinent herein.

15. The Policy sets forth limits on the Business Interruption and Extra Expense coverage separately for each of the five inns, as follows: $1,375,000 for Carriage House Inn; $1,681,000 for the Wayside Inn; $1,370,000 for the Candle Light Inn; $1,755,000 for the Svendsgaard's Inn; and $1,740,000 for the Cypress Inn on Miramar Beach.

16. The Policy also separates the limits of Civil Authority coverage as follows: (a) "The coverage for Business Income (Civil Authority) will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins"; and (b) "The coverage for Extra Expense (Civil Authority) will begin immediately after the time of that action and will end: (1) 3 consecutive weeks after the time of that action; or (2) When your Business Income coverage ends; whichever is later."

17. Plaintiff's Policy does not provide any exclusion due to losses, business or property, from a virus or global pandemic.

**The COVID-19 Coronavirus and the Closure Orders:**

18. On March 11, 2020, the World Health Organization declared that the threat from the novel coronavirus — otherwise known as COVID-19 — constituted a global pandemic

19. Emerging research on the virus and recent reports from the Center for Disease Control indicate that COVID-19 strains physically infect and can stay alive on surfaces for extended periods, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous.

20. On March 17, 2020, the Inns were forced to cease operations based on orders from both the County of Monterey and the County of San Mateo ordering cessation of all non-essential travel and directing all businesses and governmental agencies to cease non-essential operations at physical locations. These Closure Orders were issued in direct response to these dangerous physical conditions, and prohibit Plaintiff from selling any rooms to the public, thereby forcing Plaintiff to close the Inns and to lay off nearly all of its workers and triggering California Mutual's coverage responsibilities.

21. The Closure Orders were made in direct response to the continued and increasing presence of the coronavirus on Plaintiff property and/or around its premises.

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

**California Mutual's Wrongful Denial of Coverage:**

22. On March 17, 2020, as a direct and proximate result of the Closure Orders, Plaintiff ceased operations at the Inns, as its rooms could no longer be rented to the public and the Inns could not be used for any purpose. The occupancy rate at the Inns has dropped to zero. As a further direct and proximate result of the Closure Orders, Plaintiff effectively furloughed all of its non-manager employees.

23. On March 24, 2020, Plaintiff sought coverage for its loss of business income, including by providing California Mutual notice of a claim under the Policy coverages set forth above.

24. On the same day, California Mutual sent a form letter acknowledging that the Policy included "Business Interruption Coverage Form CP 00 30 04 02." Without apparently launching an investigation into or review of Plaintiff's claims, California Mutual denied Plaintiff's claim, stating as the exclusive reason for the denial of coverage that: "Loss of business due to reasons other than covered physical damage is beyond the scope of the insurance policy." This letter is attached hereto as Exhibit B and incorporated herein by reference.

25. California Mutual's denial additionally acknowledged that Plaintiff included "additional coverage for Civil Authority." However, California Mutual also denied Plaintiff's claim under the Civil Authority coverage based only on the following generalized statement: "[T]he Civil Authority actions are not due to physical damage to property from a covered loss."

26. California Mutual's conclusory denials of the above coverages are contradicted by the terms of the Policy and applicable case law.

27. The COVID-19 coronavirus has caused a physical loss of and/or damage to the Inns within the meaning of the Business Interruption coverage. Alternatively, because all of Plaintiff's business operations are "non-essential," the Closure Orders caused Plaintiff to suffer "the direct physical loss of … the [Plaintiff] premises," within the meaning of the Business Interruption coverage. As indicated, the Inns can no longer be used for any purpose.

28. Among other reasons, the Civil Authority coverage applies because the Closure Orders were "action[s] of civil authorities that prohibits access to [Plaintiff's] premises due to

direct physical loss of or damage to [other] property ... caused by or resulting from" the COVID-19 coronavirus.

29. Moreover, unlike many commercial property policies available in the market, the Policy sold by California Mutual does not include an exclusion for loss caused by a virus. The Policy has rules and conditions regarding bacteria, but a virus is not bacterium.

30. Plaintiff reasonably expected that the insurance it purchased from California Mutual included coverage for business interruption and civil authority losses and extra expenses caused by viruses like the COVID-19 coronavirus.

31. If California Mutual had wanted to exclude pandemic-related losses under Plaintiff's Policy it could have done so with an express exclusion. Instead, California Mutual waited until after it collected Plaintiff's premiums, and after a pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiff, to try to limit its exposure on the backend through its form denial, based on the erroneous assertion that there was no "physical damage" or "physical loss."

32. The insurance industry has created specific exclusions for pandemic related losses under similar commercial property policies, but that exclusion was not part of the parties' bargain in this case.

33. Likewise, the insurance industry has created specific exclusions for physical damage and/or physical loss caused by a virus, but that exclusion was not part of the parties' bargain in this case.

34. Plaintiff's Policy clearly indicates that it covers damages on account of physical contamination and physical intrusion; the coverage is not limited to indemnity for structural damage. Amongst the many exclusions dealing with micro-particles and biological agents, there are specific exclusions for loss or damage owing to volcanic effusion, but coverage for volcanic dust and particulate matter; specific exclusions for radiation and radioactive material; and specific exclusions for loss or damage caused by fungus or bacteria.

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

35. Critically, the insurance industry maintains a standard form exclusion loss or damage owing to viruses and/or pandemics, but those forms were *not* included here, meaning the parties intended the Policy to cover loss or damage owing to viruses.

36. There is also a specific exclusion for loss or damage caused by "dispersal or application of pathogenic or poisonous biological or chemical materials," but only when connected to an act of terrorism. This terrorism exclusion suggests that other types of "dispersal… of pathogenic" materials is a covered cause of loss.

