Exhibit 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUDPIE, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>            Defendant. | Case No. 20-cv-03213-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 11 |

Before the Court is Defendant's motion to dismiss. ECF No. 11. The Court will grant the motion.

I.   **BACKGROUND**

Plaintiff Mudpie, Inc. is a San Francisco retail store that sells children's clothing, toys, housewares, books, and other goods. ECF No. 1 ¶ 26. Mudpie brings this putative class action on behalf of itself and other California retailers who purchased comprehensive business insurance from Defendant Travelers Casualty Insurance Company of America ("Travelers"), filed a claim for lost business income following California's Stay at Home Order, and were denied coverage. *Id.* ¶ 43.

The Stay at Home Order was issued in response to an outbreak of COVID-19, a novel strain of coronavirus. *Id.* ¶¶ 17, 24-25. On March 11, 2020, "the World Health Organization declared COVID-19 a global health pandemic based on existing and projected infection and death rates and concerns about the speed of transmission and ultimate reach of this virus." *Id.* ¶ 19. At that time, "it was generally understood in the scientific and public health communities that COVID-19 was spreading through human-to-human transmission and could be transmitted by asymptomatic carriers." *Id.* ¶ 17. Public health officials thus advised that social distancing – the

1  maintenance of physical space between people – was needed to stop the transmission of COVID-
2  19.  *Id.* ¶¶ 17, 20, 22.

3  On March 12, 2020, California Governor Gavin Newsom issued a statewide directive
4  known as the Safer at Home Order, which required California residents "to heed any orders and
5  guidance of state and local public health officials, including but not limited to the imposition of
6  social distancing measures, to control the spread of COVID-19."  *Id.* ¶ 24.  On March 19, 2020,
7  the Governor issued a series of mandates known as the Stay at Home Order, which "requir[ed]
8  retailers to cease in-person services."  *Id.* ¶ 25.

9  Mudpie had purchased a "comprehensive commercial liability and property insurance"
10 policy from Travelers "to insure against risks the business might face."  *Id.* ¶ 30.  Mudpie alleges
11 that its compliance with the government closure orders "result[ed] in substantial loss to business
12 income" because its storefront became "useless and/or uninhabitable."  *Id.* ¶¶ 27, 59.  On or about
13 April 27, 2020, Mudpie reported its loss of business income as of March 16, 2020, under its
14 Travelers insurance policy.  *Id.* ¶ 32.

15 In May 2020, Travelers denied Mudpie's insurance claim.  *Id.* ¶ 33.  Travelers took the
16 position that Mudpie was not entitled to Business Income and Extra Expense coverage under its
17 policy because "the limitations on [Mudpie's] business operations were the result of the
18 Governmental Order, as opposed to 'direct physical loss or damage to property at the described
19 premises.'"  *Id.*  In addition, Travelers found that Mudpie was not entitled to Civil Authority
20 coverage because "the Governmental Order that affected [Mudpie's] business was not issued due
21 to 'direct physical loss of or damage to property.'"  *Id.*  Finally, Travelers stated that the policy
22 contained "an exclusion for 'loss or damage caused by or resulting from any virus' – such as the
23 COVID-19 virus."  *Id.*

24 Mudpie alleges three causes of action in its complaint.  First, Mudpie seeks "a declaration
25 for itself and similarly situated retailers that its business income losses are covered and not
26 precluded by exclusions or other limitations in its comprehensive business insurance policy."
27 *Id.* ¶ 62.  Second, Mudpie alleges that Travelers breached its contract by denying it comprehensive
28 business coverage.  *Id.* ¶ 69.  Third, Mudpie alleges that Travelers breached the implied covenant

United States District Court
Northern District of California

of good faith and fair dealing by: (1) selling policies that appear to provide liberal coverage with the intent of interpreting ambiguous, undefined, and poorly defined terms to deny coverage; (2) unreasonably denying coverage by applying undefined, ambiguous, and contradictory terms contrary to applicable rules of policy construction and the plain terms and purpose of the policy; (3) denying Mudpie's claim without conducting a fair, unbiased, and thorough inquiry; (4) misrepresenting policy terms; and (5) compelling policy holders to initiate litigation to recover policy benefits to which they are entitled. *Id.* ¶ 75.

