# Exhibit 3

Exhibit 4

||||||||||||||||||||||||||||
114115469

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

SOMCO, LLC DBA J3 CLOTHING COMPANY
    Plaintiff

Case No: CV-20-931763

Judge: NANCY A FUERST

LIGHTNING ROD MUTUAL INSURANCE COMPANY
    Defendant

## JOURNAL ENTRY

PRETRIAL HELD 8/11/2020.

DEFT LIGHTNING ROD MUTUAL INS. CO.'S PRE-ANSWER MOTION TO DISMISS, OR ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT, FILED 06/05/2020, IS HELD IN ABEYANCE. THE COURT HEREBY CONVERTS THE MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT. DISCOVERY AND BRIEFING SCHEDULE TO BE SET AT THE NEXT PRETRIAL.

PLAINTIFF'S MOTION FOR LEAVE INSTANTER TO FILE SUR-REPLY TO DEFENDANT LIGHTNING ROD MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS, OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT, FILED 07/20/2020, IS DENIED.

THE COURT NOTES THAT PLTF'S RESPONSE TO DEFT'S 7/23/2020 MOTION TO STAY DISCOVERY, OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER IS DUE 8/17/2020. PURSUANT TO CIV.R. 6, REPLY BRIEF DUE 8/24/2020.

PRETRIAL SET FOR 09/15/2020 AT 03:00 PM. PRETRIAL BY PHONE. COUNSEL TO USE CONFERENCE CALL INFORMATION PROVIDED BY PLTF'S COUNSEL.

*Nafuerst*

Judge Signature     08/12/2020

08/11/2020

# Complaint

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| SOMCO, LLC dba J3 CLOTHING CO.<br>34105 Chagrin Blvd.<br>Moreland Hills, Ohio 44022<br><br>    Plaintiff<br><br>    vs.<br><br>LIGHTNING ROD MUTUAL INSURANCE COMPANY<br>P.O. Box 36<br>1685 Cleveland Rd.<br>Wooster, Ohio 44691-0036<br><br>    Defendant | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>(With Jury Demand) |

**COMPLAINT AND REQUEST FOR DECLARATORY RELIEF**

1. Plaintiff Somco, LLC is a limited liability company organized under Ohio law with its principal place of business in Moreland Hills in Cuyahoga County, Ohio. Somco, LLC, dba J3 Clothing Co., is a men's clothing and accessories retailer with onsite tailoring services. J3's proprietors have over 70 years' collective experience in the men's clothing industry and serve customers throughout northeast Ohio.

2. Defendant Lightning Rod Mutual Insurance Company ("Lightning Rod") is a for-profit insurance company organized under Ohio law with its principal place of business in Wooster, Ohio.

3. At all times relevant, Lightning Rod insured Plaintiff Somco, LLC, dba J3 Clothing Co. under a "Businessowners Package Policy," Policy Number PACKLBO 3412111888("the Policy"). A copy of the Policy is attached as Exhibit 1.

4. Defendant Lightning Rod delivered the Policy to Plaintiff in Cuyahoga County, the Policy insures Plaintiff's property and business operations and potential liabilities in connection with Plaintiff's operation of a retail store in Cuyahoga County, and the covered losses at issue herein were incurred by Plaintiff in Cuyahoga County, making venue appropriate in this Court.

5. The Policy provides coverage for loss of Business Income ("BI"), Extra Expense ("EE") coverage, and coverage for loss due to actions of a Civil Authority.

6. Relevant portions of the Policy provide that Defendant Lightning Rod:

   a. "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to the property at the described premises…" and

   b. "will pay for Extra Expense you incur during the "period of restoration" that you would not have incurred had there been no direct physical loss or damage to property at the described premises…" and

   c. "will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, cause by or resulting from any Covered Cause of Loss."

7. While the Policy was in force, Plaintiff sustained, and continues to sustain, a loss(es) due to the presence of COVID-19 at, in, on, and/or around Plaintiff's premises described in the Policy.

8. While the Policy was in force, Plaintiff sustained and continues to sustain, a loss(es) due to the presence of COVID-19 on surfaces, furniture, merchandise, and/or other items of physical property located at Plaintiff's premises described in the Policy.

9. While the Policy was in force, Plaintiffs sustained, and continues to sustain, a loss(es) due to the spread of the COVID-19 in the community (the "Pandemic").

10. While the Policy was in force, Plaintiffs sustained, and continue to sustain, a loss(es) due to the civil authority orders issued by the Governor of Ohio and the Ohio Department of Health addressing COVID-19 and the Pandemic.

11. COVID-19 is a virus.

12. COVID-19 is a physical substance.

13. COVID-19 is present in viral fluid particles.

14. COVID-19 is a human pathogen.

15. COVID-19 can and does live on and/or remain contagious and active on inert physical surfaces.

16. COVID-19 can and does live on and/or remain contagious and active on floors, walls, furniture, desks, tables, chairs, countertops, computer keyboards, touch screens, cardboard packages, clothing, fixtures, mobile phones, iPads, tablets, laptop computers, and other items of physical property for a period of time.

