# Exhibit 6

# IN THE FRANKLIN COUNTY, OHIO COURT OF COMMON PLEAS
## CIVIL DIVISION

| | |
|---|---|
| SSF II, INC., et al <br><br> Plaintiffs <br><br> vs. <br><br> THE CINCINNATI INSURANCE COMPANY <br><br> Defendant | 20CV-04-002644 <br><br> Judge Michael Holbrook |

| | |
|---|---|
| 780 SHORT NORTH LLC, et al <br><br> Plaintiffs <br><br> vs. <br><br> THE CINCINNATI INSURANCE COMPANY <br><br> Defendant. | 20CV-06-003836 <br><br> Judge Michael Holbrook |

### ENTRY AND ORDER POST STATUS CONFERENCE

This matter came before the Court for a video status conference on September 8, 2020. There, the Court and counsel discussed the general status of these consolidated cases along with discovery issues. The Judge issued an order with respect to the same which is journalized herein.

Over the defendant's objection, it is hereby ORDERED that pursuant to Civ.R. 12(B), the pending motions to dismiss are hereby converted to motions for summary judgment. Briefing on the motions is stayed until October 29, 2020 at which time a schedule will be set.

It is further ORDERED, over plaintiffs' objections that the parties shall have until

December 1, 2020 to conduct discovery as to liability. Discovery related to damages is hereby bifurcated and stayed pending further order of the Court.

It is further ORDERED that this matter shall come before the Court for a follow up status conference on **October 29, 2020 at 1:30 p.m.** The conference will be held via Zoom with instructions mailed to counsel of record approximately 2 weeks prior to the conference date. Counsel shall be prepared to discuss the status of discovery and a briefing schedule.

**IT IS SO ORDERED.**

*Electronic notification to counsel of record*

Franklin County Court of Common Pleas

**Date:** 09-08-2020

**Case Title:** SSF II INC ET AL -VS- THE CINCINNATI INSURANCE COMPANY

**Case Number:** 20CV002644

**Type:** ENTRY

It Is So Ordered.

/s/ Judge Michael J. Holbrook

Electronically signed on 2020-Sep-08   page 3 of 3

# Complaint

019387-000001

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

| | |
|---|---|
| SSF II, Inc.<br>P.O. Box 540<br>New Albany, OH 43054<br><br>And<br><br>Spartan Stir Fry, Inc.<br>P.O. Box 540<br>New Albany, OH 43054<br><br><br>Plaintiffs,<br><br>v.<br><br>The Cincinnati Insurance Company<br>c/o Steve Corbly, Statutory Agent<br>P.O. Box 145496<br>Cincinnati, OH 45250,<br><br>Defendant. | CASE NO.<br><br>JUDGE<br><br><br><br>**COMPLAINT FOR DECLARATORY**<br>**JUDGMENT AND FOR BAD FAITH** |

Plaintiffs, SSF II, Inc. and Spartan Stir Fry, Inc. (collectively, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendant, The Cincinnati Insurance Company, state the following:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff SSF II, Inc., is an Ohio corporation, with its principal place of business located in Franklin County, Ohio.

2. Plaintiff Spartan Stir Fry, Inc., is an Ohio corporation, with its principal place of business located in Franklin County, Ohio.

3. At all times relevant herein, Plaintiffs are owners of six (6) restaurants throughout the State of Ohio, each doing business as Bd's Mongolian Grill, three (3) of which are located within Franklin County, Ohio.

4. The Cincinnati Insurance Company (CIC) is an insurance company incorporated under the laws of the State of Ohio, with its principal place of business located in Cincinnati, Ohio. CIC is authorized to do business in Franklin County, Ohio, and elsewhere.

5. This Court has personal jurisdiction over the Defendant.

6. This Court has subject matter jurisdiction regarding the matters alleged herein.

7. This Court is the proper venue under Ohio Civil Rule 3(B).

## NATURE OF ACTION

8. This is an insurance coverage action seeking declaratory relief pursuant to Ohio Revised Code §2721, *et seq*.

9. On or about November, 2019, Plaintiffs entered into a contract of insurance with CIC whereby Plaintiffs paid $40,079.00 of premiums to CIC for many levels of business insurance coverage in return for CIC's promise to compensate the Plaintiffs in the event of a covered loss.

