# Exhibit 7



FILED
LORAIN COUNTY

2020 SEP 29 P 12: 12

COURT OF COMMON PLEAS
TOM ORLANDO

# LORAIN COUNTY COURT OF COMMON PLEAS
## LORAIN COUNTY, OHIO

### TOM ORLANDO, Clerk
### JOURNAL ENTRY
### James L. Miraldi, Judge

| Date | 09/29/20 | Case No. | 20CV201416 |

| FRANCOIS INC | | JEREMY A TOR | |
| Plaintiff | | Plaintiff's Attorney | (216)696-3232 |
| | VS | | |
| THE CINCINNATI INSURANCE COMPANY | | SCOTT STEPHENSON | |
| Defendant | | Defendant's Attorney | ()- |

This matter came before the Court upon the motion of Defendant Cincinnati Insurance Company to dismiss.

Based upon the briefs, the defendant's 12(b)(6) Motion is denied. Before a court may dismiss an action under Civ. R. 12 (B)(6) for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. University Community Tenants Union*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. To make this determination, the court is required to interpret all material allegations in the complaint as true and admitted. *Phung v. Waste Management, Inc*, 23 Ohio St.3d 100,102, 491 NE.2d 1114 (1986).

The complaint states claims which arguably fit the terms and conditions of the insurance policy and therefore the claims and defenses need to be developed with a record. The parties should proceed with discovery on liability/coverage while the damages issues are bifurcated. Discovery on damages is held in abeyance until a decision has been made on coverage as the court anticipates Summary Judgment motions will be filed at the conclusion of discovery on the liability/coverage issues. A telephone status call is set for October 27, 2020 at 11:30a.m. Plaintiff shall initiate the telephone conference to all other counsel and then to the court at (440) 328-2393 or (440) 328-2390 at which time the discovery framework and briefing schedule can be determined by agreement.

*James L. Miraldi*

**James L Miraldi, Judge**

Journal 1325 Page 1807

# Complaint

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

FILED
LORAIN COUNTY

| | |
|---|---|
| FRANCOIS, INC. dba CHEZ FRANCOIS RESTAURANT<br>c/o Spangenberg Shibley & Liber, LLP<br>1001 Lakeside Ave., Suite 1700<br>Cleveland, OH 44114 | CASE NO.:  2023 JUL -6 AM 11: 19<br><br>COURT OF COMMON PLEAS<br>TOM ORLANDO<br>JUDGE:<br>**JUDGE JAMES MIRALDI** |
| Plaintiff<br><br>vs.<br><br>THE CINCINNATI INSURANCE COMPANY<br>6200 South Gilmore Road<br>Fairfield, Ohio 45014-5141 | **COMPLAINT FOR DECLARATORY RELIEF**<br>(With Jury Demand)<br><br>20 CV 201416 |
| Defendant | |

## REQUEST FOR DECLARATORY RELIEF

1.      Plaintiff Francois, Inc. dba Chez Francois Restaurant ("Chez Francois") is a corporation organized under Ohio law with its principal place of business located in Erie County, Ohio. Plaintiff owns and operates Chez Francois restaurant.

2.      Defendant The Cincinnati Insurance Company ("CIC") is also an Ohio corporation with its principal place of business in Ohio that sells insurance in Ohio.

3.      At all relevant times, CIC insured Chez Francois. A copy of the relevant policy, number ECP 038 92 72, is attached as Exhibit 1 ("the Policy").

4.      Defendant CIC Policy delivered the Policy to Chez Francois in Lorain County, through Plaintiff's agent, the Somers Agency, LLC, located in Lorain, Lorain County, Ohio. Accordingly, because the contract at issue was delivered to Plaintiff in Lorain County, venue in this Court is appropriate.

5. The Policy provides coverage for Business Income ("BI") loss, Extra Expense ("EE"), and loss due to the actions of Civil Authority.

6. Relevant portions of the Policy provide, subject to other Policy terms, that Defendant CIC will:

    a. "pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss;" and

    b. "pay Extra Expense you sustain during the "period of restoration;" and

    c. "pay for the actual loss of "Business Income" you sustain and "Extra expense" you incur caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises," caused by or resulting from any Covered Cause of Loss."

7. While the Policy was in force, Chez Francois sustained a loss due to the presence and spread of SARS-CoV-2 and COVID-19 in the community.

8. While the Policy was in force, Chez Francois sustained a loss due to the civil authority orders issued by the Governor of Ohio and the Ohio Department of Health addressing SARS-CoV-2 and the COVID-19 Pandemic.

9. The Insurance Services Office, Inc. ("ISO") publishes policy forms for use by the insurance industry.

10. The Policy utilizes, in part, policy forms and language published by the ISO, as reflected by the ISO copyright designation at the bottom of numerous pages of the Policy.