37. California Mutual's wholesale, cursory coverage denial was arbitrary and unreasonable and inconsistent with the law, the facts and the plain language of the Policy it issued. This denial appears to be driven by California Mutual's desire to reduce its own financial exposure to the economic fallout resulting from the COVID-19 related Closure Orders and the physical damage and/or loss of property occasioned by COVID-19. California Mutual failed to comply with its obligation to do a full and fair investigation of the claims and a careful review of the Policy it sold to Plaintiff in exchange for valuable premium.

38. As a result of California Mutual's wrongful denial of coverage, Plaintiff files this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance it purchased, for indemnification and damages in the form of the business losses and extra expenses it has sustained, for bad faith breach of contract and for bad faith claims handling under California law.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

39. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

40. As alleged in detail above, California Mutual and Plaintiff entered into the Policy, i.e., the insurance contract attached as Exhibit A. Plaintiff has made all premium payments and otherwise performed its obligations under the contract, including giving timely notice of its claim on or about March 24, 2020.

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

41. Plaintiff paid the premiums in exchange for California Mutual's promise to pay Plaintiff's losses for claims covered by the Policy as described herein, including for business losses incurred as a result of the Closure Orders forcing it to close the Inns and/or the direct physical damage and/or loss caused by COVID-19.

42. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy.

43. California Mutual and the DOE Defendants have arbitrarily and without justification denied coverage and refused to reimburse Plaintiff for any losses incurred by it in connection with the covered business losses related to the Closure Orders and the necessary interruption of Plaintiff's business stemming from the COVID-19 pandemic. On information and belief, California Mutual did not review the Closure Orders before denying coverage, nor did California Mutual conduct any independent investigation of the Premises and their environs for the presence of COVID-19.

44. An actual case or controversy exists regarding Plaintiff's rights and California Mutual's obligations under the Policy to reimburse Plaintiff for the full amount of the losses incurred by it in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

45. Pursuant to Code of Civil Procedure § 1060, Plaintiff seeks a declaratory judgment from this Court declaring the following: (a) Plaintiff's losses in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy; (b) California Mutual and the DOE Defendants have waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing a blanket coverage denial without conducting a claim investigation as required under California law; and (c) California Mutual and the DOE Defendants are obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the necessary interruption of its business stemming from the COVID-19 pandemic.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

46. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

47. The Policy is an insurance contract under which California Mutual was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the Closure Orders forcing it to close the Inns and the direct physical loss and damage caused by COVID-19.

48. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet California Mutual has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

49. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, California Mutual and the DOE Defendants have breached their coverage obligations to Plaintiff.

50. As a result of these breaches of the Policy, Plaintiff has sustained millions of dollars in damages for which California Mutual and the DOE Defendants are liable, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

51. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

52. The conduct of California Mutual and the DOE Defendants described in this Complaint violated the implied covenant of good faith and fair dealing, including by failing to conduct a full, thorough and complete investigation with reasonable diligence into the facts and circumstance of the claim made by Plaintiff and then arbitrarily refusing to pay for losses covered by the insurance Policy despite lacking a basis for doing so.

53. As a result of these breaches of the implied covenant of good faith and fair dealing, Plaintiff has sustained millions of dollars in damages, the exact amount of which will be determined at trial.

# FOURTH CAUSE OF ACTION

## (Bad Faith Denial of Insurance Coverage)

54. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth herein.

55. California Mutual and the DOE Defendants have breached their obligations under the insurance Policy including by: (a) by failing to conduct a full, thorough and complete investigation, based on all available information, into the facts and circumstance of the claim made by Plaintiff; (b) by unreasonably delaying in processing the claim or paying benefits due Plaintiff; (c) by denying Plaintiff's claim based on standards known by Defendant to be improper; (d) by doing each of the acts and omissions set forth above as though set fully herein at length.

56. Defendants, and each of them, failed and refused to conduct a thorough investigation into the facts and circumstances of the claim asserted, and by failing to consider the physical damage to Plaintiff's property, as well as to the property surrounding Plaintiff's property, all in an effort to relieve California Mutual from having to pay promptly, fairly and reasonably, benefits under the Policy.

57. As a result of Defendants' bad faith breach of the Policy, Plaintiff has sustained millions of dollars in damages, the exact amount of which will be determined at trial.

58. The conduct of California Mutual and the DOE Defendants was malicious and in conscious and reckless disregard for the rights and financial well-being of Plaintiff. Moreover, Plaintiff is informed and believes and, on that basis, alleges that California Mutual's upper management has ratified the conduct described herein. California Mutual seeks punitive damages to the maximum extent allowed by law.

WHEREFORE, Plaintiff prays as follows:

1. That the Court enter a declaratory judgment in favor of Plaintiff on the First Cause of Action and against Defendants, declaring: (a) Plaintiff's losses in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy; (b) Defendants have waived any right they may have had to assert defenses to coverage or otherwise seek

to bar or limit coverage for Plaintiff's losses by issuing a blanket coverage denial without conducting a claim investigation as required under California law; and (c) Defendants are obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the necessary interruption of its business stemming from the COVID-19 pandemic.

2. For general and special damages according to proof;
3. For punitive damages to the maximum extent allowed by law.
4. For any and all appropriate equitable relief, including but not limited to disgorgement of the premiums Plaintiff paid to California Mutual.
5. For attorney's fees, including "Brandt Fees", in an amount to be determined at trial;
6. For costs of suit; and
7. For any and all other relief to which Plaintiff is entitled.

DATED: April 20, 2020

Respectfully submitted,

REISER LAW P.C.

By: _____
Michael J. Reiser, Esq.
Attorneys for Plaintiff,
The Inns by the Sea