On June 3, 2020, Travelers filed a motion to dismiss Mudpie's complaint. ECF No. 11. Mudpie opposes the motion, ECF No. 19, and Travelers has filed a reply, ECF No. 20.

## II.     JURISDICTION

The Court has jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million and at least one member in the proposed class of over 100 members is a citizen of a state different from Travelers.[1]

## III.    LEGAL STANDARD

### A.     Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068,

---

[1] Mudpie is a California resident, and Travelers is a Connecticut resident. ECF No. 1 ¶¶ 11, 12.

1072 (9th Cir. 2005).

### B. Insurance Policy Interpretation

Under California law, the interpretation of an insurance contract is question of law for the courts.[2] *See Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 18 (1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Id.* In addition, "[t]he terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.,* 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal. 4th 854, 867 (1993); *Palmer v. Truck Ins. Exch.,* 21 Cal. 4th 1109, 1115 (1999)). "[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W.,* 2 Cal. 4th at 1264-65 (quoting Cal. Civ. Code § 1649). "Only if this rule does not resolve the ambiguity do [courts] then resolve it against the insurer." *Id.* at 1265. California courts have cautioned that language in a contract "cannot be found to be ambiguous in the abstract," and courts should "not strain to create an ambiguity where none exists." *Waller,* 11 Cal. 4th at 18-19.

### IV. DISCUSSION

Travelers argues that Mudpie's "factual allegations cannot satisfy the prerequisites for coverage under the Civil Authority, Business Income and Extra Expense" provisions in the insurance policy that Travelers issued to Mudpie.[3] ECF No. 11 at 14. In addition, Travelers argues that the policy's virus exclusion "clearly and unambiguously precludes coverage." *Id.*

---

[2] The parties do not dispute that California law governs the underlying insurance policy. *See* ECF No. 11 at 15 n.4; ECF No 19 at 13 n.5.

[3] The insurance policy, ECF No. 11-2, is incorporated by reference. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

4

### A. Business Income and Extra Expense Coverage

The parties dispute whether Mudpie's allegations establish "a direct physical loss of" property as required by the Business Income and Extra Expense provisions in the insurance policy. The Business Income provisions state:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

ECF No. 11-2 at 72-73. Similarly, the Extra Expense provisions provide for payment of "reasonable and necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no *direct physical loss of or damage to property* caused by or resulting from a Covered Cause of Loss." *Id*. at 73 (emphasis added). "Covered Causes of Loss" are defined as "risks of direct physical loss," subject to certain limitations and exclusions. *Id*. at 73-74 (emphasis omitted).

#### 1. Physical Alteration or Change to Property

Mudpie claims that its inability to operate and occupy its storefront following the government closure orders is a direct physical loss of property covered by its insurance policy. ECF No. 19 at 14. Travelers argues that, in order to establish a "direct physical loss of" property, Mudpie must allege "a distinct, demonstrable, physical alteration of the property" or "a *physical change* in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term." ECF No. 11 at 22-23 (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779-80 (2010)).

The Court disagrees with Travelers's broad conception of the language "direct physical loss of" property. Another district court within this Circuit recently rejected a nearly identical interpretation of this language. *See Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSx), 2018 WL 3829767, at *3-4 (C.D. Cal. July 11, 2018). The plaintiff in *Total Intermodal,* who also held a Travelers insurance policy, filed a claim for cargo that had been mistakenly returned to China, where it became unrecoverable and was ultimately destroyed. *Id*. at *1. Travelers denied the claim and, in the ensuing lawsuit, it relied on *MRI*

*Healthcare Center* to argue that "direct physical loss *of*" property requires some damage or alteration to the property. *Id*. at *2, 4. The court disagreed, concluding that the phrase "direct physical loss *to* business personal property" in *MRI Healthcare Center* should be construed differently than "direct physical loss *of*" property in the Travelers insurance policy.[4] *Id*. at *4 (emphasis added). The court reasoned that "the '*loss of*' property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged." *Id*. at *3. Furthermore, "to interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter cannon of contract interpretation—that every word be given a meaning." *Id*. (citing Cal. Civ. Code § 1641). The court thus concluded that "loss of" could include "the permanent dispossession of something." *Id*. at 4.