17. COVID-19 can be transmitted by way of human contact with surfaces and items of physical property on which COVID-19 particles are physically present.

18. COVID-19 has been transmitted by way of human contact with surfaces and items of physical property on which COVID-19 particles are present.

19. COVID-19 can be transmitted by way of human contact with surfaces and items of physical property located at premises.

20. COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Cuyahoga County.

21. COVID-19 can be transmitted by human to human contact and interaction at premises.

Electronically Filed 04/08/2020 16:02 / / CV 20 931763 / Confirmation Nbr. 1982190 / CLSLP

22. COVID-19 has been transmitted by human to human contact and interaction at premises in Cuyahoga County.

23. COVID-19 can be transmitted through airborne viral particles emitted into the air at premises.

24. COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in Cuyahoga County.

25. The presence of any COVID-19 particles causes physical harm to property so as to impair its value, usefulness and/or normal function.

26. The presence of any COVID-19 particles causes physical damage to property so as to impair its value, usefulness and/or normal function.

27. The presence of COVID-19 renders property physically unsafe and unusable, resulting in the physical loss of the property.

28. The presence of people infected with or carrying COVID-19 particles renders property in their immediate vicinity physically unsafe and unusable, resulting in the physical loss of the property.

29. In response to the physical presence of COVID-19 and the Pandemic, the Governor of Ohio has issued multiple executive orders pursuant to the authority vested in him by the Ohio Constitution and the laws of Ohio.

30. In response to the physical presence of COVID-19 and the Pandemic, the Ohio Department of Health, pursuant to its authority under Ohio law, has issued multiple orders, including a Stay At Home Order.

31. The term "civil authority" is not defined in the Policy.

32. The State of Ohio is a civil authority as contemplated by the Policy.

33. The Ohio Department of Health is a civil authority as contemplated by the Policy.

34. The Governor of the State of Ohio is a civil authority as contemplated by the Policy.

35. On March 9, 2020, Ohio Governor Mike DeWine issued Executive Order 2020-01D that declared a state of emergency in response to the physical presence of COVID-19 and the Pandemic.

36. On March 22, 2020, the Ohio Department of Health issued a Stay At Home Order, effective March 23, 2020, ordering Ohio residents to stay at home. By way of this order the State of Ohio ordered all non-essential businesses in Ohio to cease all activities.

37. Plaintiff does not qualify as an Essential Business and was required to cease retail operations at its premises described in the Policy.

38. The civil authority orders, including, but not limited to the Stay At Home Order, prohibit access to Plaintiff's premises described in the Policy.

39. The State of Ohio, through the Governor and the Department of Health, have issued and continue to issue authoritative orders governing Ohioans and Ohio businesses, including Plaintiff, in response to the physical presence of COVID-19 and the Pandemic, the effect of which have required and continue to require Plaintiff to cease retail operations at, and that have prohibited and continue to prohibit access to, the premises described in the Policy.

40. State and local governmental authorities and public health officials around the country acknowledge that COVID-19 and the Pandemic cause direct physical loss of and damage to property. For example:

   a. The state of Colorado issued a Public Health Order indicating that "COVID-19… *physically contributes to property loss, contamination, and damage…*" (Emphasis added);

b. The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the ***virus physically is causing property loss and damage***." (Emphasis added);

c. Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "***is physically causing property damage***." (Emphasis added);

d. The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression… remains a public disaster affecting life, health, [and] ***property***…" (Emphasis added);

e. The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to ***physically*** impact surfaces and personal ***property***." (Emphasis added);

f. The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and ***causing property loss and damage*** in certain circumstances." (Emphasis added);

g. The State of Illinois issued an Executive Order describing COVID-19's "propensity to ***physically*** impact surfaces and personal ***property***." (Emphasis added);

h. The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "***property***." (Emphasis added);

i. North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of… ***property***." (Emphasis added); and

j. The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is ***physically causing property loss or damage*** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

41. COVID-19 and the Pandemic have caused and continue to cause direct physical loss of and damage to property.

42. COVID-19 and the Pandemic are physically impacting public and private property in Ohio and throughout the country.

43. People in Cuyahoga County have been diagnosed with COVID-19.

44. People in Cuyahoga County have COVID-19 but have not been diagnosed.

45. People in Cuyahoga County have COVID-19 particles on or about their person and personal property.

46. Properties throughout Cuyahoga County contain the presence of COVID-19 particles on surfaces, furniture, fixtures, and items of physical property located at those properties.

47. Properties throughout Cuyahoga County contain the presence of COVID-19 particles in the air.

48. COVID-19 and the Pandemic have caused and continue to cause property loss and property damage throughout Cuyahoga County.

49. It is probable that COVID-19 particles have been present at Plaintiff's premises described in the Policy during the Policy period.

50. It is probable that COVID-19 particles have been present on surfaces, furniture, and other items of physical property located at Plaintiff's premises described in the Policy during the Policy period.