10. Plaintiffs seek a declaratory judgment that CIC has a duty to indemnify and provide coverage for the losses Plaintiffs have suffered as alleged herein.

## STATEMENT OF FACTS

11. Plaintiffs and CIC entered into a contract of indemnity whereby Plaintiffs agreed to make cash payments to CIC in exchange for CIC's promise to indemnify the Plaintiffs for losses including, but not limited to, property damage, governmental authority business interruption, and business interruption income and expense losses at its six (6) restaurants located throughout the State of Ohio (hereinafter, "Insured Premises.")

## The Insured Premises

12. The Insured Premises are the six (6) locations of Bd's Mongolian Grill restaurants, a popular restaurant and unique dining concept. All six (6) locations are listed as Insured Property under the Policy.

13. Plaintiffs opened their first Bd Mongolian Grill restaurant in Cleveland Heights, Ohio, in November of 1997.

14. Since then, Plaintiffs have had the great fortune of opening five (5) more Bd Mongolian Grill restaurants between 1999 and 2020, with three (3) more locations in the Columbus, Ohio, area, and also in Beavercreek, Ohio, and Toledo, Ohio.

15. The Mongolian Grill dining concept is that of a unique, open-space, open-air, communal and interactive experience that sets it apart from its competition by featuring a 7 foot-long custom-made, cast-iron cooking surface grill, which is used to cook everyone's custom-ordered creation(s).

16. The grill is heated to 600 degrees Fahrenheit, and is able to cook up to 12 meals simultaneously.

17. Expert grillers use swords to cook several diners' entrees at a time, in something of a modified buffet style.

18. For those that are vegetarians or who have allergies, a spot is cleared on the grill to ensure that their meal(s) do/does not come in contact with any others.

19. Until just recently, all of the six (6) of Plaintiff's BD Mongolian Gill restaurants had been doing well, profitably.

Insurance Coverage

20. As required by Plaintiffs' franchisor, their landlords, and basic business prudence and good judgment, Plaintiffs have always carried what they believed to be comprehensive business insurance on all of Plaintiffs' restaurants.

21. Over the past ten (10) years, this is the second time that Plaintiffs have been insured by CIC, having previously been insured by CIC in 2009-2010.

22. The total premiums Plaintiffs have paid for all of their current coverages with CIC is $40,079.00, as stated above.

23. The Insured Premises are covered under a policy issued by CIC with policy number 05ENP0558781 (hereinafter "Policy"), issued to Plaintiffs SSF II, Inc., and Stir Fry, Inc. dba Mongolian Barbeque. A copy of the Policy, which is voluminous (264 pages), will be filed separately with the Court. Defendant already has the policy.

24. The policy is currently in full effect, providing property, business personal property, governmental authority business interruption, business interruption income and extra expense, "war" (declared and undeclared), and ordinance or law coverage between the period of November 16, 2019, to November 16, 2022.

25. Plaintiffs have faithfully paid their policy premiums to CIC to specifically provide for what Plaintiffs believed to be was comprehensive, plenary and all-risk coverage with CIC, particularly the extension of coverage in the event of a business closure by order of governmental authority.

26. An "all risk policy" is an insurance policy which covers all risks unless clearly and specifically excluded. Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc., 409 F.3d 342, 350 (6th Cir.2005).

27. As provided in Section 3(a) of the Policy, "Covered Causes of Loss" means direct "loss" unless the "loss" is "excluded or limited in this Coverage Part".

28. By law and definition, therefore, CIC's Policy is an all risk policy providing that covered causes of loss means direct physical loss unless the loss is specifically excluded or limited in the Policy.

29. The Policy does not provide an exclusion due to losses, business or property, from a virus or global pandemic – the cause of the losses herein.

30. Therefore, the Policy is designed to provide coverage to Plaintiffs for viruses and global pandemics.

Coronavirus (COVID-19) Global Pandemic

31. Starting on or about January of 2020, the Center for Disease Control and Prevention (CDC) has been responding to an outbreak of respiratory disease caused by a new coronavirus that was first detected in China, and which has now been detected in more than 100 locations internationally, including in the United States.

32. The virus has been named "SARS-CoV-2", and the disease it causes has been named coronavirus disease 2019 (abbreviated "COVID-19").

33. On January 30, 2020, the International Health Regulations Emergency Committee of the World Health Organization (WHO) declared the outbreak a "public health emergency of international concern."