11. Prior to the effective date of the Policy, ISO published and made available for use a standard virus exclusion form.

2

12.     Defendant CIC chose not to include the ISO standard virus exclusion form in the Policy.

13.     Other than reference to a computer virus, the Policy includes no exclusion that references the word virus.

14.     SARS-CoV-2 is a virus.

15.     SARS-CoV-2 is a physical substance.

16.     SARS-CoV-2 is a human pathogen that causes the disease COVID-19, which can be lethal.

17.     SARS-CoV-2 can be present outside the human body in viral fluid particles.

18.     SARS-CoV-2 can and does remain capable of being transmitted and active on inert physical surfaces for a period of time.

19.     SARS-CoV-2 can and does remain capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, countertops, computer keyboards, touch screens, cardboard packages, food items, silverware, plates, serving trays, glasses, straws, menus, pots, pans, kitchen utensils, faucets, refrigerators, freezers, and other items of property for a period of time.

20.     SARS-CoV-2 can be transmitted by way of human contact with surfaces and items of physical property on which SARS-CoV-2 particles are physically present.

21.     SARS-CoV-2 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Ohio.

22.     SARS-CoV-2 can be transmitted by human to human contact and interaction at premises in Ohio, including places like restaurants.

3

23.     SARS-CoV-2 has been transmitted by human to human contact and interaction at premises in Ohio.

24.     SARS-CoV-2 can be transmitted through airborne particles emitted into the air at premises.

25.     SARS-CoV-2 has been transmitted by way of human contact with airborne particles emitted into the air at premises in Ohio.

26.     The presence of any SARS-CoV-2 particles renders items of physical property unsafe.

27.     The presence of any SARS-CoV-2 particles on physical property impairs its value, usefulness and/or normal function.

28.     The presence of any SARS-CoV-2 particles causes direct physical harm to property.

29.     The presence of any SARS-CoV-2 particles causes direct physical loss to property.

30.     The presence of any SARS-CoV-2 particles causes direct physical damage to property.

31.     The presence of any SARS-CoV-2 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness and/or normal function.

32.     The presence of people infected with or carrying SARS-CoV-2 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

33.     The presence of people infected with or carrying SARS-CoV-2 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and property.

4

34.     It has been widely reported that SARS-CoV-2 can live on inert surfaces. Exactly how long it can live on various surfaces is disputed and/or not yet fully known and is the subject of ongoing research. The same is true of airborne particles containing the virus.

35.     In response to SARS-CoV-2 and the COVID-19 Pandemic, the Governor of Ohio has issued multiple executive orders pursuant to the authority vested in him by the Ohio Constitution and the laws of Ohio.

36.     In response to SARS-CoV-2 and the COVID-19 Pandemic, the Ohio Department of Health, pursuant to its authority under Ohio law, has issued multiple orders, including a Stay at Home Order.

37.     The term "civil authority" is not defined in the Policy.

38.     The State of Ohio is a civil authority as contemplated by the Policy.

39.     The Ohio Department of Health is a civil authority as contemplated by the Policy.

40.     The Governor of the State of Ohio is a civil authority as contemplated by the Policy.

41.     In consequence of the danger posed by the coronavirus and the Pandemic, the Governor of Ohio issued several executive orders. Executive Order 2020-01D, issued on March 9, 2020, declared a state of emergency "for the entire State to protect the well-being of the citizens of Ohio from the dangerous effects of COVID-19 . . ." The order declared that:

> It may be possible that individuals can get COVID-19 by touching a surface or object that has virus on it and then touching their own mouth, nose or eyes.

42.     On March 22, 2020, the Ohio Department of Health issued a Stay at Home Order, effective March 23, 2020, ordering Ohio residents to stay at home and all non-essential businesses in Ohio to cease all activities.

43.     Chez Francois had to significantly reduce operations.

44.     State and local governmental authorities, and public health officials around the Country, acknowledge that SARS-CoV-2, COVID-19, and the COVID-19 Pandemic cause direct physical loss and damage to property. For example:

    a.  The state of Colorado issued a Public Health Order indicating that "COVID-19...*physically contributes to property loss*, contamination, *and damage*..." (Emphasis added);

    b.  The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus *physically is causing property loss and damage*." (Emphasis added);

    c.  Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "is *physically causing property damage*." (Emphasis added);

    d.  The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression...remains a public disaster affecting life, health, [and] *property*..." (Emphasis added);

    e.  The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to *physically impact surfaces and personal property*." (Emphasis added);

    f.  The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and *causing property loss and damage* in certain circumstances." (Emphasis added);

    g.  The State of Illinois issued an Executive Order describing COVID-19's "propensity to *physically impact surfaces and personal property*." (Emphasis added);

    h.  The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "*property*." (Emphasis added);

    i.  North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of...*property*." (Emphasis added); and

    j.  The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily

> from person to person and it is ***physically causing property loss or damage*** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

45.     SARS-CoV-2, COVID-19, and the COVID-19 Pandemic have caused and continue to cause direct physical loss and damage to property.