As in *Total Intermodal*, the insurance policy here covers "direct physical loss of or damage to property." ECF 11-2 at 72-73. In accordance with the reasoning in *Total Intermodal*, the Court finds that the language of this provision, alone, does not require a "physical alteration of the property" or "a *physical change* in the condition of the property." ECF No. 11 at 22-23 (citation omitted). Nevertheless, the facts at hand do not fall within the *Total Intermodal* court's more expansive interpretation of "direct physical loss of property." Although Mudpie has been dispossessed of its storefront, it will not be a "permanent dispossession" as with the lost cargo in *Total Intermodal*. *See* 2018 WL 3829767, at *4. When the Stay at Home orders are lifted, Mudpie can regain possession of its storefront. Mudpie's physical storefront has not been "misplaced" or become "unrecoverable," and neither has its inventory. *See id*. at *3.

Moreover, while a "direct physical loss of" property does not require damage or physical alteration to the property, the surrounding provisions within Travelers's insurance policy suggest that Mudpie's inability to occupy its storefront does not fall within the Business Income and Extra Expense coverage of this policy. *See Sony Comput.*, 532 F.3d at 1012 ("The terms in an insurance

---

[4] The *Total Intermodal* court also found the that the phrase "direct physical loss" should be construed differently than "direct physical loss *of*." *Total Intermodal*, 2018 WL 3829767, at *4. For this reason, Travelers's reliance on *Meridian Textiles, Inc. v. Indemnity Ins. Co. of N. Am.*, in which the insurance policy covered "physical loss or damage," is misplaced. No. CV 06-4766 CAS, 2008 WL 3009889, at *2, 3 (C.D. Cal. Mar. 20, 2008); *see* ECF No. 11 at 22-23.

policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other."). The insurance policy states that the "period of restoration" – applicable to both Business Income and Extra Expense coverage – "[b]egins 24 hours after the time of direct physical loss or damage" and "[e]nds on the date when the property . . . should be repaired, rebuilt or replaced with reasonable speed and similar quality." ECF No. 11-2 at 84. The words "'[r]ebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature." *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005). But here, there is nothing to fix, replace, or even disinfect for Mudpie to regain occupancy of its property, which Mudpie admits in its opposition brief: "Mudpie's loss is caused by state closure orders and thus will last for however long those restrictions remain." ECF No. 19 at 8.

### 2. Intervening Physical Force

Mudpie cites several non-California cases for the proposition that the "loss of functionality of, or access to, a property," such as Mudpie's loss of functionality of its storefront, "constitutes a direct physical loss of property."[5] ECF No. 19 at 15. However, each of these cases involved an intervening physical force which "made the premises uninhabitable or entirely unusable." *See, e.g.*, *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418

---

[5] Mudpie cites one unpublished California case in support of its argument, *Universal Savings Bank v. Bankers Standard Insurance Co*., No. B159239, 2004 WL 515952, at *6 (Cal. Ct. App. Mar. 17, 2004), *vacated*, No. B159239, 2004 WL 3016644 (Cal. Ct. App. Dec. 30, 2004). Pursuant to California Rule of Court 8.1115 and Civil Local Rule 3-4(e), the Court may not consider this unpublished case. *See Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *6 n.7 (N.D. Cal. July 12, 2019) (declining to apply unpublished California authority).

The Court notes that some district and appellate courts within the Ninth Circuit do consider unpublished California appellate authority. *See, e.g., Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 n.3 (9th Cir. 2015) ("Even though unpublished California Courts of Appeal decisions have no precedential value under California law, the Ninth Circuit is not precluded from considering such decisions as a possible reflection of California law.") (quotation and citation omitted). The clear text of Local Rule 3-4(e), however, forecloses such a result here. *See* Civ. L.R. 3-4(e) ("Any order or opinion that is designated: 'NOT FOR CITATION,' pursuant to Civil L.R. 7-14 or pursuant to a similar rule of any other issuing court, may not be cited to this Court, either in written submissions or oral argument, except when relevant under the doctrines of law of the case, res judicata or collateral estoppel.") (emphasis in original).