51. It is probable that airborne COVID-19 particles have been present at Plaintiff's premises described in the Policy during the Policy period.

52. It is probable that people infected with COVID-19 have been present at Plaintiff's premises described in the Policy during the Policy period.

53. It is probable that people carrying COVID-19 particles on or about their person have been present at Plaintiff's premises described in the Policy during the Policy period.

54. It is probable that airborne COVID-19 particles have been present at Plaintiffs' premises described in the Policy during the Policy period.

Electronically Filed 04/08/2020 16:02 / / CV 20 931763 / Confirmation Nbr. 1982190 / CLSLP

55. At least one of Plaintiff's customers who was present at Plaintiff's premises described in the Policy has tested positive for COVID-19. This customer interacted with and came into close contact with Plaintiff's proprietors, employees and other customers at Plaintiff's premises described in the Policy. This customer came into contact with surfaces, merchandise and other items of physical property located at Plaintiff's premises described in the Policy.

56. Plaintiff has sustained direct physical damage to items of physical property located at its premises described in the Policy as the result of the presence of COVID-19 particles and/or the Pandemic.

57. Plaintiff has suffered the direct physical loss of items of physical property located at its premises described in the Policy as the result of the presence of COVID-19 particles and/or the Pandemic and/or the civil authority orders referenced herein.

58. Plaintiff has suffered direct physical damage to its premises described in the Policy as the result of the presence of COVID-19 particles and/or the Pandemic.

59. Plaintiff has suffered the direct physical loss of its premises described in the Policy as the result of the presence of COVID-19 particles and/or the Pandemic and/or the civil authority orders referenced herein.

60. Plaintiff submitted a timely insurance claim(s) to Defendant Lightning Rod.

61. By letter dated the next day, Defendant Lightning Rod advised Plaintiff it had "completed [its] investigation" and denied Plaintiff coverage under the Policy.

62. There is a dispute about whether Plaintiff is entitled to coverage under the Policy for its loss(es) sustained and to be sustained in the future. Accordingly, Plaintiff is entitled to declaratory relief from this Court pursuant to Ohio Civil Rule 57 and R.C. §§ 2721.01 to 2721.15.

63. Plaintiff is entitled to and demands a declaration that:

(1) Plaintiff sustained a direct physical loss of and/or or damage to property at its premises described in the Policy as a result of COVID-19 and/or the Pandemic;

(2) the presence of COVID-19 is a covered cause of loss under the Policy;

(3) the Pandemic is a covered cause of loss under the Policy;

(4) the losses incurred by Plaintiff as the result of the orders issued by the Governor of Ohio and the Ohio Department of Health are covered losses under the Policy;

(5) Defendant Lightning Rod has not and cannot prove the application of any exclusion or limitation to the coverage for Plaintiff's losses alleged herein;

(6) Plaintiff is entitled to coverage for its past and future Business Income loss(es) and Extra Expense resulting from COVID-19 and/or the Pandemic for the time period set forth in the Policy;

(7) Plaintiff is entitled to coverage for loss(es) due to the actions of Ohio's civil authorities, including the Governor of Ohio and the Ohio Department of Health as set forth herein;

(8) Plaintiff has coverage for any substantially similar civil authority order in the future that limits or restricts access to Plaintiff's premises; and

(8) any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

64. Plaintiff does not seek a determination of the amount of its covered losses. If there is a dispute between the parties as to the amount of the loss, the Policy provides that such a dispute should be resolved by Appraisal:

Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim. (WBP 00 60 12 07 Pages 26-27 of 33)

65. Plaintiff prays for declaratory relief from the Court that Defendant Lightning Rod must resolve any dispute about the amount of loss via Appraisal. Plaintiff also requests the Court appoint the umpire if the appraisers cannot agree.

66. Plaintiff prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

**WHEREFORE**, Plaintiff seeks judgment against the Defendant, Lightning Rod Mutual Insurance Company, as set forth above, plus interest, costs, and attorney fees as allowed by law.

> /s/ Nicholas A. DiCello
> Nicholas A. DiCello (0075745)
> Dennis R. Lansdowne (0026036)
> Jeremy A. Tor (0091151)
> SPANGENBERG, SHIBLEY & LIBER, LLP
> 1001 Lakeside Ave., Suite 1700
> Cleveland, Ohio 44114
> ndicello@spanglaw.com

*dlansdowne@spanglaw.com*
*jtor@spanglaw.com*

and

*/s/ Robert P. Rutter*
Robert P. Rutter (0021907)
Robert A. Rutter (0081503)
RUTTER & RUSSIN, LLC
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
*brutter@OhioInsuranceLawyer.com*
*bobbyrutter@OhioInsuranceLawyer.com*

## JURY DEMAND

Plaintiff hereby requests, pursuant to Civil Rule 38(B), a trial by jury of any of the issues in the within lawsuit that are properly triable to a jury.

*/s/ Nicholas A. DiCello*
NICHOLAS A. DICELLO
Attorney for Plaintiff