34. On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19.

35. On March 11, 2020, WHO publicly characterized COVID-19 as a global "pandemic" requiring urgent and aggressive action to control the spread of the virus.

36. Previously, and on March 3, 2020, the four-day Arnold Sports Festival, which was scheduled to take place in Columbus, Ohio, was canceled to spectators in accordance with CDC guidelines regarding large gatherings of people during the COVID-19 situation.

37. With more than 250,000 guests expected to attend, bringing in an estimated $53 million to the city, that cancellation had a massive impact on business owners in Columbus, Ohio, including Plaintiffs.

38. In fact, the Arnold Sports Festival is the busiest time of the year for all three (3) of Plaintiffs' Central Ohio restaurants, and from which Plaintiffs rely on an estimated $30,000.00 of additional annual income – just from that Festival each year – to help capitalize all six (6) of their restaurants, across the board, for the balance of the fiscal year.

39. This year, Plaintiffs obviously lost that income, which was a significant hit to their bottom line.

40. Continuing, on March 9, 2020, Ohio Governor Mike DeWine issued Executive Order 2020-01 D, "Declaring a State of Emergency," in response to the growing COVID-19 public health crisis.

41. Governor DeWine and public health officials urged people to avoid large indoor gatherings to minimize close contact and potential exposure to the coughs or sneezes of others.

42. Ohio colleges have moved to online learning and extended spring breaks to keep students out of classrooms, and many (most) have now gone to online learning for the balance of the school year.

43. Governor DeWine has ordered that all Ohio schools take an extended three-week spring break beginning Monday, March 16, 2020. That "spring break" has recently been further extended to at least April 30, 2020.

44. Sporting events have been canceled, including OHSAA, NBA, MAC, Big Ten, NCAA, and all Cuyahoga County, Cleveland, Columbus, and Akron professional sports teams.

45. Most, if not all, local attractions have closed, including the Ohio and Palace theaters, the Columbus Orchestra, concerts, shows, museums, and other events.

46. Even *outdoor* parks and playgrounds in Ohio have been cordoned off by law enforcement /municipal/governmental officials with yellow security tape to prevent people from touching recreational equipment that may be infected (i.e., physically damaged) by COVID-19. See Exhibit 1.

47. On March 12, 2020, Governor DeWine and Ohio Department of Health Director Amy Acton, M.D., MPH, signed an Order to prohibit mass gatherings in the state of Ohio. A copy of that Order is attached hereto as Exhibit 2.

48. Mass gatherings are defined as any event or convening that brings together 100 or more persons in a single room or single space at the same time such as an auditorium, stadium, arena, large conference room, meeting hall, theater, or any other confined indoor or outdoor space.

49. Subsequent to that action, bars and restaurants were ordered to essentially cease operations other than delivery and take-out service.

50. Thus, on March 13, 2020, the Ohio Department of Health and Ohio Department of Agriculture specifically identified, singled-out and recommended that those restaurants whose food service operations rely on buffets and salad bars, like Plaintiffs', close immediately.

51. That Order made clear that COVID-19 attaches to surfaces or objects. That was further confirmed in research published in the New England Journal of Medicine. Further, the National Center for Disease Control and Prevention found that the COVID-19 virus can last on surfaces such as those in Plaintiff's restaurants for up to seventeen (17) days, thereby "damaging" – contaminating – those surfaces in the process.

52. At his news conference on March 14, 2020, Governor DeWine made clear that those restrictions were then-now mandatory by Executive Order.

53. On Wednesday, March 16, 2020, President Trump declared "war" on COVID-19 and declared himself a war-time president.

COVID-19 is a Global Pandemic

54. It goes without saying that the United States' restaurant and foodservice industry is a critical part of the solution to an unprecedented national emergency caused by the COVID-19 coronavirus.

55. Paramount to this pandemic is keeping the U.S. population nourished and healthy, and keeping the some-odd 585,000 restaurant workers in Ohio employed, and participating in the economy, is also critical.

56. A declaratory judgment in this case determining that the coverage provided under the Policy will prevent the Plaintiffs from being left without vital coverage acquired to ensure the survival of their business, now that operations have been ceased due to this global pandemic virus and civil authorities' response, is appropriate.

57. While some have called the COVID-19 virus an exaggerated mass hysteria, the scientific community and public officials, and those personally affected by COVID-19, recognize the real physical loss and damage already sustained as a result of this global pandemic.