46.     SARS-CoV-2, COVID-19, and the COVID-19 Pandemic are physically impacting public and private property in Ohio and throughout the country.

47.     On May 15, 2020, the state of Ohio entered Phase 1 of reopening the state and permitted non-essential businesses to reopen under strict guidelines.

48.     As of May 22, 2020, Ohio had 28,751 confirmed cases of coronavirus. Coronavirus has killed at least 1,691 people in Ohio as of the date of this filing.

49.     People in Ohio have, and have had, COVID-19 disease but have not been diagnosed.

50.     People in Ohio have SARS-CoV-2 particles on or about their person and personal property.

51.     Properties and premises throughout Ohio contain the presence of SARS-CoV-2 particles on surfaces and items of property.

52.     It is probable that SARS-CoV-2 particles have been physically present at Chez Francois's premises described in the Policy during the Policy period.

53.     It is probable that SARS-CoV-2 particles have been physically present on surfaces and items of property located at Chez Francois's premises described in the Policy during the Policy period.

54.     It is probable that airborne SARS-CoV-2 particles have been physically present at Chez Francois's premises described in the Policy during the Policy period.

7

55. It is probable that people carrying SARS-CoV-2 particles in, on or about their person have been present at Chez Francois's premises described in the Complaint during the Policy period.

56. It is probable that airborne SARS-CoV-2 particles have been physically present at Chez Francois's premises described in the Policy during the Policy period.

57. It is probable that Chez Francois's insured premises have sustained direct physical loss or damage due to the presence of SARS-CoV-2, and has unquestionably sustained direct physical loss of and at those locations as the result of the Pandemic and/or civil authority orders issued by the Governor of Ohio.

58. Chez Francois submitted a timely insurance claim to CIC.

59. CIC issued a reservation of rights letter in which it questioned whether Chez Francois sustained a loss covered by the Policy. A copy of the denial letter is attached as Exhibit 2.

60. Since there is a dispute about whether or not Chez Francois has coverage under CIC's policy for the loss sustained and to be sustained in the future, Chez Francois is entitled to declaratory relief from this Court pursuant to Ohio Civil Rule 57 and R.C. §2721.01 to 2721.15.

61. Chez Francois is entitled to a declaration that (1) Chez Francois sustained direct physical loss or damage as a result of the coronavirus pandemic; (2) coronavirus is a covered cause of loss under the Policy; (3) the losses incurred by Chez Francois as the result of the executive orders issued by the Governor of Ohio are covered losses under the Policy; (4) CIC has not and cannot prove the application of any exclusion or limitation; (5) Chez Francois is entitled to coverage for its **Business Income** loss and **Extra Expense** resulting from coronavirus; (6) Chez Francois is entitled to coverage for loss due to the actions of Ohio's civil authorities; (7) Chez

Francois has coverage for any substantially similar civil authority order in the future that limits or restricts the public's access to Chez Francois's services; and (8) any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

62.     Chez Francois does not seek a determination of its damages resulting from the coronavirus pandemic. If there is a dispute between the parties as to the amount of the loss, the Policy provides that such a dispute should be resolved by **Appraisal**:

> **Appraisal**
>
> If we and you disagree on the amount of "Business Income" or Extra Expense "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.
>
> The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of "Business Income" or Extra Expense "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
>
> Each party will:
>
> a.      Pay its chosen appraiser; and
>
> b.      Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we still retain our right to deny the claim. (FA 213 0516, pages 4-5 of 9)

63.     Plaintiff prays for declaratory relief from the Court that CIC must resolve any dispute about the amount of loss via Appraisal. Chez Francois also requests the Court to appoint the umpire if the appraisers cannot agree.

64.     Chez Francois prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

WHEREFORE, Plaintiff Chez Francois seeks judgment against the defendant, as set forth above, plus interest, costs, and attorney fees as allowed by law.

Respectfully submitted,

Nicholas A. DiCello (0075745)
Dennis R. Lansdowne (0026036)
Jeremy A. Tor (0091151)
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Ave., Suite 1700
Cleveland, Ohio 44114
(216) 696-3232
ndicello@spanglaw.com
dlansdowne@spanglaw.com
jtor@spanglaw.com

Robert P. Rutter (0021907)
Robert A. Rutter (0081503)
RUTTER & RUSSIN, LLC
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
brutter@OhioInsuranceLawyer.com
bobbyrutter@OhioInsuranceLawyer.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests, pursuant to Civil Rule 38(B), a trial by jury of any of the issues in the within lawsuit that are properly triable to a jury.

NICHOLAS A. DICELLO