(WHW)(CLW), 2014 WL 6675934, at *6-7 (D.N.J. Nov. 25, 2014) (finding that ammonia discharge inflicted "direct physical loss of or damage to" property where "there [was] no genuine dispute that the ammonia release physically transformed the air" within the premises and rendered it unusable); *Manpower Inc. v. Ins. Co. of the State of Pa.*, No. 08C0085, 2009 WL 3738099, at *6 (E.D. Wis. Nov. 3, 2009) (finding that the insured's inability to access its property was a direct physical loss where the loss "was caused by a physical event—the [building] collapse—which created a physical barrier between the insured and its property"); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 5, 17 (W.Va. 1998) (finding that "[l]osses covered by the policy, including those rendering the insured property unusable or uninhabitable, may exist in the absence of structural damage to the insured property" when a rockfall made plaintiffs' homes uninhabitable).

Indeed, numerous courts outside the Ninth Circuit have found that some outside physical force must have *induced* a detrimental change in the property's capabilities before a plaintiff alleging loss of use can establish a "direct physical loss of property." *See, e.g., Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (rejecting the argument "that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose"); *Ne. Ga. Heart Ctr., P.C. v. Phx. Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) (listing cases where "the reviewing court required some outside physical force to have induced a detrimental change in the property's capabilities" to award pure loss-of-use damages). For instance, in *Western Fire Insurance Co. v. First Presbyterian Church* the Supreme Court of Colorado determined that a direct physical loss had occurred when the insured, acting upon the orders of the fire department, closed the church building because gas had infiltrated the soil underneath it. 437 P.2d 52, 54-55 (Colo. 1968). The court clarified that "the so-called 'loss of use' of the church premises, standing alone, d[id] not in and of itself constitute a 'direct physical loss.'" *Id*. at 55. Rather, the direct physical loss resulted from the "accumulation of gasoline around and under the church building," which made further use of the building highly dangerous. *Id*. The California Court of Appeal reinforced the *Western Fire* court's reasoning, noting that *Western Fire* "does *not* stand for the proposition that loss of intangible property can constitute a physical loss." *Ward Gen. Ins. Servs., Inc. v. Emps. Fire Ins.*

8

*Co.*, 114 Cal. App. 4th 548, 558 (Cal. Ct. App. 2004). Rather, "[a] physical loss occurred when the foundations became saturated with gasoline." *Id.*

Finally, a court in Michigan recently held that allegations of "a loss of business due to executive orders shutting down [] restaurants for dining" in response to the COVID-19 pandemic were insufficient to establish "direct physical loss of or damage to" the property. *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020); ECF No. 21-1 at 19-20.[6]

Similar to the plaintiff in *Gavrilides*, Mudpie does not allege that "Covid-19 entered the [property] through any employee or customer." ECF No. 21-1 at 19; *see* ECF No. 19 at 21 (noting that "the complaint nowhere states that Mudpie was closed because its employees became sick or coronavirus was discovered on the property"). Rather than alleging that COVID-19 or any other physical impetus caused the loss of functionality of its storefront, Mudpie alleges that its "loss is caused by government closure orders and thus will last for however long those restrictions remain." ECF No. 19 at 8, 2; *see* ECF No. 1 ¶ 27. Because Mudpie's complaint contains no allegations of a physical force which "induced a detrimental change in the property's capabilities," the Court finds that Mudpie has failed to establish a "direct physical loss of property" under its insurance policy.[7] *See Ne. Ga. Heart Ctr.*, 2014 WL 12480022, at *6.

Following the conclusion of briefing, Mudpie submitted as supplemental authority the opinion in *Studio 417, Inc. v. Cincinnati Insurance Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020). Like Mudpie, plaintiffs in that case were businesses (a hair salon and several restaurants) who sought coverage for losses incurred when their businesses were

---

[6] At the time this order was issued, only the official court transcript was available, which is located at ECF No. 21-1.