58. Simply put, the COVID-19 virus is physically impacting public and private property, and physical spaces in cities around the world.

59. In fact, and on March 22, 2020, the County Administrator for Broward County, Florida, found (scientifically) and ordered that COVID-19 "is physically causing property damage due to its proclivity to attach to surfaces for a prolonged period of time." Exhibit 3.

60. Any effort by CIC to deny the reality that the COVID-19 virus causes physical damage and loss would constitute a false and potentially fraudulent misrepresentation that could endanger policyholders and the public, including the 585,000 restaurant workers in Ohio, their employers, and their families.

61. The global pandemic is exacerbated by the fact that the deadly virus physically infects and remains on the surface of objects or materials, "formites," for anywhere from seventeen (17) to twenty-eight (28) days, thereby "damaging" – contaminating – those surfaces in the process.

62. As will other businesses, it will be necessary for Plaintiffs to thoroughly clean and fumigate all of its restaurants prior to re-opening them publicly due to the intrusion of microbials.

63. It is clear that contamination of the Insured Premises by the COVID-19 virus would be and/or is a direct physical loss requiring remediation to clean the objects, materials and surfaces of the Insured Premises.

COVID-19's Impact on Plaintiffs

64. Until now, and because of the unique nature of their food preparation, Plaintiffs' restaurants had and have no significant take-out business to speak of, representing less than 5% of their sales.

65. As of March 18, 2020, and with no sales, Plaintiffs' are losing approximately $4,200.00 a day.

66. With businesses being told to close, and Plaintiffs' buffet-style restaurants, in particular, having been ordered to do so by the Governor, all of Plaintiffs' restaurants are now closed. Irrespective, and to date, Plaintiffs nevertheless continue to pay their salaried restaurant managers through their management company, Spartan Mongo Management, at considerable expense to Plaintiffs.

67. One of the significant coverages for commercial operations and commercial property policies – like Plaintiffs' Policy – is to provide business income/interruption coverage, which provides coverage for loss of business income due to damage to the insured property or to neighboring property that causes governmental authorities to restrict access to the insured property.

68. By virtue of the fact that Plaintiffs' restaurants are a buffet and salad bar form of food service operation, the COVID-19 virus did, in fact, "damage" their operations and cause significant losses.

69. The COVID-19 virus has caused a distinct and demonstrable alteration of Plaintiffs' restaurants, including but not limited to tangible changes to the property that can be seen or touched, as well as changes that are perceived by the sense of smell and exist in the absence of structural damage.

70. Further, the loss of function or utility of the restaurants themselves make the buildings useless, or uninhabitable, pursuant to the Ohio Department of Health and the Governor's March 13, 2020, order.

71. In sum, Plaintiffs' restaurants have suffered direct physical loss and damage as a result of the global spread of the COVID-19 virus.

72. Plaintiffs are entitled to business interruption and/or government authority business interruption insurance coverage under the relevant provisions of their Policy, including but not limited to repair, restoration or replacement of property, as well as lost income and expense.

Defendant CIC's Denial of Plaintiffs' Claim

73. On or about March 19, 2020, Plaintiffs made a formal claim to CIC pursuant to the Policy and consistent with the terms and conditions of the Policy, a copy of which claim is attached hereto as Exhibit 4.

74. Therein Plaintiffs offered to provide additional documentation or information to CIC in an effort to fully cooperate with CIC's investigation.

75. By letter dated March 23, 2020, CIC notified Plaintiffs that CIC requested additional information from Plaintiffs, a copy of which letter is attached as Exhibit 5.

76. On or about March 24, 2020, Plaintffs provided the requested additional information to CIC, a copy of which is attached here to as Exhibit 6.

77. On or about March 29, 2020, Plaintiffs and their counsel, separately, followed up with CIC by way of email and provided CIC with both case law and the Broward County Order referenced above (and attached hereto as Exhibit 3) supporting Plaintiffs' claim, a copy of which supplementing submissions is attached as Exhibit 7."

78. In bad faith, and in spite of all of the foregoing, CIC has failed to provide the coverage to Plaintiffs that Plaintiffs paid for.

79. Plaintiffs have performed all conditions precedent on their part, including, but not limited to, paying the required premiums for the contracted coverage and timely filing a claim.