[7] Had Mudpie alleged the presence of COVID-19 in its store, the Court's conclusion about an intervening physical force would be different. SARS-CoV-2 – the coronavirus responsible for the COVID-19 pandemic, which is transmitted either through respiratory droplets or through aerosols which can remain suspended in the air for prolonged periods of time – is no less a "physical force" than the "accumulation of gasoline" in *Western Fire* or the "ammonia release [which] physically transformed the air" in *Gregory Packaging*. *See Western Fire*, 437 P.2d at 55; *Gregory Packaging*, 2014 WL 6675934, at *6.

impacted by the COVID-19 pandemic. *Id.* at *1-2. Plaintiffs there also alleged that business closure orders issued by civil authorities required them to cease or reduce their business operations. *Id.* at *2. Unlike Mudpie, however, plaintiffs also claimed that the presence of the COVID-19 virus inside their establishments made them unusable. *Id.* ("Plaintiffs allege that over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus. Plaintiffs allege that COVID-19 'is a physical substance,' that it 'live[s] on' and is 'active on inert physical surfaces,' and is 'emitted into the air.' Plaintiffs further allege that the presence of COVID-19 'renders physical property in their vicinity unsafe and unusable,' and that they 'were forced to suspend or reduce business at their covered premises.'") (citations omitted). Based on the latter allegations, the *Studio 417* court found that plaintiffs had plausibly alleged a covered loss:

> Plaintiffs have adequately alleged a direct physical loss. Plaintiffs allege a causal relationship between COVID-19 and their alleged losses. Plaintiffs further allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is also "emitted into the air." COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it "unsafe and unusable, resulting in direct physical loss to the premises and property." Based on these allegations, the Amended Complaint plausibly alleges a "direct physical loss" based on "the plain and ordinary meaning of the phrase."

*Id.* at *4 (citations omitted). Mudpie makes no similar allegation here. It does not allege, for example, that the presence of the COVID-19 virus in its store created a physical loss. Rather, its sole focus is on the shelter-in-place orders that have prevented it from opening, a distinctly less physical phenomenon. ECF No. 1 ¶ 27 ("*Compliance with those orders* has caused direct physical loss of Mudpie's insured property in that the property has been made useless and/or uninhabitable; and its functionality has been severely reduced if not completely or nearly eliminated." (emphasis added)). Accordingly, *Studio 417* does not assist Mudpie.

The Court's conclusion is further supported by the policy's provision which states that Travelers "will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." ECF No. 11-2 at 94. The separate provision for loss of use suggests that the "direct

10

physical loss of . . . property" clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force. The provision also undermines Mudpie's claim that "a reasonable purchaser of insurance would read the policy as providing coverage for a loss of functionality."[8] *See* ECF No. 19 at 14. Thus, because Mudpie fails to allege any intervening physical force beyond the government closure orders, the Court finds that Mudpie is not entitled to Business Income or Extra Expense coverage under the terms of its policy.

### B.     Civil Authority Coverage

Travelers's Civil Authority coverage provision extends Business Income and Extra Expense coverage to insure losses. The provision states:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss.

ECF No. 11-2 at 85. Travelers argues that Mudpie is not entitled to Civil Authority coverage because Mudpie cannot establish that the civil authority action – the closure orders in this case – were issued "due to direct physical loss of or damage to" any property. ECF No. 11 at 19-21. The Court agrees.

Under the Civil Authority provision, Mudpie must establish the "requisite causal link between damage to adjacent property and denial of access" to its store. *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *see also Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (finding that civil

---

[8] Mudpie argues that the insurance policy's definition of "property damage" as "[l]oss of use of tangible property that is not physically injured" "supports the conclusion that a reasonable purchaser of insurance would read the policy as providing coverage for a loss of functionality." ECF No. 19 at 14. However, Mudpie itself acknowledges that the property damage definition to which it refers is "not in the businessowners coverage part" of the insurance policy, which provides Business Income and Extra Expense coverage. ECF No. 19 at 12. Rather, it appears in and is applicable to the commercial general liability section of the policy. *See* ECF No. 11-2 at 33, 142.

11

authority coverage requires a "causal link between prior property damage and the civil authority order"). In *Syufy Enterprises*, a theater owner closed his theaters in response to the curfew orders which were imposed by California civil authorities following the Rodney King verdict. 1995 WL 129229, at *1. Finding that the curfews were not imposed "because of damage to adjacent property" but instead "to *prevent* 'potential' looting, rioting, and resulting property damage," the court concluded that the theater owner was not entitled to civil authority coverage. *Id*. at *2-3; *see also United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 129, 134 (2d Cir. 2006) (affirming the district court's denial of coverage under a similar civil authority provision where the government's decision to halt airport operations on September 11, 2001 "was based on fears of future attacks" rather than prior physical damage to an adjacent property); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (finding no coverage under an analogous civil authority provision where the government evacuation order "was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred").