80. Despite this, CIC lacks good faith in handling Plaintiffs' claim, and Plaintiffs have suffered damages and had no other option but to seek legal counsel, thereby incurring litigation expenses and attorney's fees.

## COUNT I
## DECLARATORY JUDGMENT

81. Plaintiffs incorporate all previous paragraphs as if fully restated herein.

82. There exists an actual controversy between Plaintiffs and Defendant, which is justiciable in nature and involves rights and/or legal relations between the parties, as Defendant is denying coverage to Plaintiffs under Plaintiffs' Policy as a result of Defendant's unilateral determination that there is *no* direct physical loss or damage to Plaintiffs' property resulting from the COVID-19 virus, irrespective of the fact that the buildings are non-operational because of the virus and the Governor's March 13, 2020, Order.

83. Plaintiffs seek a declaratory judgment that the Governor's March 13, 2020 Order applies to Plaintiffs' six (6) restaurants.

84. Plaintiffs also seek a declaratory judgment that the Governor's March 13, 2020, Order and subsequent restrictions trigger the civil/governmental authority business interruption coverages of Plaintiffs' Policy

85. Plaintiffs also see a declaratory judgment that because Plaintiffs' Policy does not contain an exclusion for a viral pandemic, the Policy *provides* coverage to Plaintiffs for the civil/governmental authority shutdown(s) of its six (6) restaurants due to physical loss from the COVID-19 virus contamination, and that the Policy provides business income and extra expense coverage because the COVID-19 virus has contaminated the Insured Premises.

## COUNT II
## BAD FAITH

86. Plaintiffs incorporate all previous paragraphs as if fully restated herein.

87. The acts and omissions of CIC as set forth hereinabove, and some yet to be discovered in this matter, constitute bad faith.

88. CIC has a duty to act in good faith in the handling and payment of the claims of its insureds, including Plaintiffs.

89. CIC's refusal to pay Plaintiffs' claim, as described more fully above, is not in good faith.

90. CIC's refusal to pay Plaintiffs' claim is not predicated upon any circumstances that furnish reasonable justification in support of CIC's denial.

91. CIC's decision to refuse payment to Plaintiffs under the Policy is arbitrary and capricious, not supported by any rational or reasonable determination process, science or medicine, and is done solely in its own interests.

92. As a direct and proximate result of the bad faith exhibited by CIC, Plaintiffs have suffered damages.

93. In denying Plaintiffs' insurance claim, CIC acted with malice, intentionally refusing reimbursement so as to purposefully avoid a claim for business interruption and/or governmental authority business interruption insurance coverage as provided for in Plaintiffs' Policy.

94. Because of the bad faith of CIC, Plaintiffs have sustained damages, expenses of litigation and attorneys' fees.

95. Due to CIC's malice, Plaintiffs are entitled to punitive damages under Ohio law.

96. Due to CIC's malice, Plaintiffs are entitled to attorney fees under Ohio law.

WHEREFORE, Plaintiffs pray for the following relief against Defendant:

(a) Declaratory Judgment that the Governor's March 13, 2020, Order applies to Plaintiffs' six (6) restaurants;

(b) Declaratory Judgment that the Governor's March 13, 2020, Order and subsequent restrictions triggered the civil/governmental authority business interruption and extra expense coverages of Plaintiffs' Policy;

(c) Declaratory Judgment that Plaintiff's Policy does not contain an exclusion for the COVID-19 viral pandemic;

(d) Declaratory Judgment that the Policy provides twelve (12) months of unlimited actual-loss-sustained coverage to Plaintiffs for the civil authority/governmental shutdown(s) of its six (6) restaurants due to physical loss from the COVID-19 virus contamination;

(e) Declaratory Judgment that the Policy provides for the repair, restoration and/or replacement of the property; and

(f) Any other relief, whether legal or equitable, as the Court may deem proper.

Respectfully submitted,

**LUPER NEIDENTHAL & LOGAN**
A Legal Professional Association

/s/ Gregory H. Melick

Gregory H. Melick (0065694)
Douglas J. Segerman (0064779)
1160 Dublin Road, Suite 400
Columbus, Ohio 43215-1052
(614) 221-7663; Fax: (866) 381-0301
E-mail: GMelick@LNLattorneys.com
E-mail: DSegerman@LNLattorneys.com
Attorneys for Plaintiffs