Mudpie's allegations establish that the government closure orders were intended to prevent the spread of COVID-19. *See* ECF No. 1 ¶ 24 (California's Safer at Home Order was issued "to control the spread of COVID-19."). Because the orders were preventative – and absent allegations of damage to adjacent property – the complaint does not establish the requisite causal link between prior property damage and the government's closure order.

That Mudpie's opposition brief attempts to downplay its Civil Authority coverage allegations underscores the Court's conclusion. Mudpie states that "[n]one of [its] claims seek recovery specifically under the civil authority extension" and that "[i]t need not invoke the civil authority extension to establish coverage under the policy." ECF No. 19 at 17. Accordingly, the Court finds as a matter of law that Mudpie is not entitled to Civil Authority coverage.[9]

### C. Dismissal of Each Cause of Action

Mudpie's first cause of action "seeks a declaration for itself and similarly situated retailers

---

[9] Because Mudpie is not entitled to Civil Authority coverage, the Court need not consider Travelers's additional argument that the virus exclusion bars such coverage. ECF No. 11 at 17-19.

that its business income losses are covered and not precluded by exclusions or other limitations in its comprehensive business insurance policy." ECF No. 1 ¶ 62.  Because Mudpie is not entitled to Business Income, Extra Expense, or Civil Authority coverage as a matter of law, *see supra* at IV.A-B, Mudpie's first cause of action is dismissed.

Mudpie's second cause of action alleges that Travelers breached its contract by denying Mudpie comprehensive business insurance coverage.  ECF No. 1 ¶ 69.  The elements of a cause of action for breach of contract under California law are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  "[A]bsent an actual withholding of benefits due, there is no breach of contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10 (Cal. Ct. App. 1990) (citation and emphasis omitted).  Because Mudpie has failed to allege that any "benefits due were withheld or delayed," it cannot allege a breach of contract.  *See id.* at 1152.  Mudpie's second cause of action is therefore dismissed.

Mudpie's third cause of action alleges breach of the implied covenant of good faith and fair dealing.  Under California law, a breach of the implied covenant of good faith and fair dealing in the insurance context has two elements: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love*, 221 Cal. App. 3d at 1151.  Because Mudpie has failed to allege that benefits were withheld, the "threshold requirement" for a bad faith claim has not been met.  *See id*. at 1151-52; *see also Waller,* 11 Cal. 4th 1 at 35 (affirming that a bad faith claim cannot be maintained unless policy benefits are due under the contract).  Accordingly, Mudpie's third cause of action is dismissed.

Lastly, the Court dismisses Mudpie's putative class claims.  "[W]here the named plaintiffs have failed to state a claim in themselves for the relief they seek[,] . . . there is no occasion for the court to wrestle with the problems presented in considering whether the action may be maintained on behalf of the class." *Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974).

## V. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), leave to amend is freely given when justice so requires. The Court may, however, "exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In this case, it seems doubtful that Mudpie could establish a "direct physical loss of . . . property" as the term is defined in its insurance policy for Business Income and Extra Expense coverage. Furthermore, Mudpie has failed to establish entitlement to Civil Authority coverage and admits that none of its claims "seek recovery specifically under the civil authority extension." ECF No. 19 at 17. The Court also recognizes, however, that the law concerning business interruption coverage linked to the COVID-19 pandemic is very much in development. Accordingly, the Court will dismiss the complaint without prejudice and grant leave to amend.

## CONCLUSION

For the foregoing reasons, the Court grants Travelers's motion to dismiss without prejudice. Mudpie may file an amended complaint solely to correct the deficiencies identified in this order. An amended complaint is due 21 days from the date of this order. If no amended complaint is filed, the Court will dismiss the case with prejudice.

**IT IS SO ORDERED.**

Dated: September 14, 2020

_____
JON S. TIGAR
United States District Judge