# Exhibit 8

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO
## CENTRAL

## MINUTE ORDER

DATE: 09/30/2020          TIME: 12:50:00 PM          DEPT: C-67

JUDICIAL OFFICER PRESIDING: Martin W. Staven
CLERK: Patricia Ashworth
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00015679-CU-IC-CTL**   CASE INIT.DATE: 05/26/2020
CASE TITLE: **BEST REST MOTEL INC VS SEQUOIA INSURANCE COMPANY [IMAGED]**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Insurance Coverage

---

## APPEARANCES

---

The Court, having taken the above-entitled matter under submission on 09/25/2020 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Plaintiff dismissed Amtrust North America, Inc. for insurance coverage on June 26, 2020, so Amtrust's demurrer is moot.

Defendant Sequoia Insurance Co.'s demurrer to the complaint of plaintiff Best Rest Motel, Inc., dba Holiday Inn Express Old Town complaint is overruled. There are questions outside the complaint whether there is insurance coverage under this policy as a result of the coronavirus pandemic. Judicial notice is granted to defendant's exhibits 1-3, the various executive orders. The court grants judicial notice of exhibit 4, Department of Insurance "FAQ on business interruption insurance and other issues affecting California small businesses", and exhibits 5 and 6, the press releases, but not for the truth of the matters asserted therein.

Plaintiff's request for judicial notice of exhibits 1 and 2 are granted to the extent the County of San Diego Health and Human Services Agency, Public Health Services, Epidemiology and Immunization Services Branch; "County of San Diego – Coronavirus Disease 2019 (COVID-19) Interactive Data Set – Confirmed Cases by City" for the City of San Diego; (accessed September 14, 2020) published data, but not the for truth of the matters asserted.

Plaintiff's objections to the cases cited by defendant in the reply are overruled. There are sufficient facts alleged in the complaint to withstand a demurrer.

Defendant shall file and serve an answer by October 15 , 2020.

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** BEST REST MOTEL INC VS SEQUOIA INSURANCE COMPANY [IMAGED]

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>37-2020-00015679-CU-IC-CTL |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the Minute Order 09/30/2020 was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 09/30/2020.

Clerk of the Court, by: *P. Ashworth* , Deputy
P. Ashworth

SARA M THORPE
NICOLAIDES FINK THORPE LLP
101 MONTGOMERY STREET # 2300
SAN FRANCISCO, CA 94104

CHARLES S LIMANDRI
9120
RANCHO SANTA FE, CA 92067

☐ Additional names and address attached.

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

# Transcript

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO
CENTRAL DIVISION
DEPARTMENT C-67        BEFORE HON. EDDIE C. STURGEON, JUDGE

|  |  |
|---|---|
| BEST REST MOTEL, INC., D/B/A ) | |
| HOLIDAY INN EXPRESS OLD TOWN, ) | |
| A CALIFORNIA CORPORATION, ) | DEMURRER HEARING |
| ) | |
| PLAINTIFFS, ) | CASE NO. |
| ) | 37-2020-00015679-CU-IC-CTL |
| VS. ) | |
| ) | |
| SEQUOIA INSURANCE COMPANY, ) | |
| CALIFORNIA CORPORATION; ) | |
| AMTRUST NORTH AMERICA, INC., A ) | |
| DELAWARE CORPORATION; AND DOES ) | |
| 1 THROUGH 20, INCLUSIVE, ) | |
| ) | |
| DEFENDANTS. ) | |
| _____) | |

REPORTER'S TRANSCRIPT

SEPTEMBER 25, 2020

APPEARANCES:
 FOR THE PLAINTIFFS:

                        CHARLES S. LIMANDRI, ESQ.
                        LIMANDRI & JONNA, LLP
                        16236 SAN DIEGUITO ROAD
                        BUILDING 3, SUITE 3-15
                        RANCHO SANTA FE, CALIFORNIA 92067
                        858-759-9930
                        CSLIMANDRI@LIMANDRI.COM


 FOR THE DEFENDANTS:

                        MS. SARA THORPE
                        MR. TIMOTHY P. KITT
                        NICOLAIDES FINK THORPE, LLP
                        101 MONTGOMERY STREET
                        SUITE 2300
                        SAN FRANCISCO, CALIFORNIA 94104
                        415-745-3772
                        STHORPE@NICOLAIDESLLP.COM
                        TKITT@NICOLAIDESLLP.COM


 REPORTED BY:           MICHELLE R. NEUENSWANDER
                        CERTIFIED SHORTHAND REPORTER
                        CSR NO. 12508

1    SAN DIEGO, CALIFORNIA, SEPTEMBER 25, 2020, 9:48 A.M.

2

3                    P-R-O-C-E-E-D-I-N-G-S

4

5         THE COURT:  BACK TO NO. 12.  ALL RIGHT.  THIS IS

6    MY FAVORITE CASE, I WANT YOU TO KNOW THAT, COUNSEL.

7    THIS IS BEST REST MOTEL VERSUS SEQUOIA INSURANCE.

8         PLAINTIFF, I HAVE --

9         MR. LIMANDRI:  ATTORNEY CHARLES LIMANDRI,

10   YOUR HONOR.

11        THE COURT:  THANK YOU.

12        ON THE PHONE FOR THE DEFENSE, I HAVE?

13        MS. THORPE:  SARAH THORPE FOR SEQUOIA.

14        MR. KITT:  TIMOTHY KITT FOR SEQUOIA, AS WELL.

15        THE COURT:  FOR THE DEFENSE, WHO'S GOING TO ARGUE?

16        MS. THORPE:  SARAH THORPE.

17        THE COURT:  MS. THORPE, THANK YOU.

18        MS. THORPE, I SHOULD HAVE TOLD YOU THIS

19   BEFOREHAND, IN YOUR ARGUMENT, I WOULD LIKE TO LOOK AT

20   TWO CASES, THE STUDIO -- I WON'T SAY 54 -- BUT THE

21   STUDIO 417 CASE --

22        THE REPORTER:  I'M SORRY, YOUR HONOR, I'M HAVING

23   TROUBLE HEARING YOU.  YOUR HONOR, I'M HAVING TROUBLE

24   HEARING YOU.  THIS IS MICHELLE, THE COURT REPORTER.

25        THE COURT:  THAT'S BECAUSE I TURN MY BACK TO SEE

26   PEOPLE.  SO I'LL MAKE SURE I SPEAK LOUDER.

27        THE REPORTER:  THANK YOU.

28        THE COURT:  I WANT BOTH PARTIES TO TALK ABOUT THE

```
 1    STUDIO 417 CASE AND ALSO THE COOPER CASE IN THEIR

 2    ARGUMENTS.  ALSO --

 3          MR. LIMANDRI:  YES, YOUR HONOR.

 4          THE COURT:  -- ONE MORE THING.  IT STATES

 5    SPECIFICALLY PAGE 4, LINE 21, THE INSURED PROPERTY WAS

 6    AND CONTINUES TO BE REPEATEDLY INSPECTED BY INDIVIDUAL

 7    COUNTY EMPLOYEES FROM THE PREMISES UNTIL THE VIRUS IS

 8    ELIMINATED IN THE REGION.

 9          COUNSEL, I'LL WAIT FOR COMMENTS ON THAT, TOO.

10          MS. THORPE:  YOUR HONOR, PLEASE TELL ME YOUR

11    REFERENCE AGAIN, WHERE YOU'RE LOOKING?

12          THE COURT:  COMPLAINT, PAGE 4.  THIS IS THE

13    COMPLAINT FILED BY THE PLAINTIFF, PAGE 4, LINE 21 TO 23.

14          MS. THORPE:  OKAY.

15          THE COURT:  WHY DON'T YOU JUST TAKE YOUR TIME NOW.

16    GOOD NEWS IS WE'VE GOT TIME.  AND, MS. THORPE, MAKE YOUR

17    ARGUMENT.

18          MS. THORPE:  YES, YOUR HONOR.

19          SO WE ARE AWARE OF YOUR TENTATIVE, YOUR HONOR,

20    WHICH IS THAT THE COMPLAINT ALLEGED ENOUGH TO GET PAST

21    THE DEMURRER.  AND SO I DO WANT TO TALK ABOUT WHAT'S IN

22    THE COMPLAINT AND I ALSO WANT TO TALK ABOUT THE POLICY

23    LANGUAGE AND CALIFORNIA LAW.  AND WE DON'T NEED TO LOOK

24    TO MISSOURI OR ANY OTHER STATE'S LAW BECAUSE WE HAVE

25    CALIFORNIA LAW ON THIS.

26          SO FIRST OF ALL, IT'S VERY IMPORTANT WHAT'S IN THE

27    COMPLAINT AND YOU JUST POINTED TO A PARTICULAR

28    PROVISION, BUT WHAT THE -- WHAT THAT SAYS AT LINES 21 TO
```

1   24 IS THAT -- IT SAYS, "LOCAL GOVERNMENTS ACROSS THE

2   COUNTRY URGE THEIR CITIZENS TO ACT AS IF THEY WERE

3   INFECTED AND AS IF EVERYONE WAS AROUND THEM WAS INFECTED

4   WITH A NOVEL AND HIGHLY INFECTIOUS VIRUS."  SO THAT IS

5   NOT SAYING THAT THERE WAS SUCH A THING AT THE HOTEL.

6          SO WHAT'S IMPORTANT HERE IS THE COMPLAINT.  AND

7   ATTACHED TO THIS COMPLAINT AS EXHIBIT B AND INCORPORATED

8   IN THE COMPLAINT IS THE DENIAL LETTER FOR THIS CLAIM

9   THAT ACTUALLY CAME IN, SO WE KNOW SOMETHING ABOUT THE

10  CLAIM.  AND THE CLAIM THAT CAME IN TO SEQUOIA, THE

11  INSURED WAS ASKED, "IS THERE ANY PHYSICAL DAMAGE TO YOUR

12  HOTEL?"

13         AND THE INSURED SAID, "NO."  AND THAT IS NOT

14  REFUTED BY THE PLAINTIFF.  BEST REST DOESN'T SAY

15  ANYTHING ABOUT THAT IN ITS COMPLAINT.  THAT IS THE FACTS

16  IN THE COMPLAINT.  THAT LETTER ALSO SAID, "IF YOU HAVE

17  ANY OTHER INFORMATION, PLEASE TELL US SO WE CAN TAKE

18  THAT INTO CONSIDERATION WITH YOUR CLAIM."  THE

19  PLAINTIFFS ALLEGE IN THEIR COMPLAINT AT PARAGRAPH 18

20  THROUGH 24 IS THAT A NUMBER OF ORDERS HAVE CAUSED THEM

21  TO HAVE TO SHUT DOWN THE HOTELS EITHER TEMPORARILY OR

22  FOR SOME PERIOD OF TIME AND THEY DO -- THAT IS WHAT HAS

23  CAUSED THE BUSINESS LOSS.

24         IN ADDRESSING THIS IN THEIR OPPOSITION, THE

25  PLAINTIFFS VERY CURIOUSLY, UNDER FACTUAL ALLEGATIONS,

26  ALLEGE AT PAGE 2 OF THEIR OPPOSITION, THAT THE DAMAGE TO

27  PROPERTY -- BECAUSE THEY KNOW THAT THEY NEED TO SHOW

28  PHYSICAL DAMAGE TO PROPERTY, THEY SAY IT'S THREE THINGS:

1    RESTRICTIONS ON TOURISM, AN ABSENCE OF RESERVATIONS, AND

2    LOST BUSINESS INCOME.  NONE OF THAT IS PHYSICAL DAMAGE

3    TO THE INSURED PROPERTY.  THAT'S TALKING ABOUT WHAT IS

4    YOUR ECONOMIC LOSS?  WHAT HAPPENED?  THAT'S THE EFFECT,

5    NOT THE CAUSE.

6         SO WHAT WE NEED TO DO IS SCOUR THIS COMPLAINT TO

7    SEE IF THE COURT IS RIGHT THAT THERE'S ENOUGH THERE AND

8    THERE ISN'T.  ALL THERE IS IN PARAGRAPH 25, WHICH IS THE

9    ONE I THOUGHT YOU WOULD POINT TO, THERE IS A VAGUE

10   ALLEGATION THAT THERE'S COVID IN OR AROUND THE HOTEL.

11   THAT'S THE PARAGRAPH THAT PLAINTIFFS EMPHASIZE.  AGAIN,

12   THAT COULD BE LIKE POLLEN DUST.  THERE'S SOMETHING IN OR

13   AROUND THE HOTEL.

14        THERE'S NO ALLEGATIONS OF PHYSICAL ALTERATIONS OR

15   A NEED TO REPAIR THIS HOTEL, EITHER ALL OR PART OF IT.

16   AND IMPORTANTLY, THERE'S BEEN SOME TIME FOR PLAINTIFF TO

17   REMEDY THIS ABOUT THEIR ALLEGATIONS.  THEY GOT THE

18   CHANCE TO IN RESPONSE TO THE DENIAL THAT WAS SENT TO

19   THEM IN APRIL 1, THEY HAD THE CHANCE TO WHEN THEY FILED

20   THIS COMPLAINT IN MAY, THEY HAD THE CHANCE TO IN

21   RESPONSE TO THIS DEMURRER THAT WAS FILED IN JUNE, AND

22   PLAINTIFF HAD NOT COME UP WITH ANY PHYSICAL ALTERATION,

23   PHYSICAL DAMAGE TO THEIR INSURED PROPERTY.

24        NOW, WHY DO I EMPHASIZE THOSE WORDS?  THE SEQUOIA

25   POLICY ONLY PROVIDES COVERAGE FOR BUSINESS INTERRUPTION,

26   FOR CIVIL AUTHORITY COVERAGE, FOR DEPENDENT PROPERTY

27   COVERAGE IF THERE IS A DIRECT PHYSICAL LOSS OF OR DAMAGE

28   TO THE COVERED PROPERTY.  AND WE -- THE LANGUAGE IS

1    CLEAR AND WE KNOW THAT UNDER CALIFORNIA LAW, IN

2    INTERPRETING THE POLICY, YOU HAVE TO LOOK AT THE POLICY

3    LANGUAGE IN YOUR REPLY.  THAT'S THE INTENT OF THE PARTY.

4    YOU CANNOT USE PUBLIC POLICY AS AN INTERPRETIVE AID.

5    THAT IS WARD AT PAGE 553.  THAT'S ONE PLACE WHERE THE

6    COURTS HAVE SAID THAT.

7         SO IT IS UNFORTUNATE.  I MEAN, WE KNOW THIS IS A

8    DIFFICULT TIME.  WE KNOW THIS IS AN EXTREMELY DIFFICULT

9    TIME FOR BUSINESSES, BUT THAT DOESN'T CHANGE CONTRACT

10   LANGUAGE.  WHAT WE HAVE HERE IS A CONTRACT AND HAS VERY

11   SPECIFIC COVERAGE.  THE COVERAGE IS FOR PHYSICAL

12   ALTERATIONS.

13        THE BEST EXAMPLES ARE IN LOOKING AT ALL THE CASE

14   LAW, THE CASES THAT THE PARTIES HAVE CITED TO YOU, IT

15   WOULD BE SO EASY IF THIS WAS A FIRE THAT HAD HARMED A

16   PROPERTY.  THEY WOULD KNOW WAS THE PROPERTY DESTROYED,

17   WAS IT DAMAGED, DOES IT HAVE TO BE REPAIRED?  IT IS

18   HARDER WHEN IT'S SOMETHING YOU CAN'T SEE.  AND THAT'S

19   WHY THE EXAMPLES OF SMOKE AND SEWAGE AND THINGS LIKE

20   THAT HAVE BEEN OFFERED.  BUT THE CASES THAT FIND

21   COVERAGE, FIND THAT THERE IS, IN THE WORDS OF THE COURT

22   FROM MRI HEALTH CARE, A DISTINCT, DEMONSTRABLE PHYSICAL

23   ALTERATION OF THE PROPERTY.  THAT'S MRI HEALTH CARE AT

24   PAGE 39.

25        SO UNDER ALL OF THESE COVERAGES THAT IS BUSINESS

26   INCOME COVERAGE, YOU NEED A DIRECT PHYSICAL LOSS OF OR

27   DAMAGE TO THE INSURED'S PROPERTY.  MRI HEALTH CARE AT

28   PAGE 37 TALKS ABOUT A PHYSICAL DAMAGE THAT NEEDS TO BE

1    REPAIRED.  THAT'S WHY EXAMPLES LIKE SMOKE ALL IN A

2    BUILDING THAT GETS INTO THE WALLS AND THE CARPETS AND

3    THE SOFT SURFACES, IF YOU HAD TO YOU TAKE THAT ALL OUT

4    AND REPLACE IT ALL, THERE WOULD BE A DEEP CLEAN, YOU CAN

5    UNDERSTAND.  THERE'S A -- THERE'S A PHYSICAL DAMAGE THAT

6    HAS HAPPENED.

7         BUT LOOK AT MAMA JO'S THAT WE CITE IN OUR REPLY.

8    IF IT'S JUST WIPING DOWN A SURFACE, THAT'S NOT PHYSICAL

9    DAMAGE.  IF YOU HAVE TO HEIGHTEN THE AMOUNT OF YOUR

10   CLEANING, THAT'S NOT PHYSICAL DAMAGE TO THE PROPERTY.

11   AND THEY HAVEN'T EVEN SAID THAT.  THEY HAVEN'T EVEN

12   ALLEGED THAT, THAT THEY HAD TO SHUT DOWN FOR A WEEK TO

13   CLEAN.

14        I'M SORRY.  I CAN SEE YOUR LIPS MOVING, BUT I

15   CAN'T HEAR YOU, YOUR HONOR.

16        THE COURT:  YOU KNOW, IT'S REALLY YOU SAY, JUDGE,

17   DON'T GO THERE, I WON'T GO THERE.  ASSUMING THAT A PARTY

18   SAYS, JUDGE, YOU KNOW WHAT WE HAVE TO DO NOW?  WE HAVE

19   TO CLEAN THE SURFACES EVERY DAY.  EVERY TIME SOMEONE

20   COMES IN, WE'VE GOT TO CLEAN IT.  WE'VE GOT TO DO ALL

21   THIS OF WORK TO MAKE SURE THE PLACE IS SANITARY.

22        WOULD THAT BE COVERED?

23        MS. THORPE:  IT'S STILL NOT PHYSICAL DAMAGE.  IT

24   IS NOT PHYSICAL DAMAGE.  THE CLOSEST THING WE FOUND WAS

25   THE MAMA JO'S CASE.

26        THE COURT:  OKAY.  AGAIN, IF COVID WAS ON A

27   SURFACE AND THEY ARE CLEANING IT DOWN, THEN THAT'S NOT

28   PHYSICAL DAMAGE, CORRECT?

1     MS. THORPE:  TO THE INSURED'S PROPERTY.

2     THE COURT:  YOU BROKE.  STATE THAT AGAIN.  YOU

3 BROKE.

4     MS. THORPE:  OKAY.  SORRY.  IF YOU LOOK AT

5 MAMA JO'S, WHICH IS A FLORIDA CASE, BUT IT RELIED ON

6 CALIFORNIA LAW, MRI HEALTH CARE, THE COURT THERE SAID,

7 IF IT'S JUST WIPING DOWN SOMETHING, IF IT'S JUST

8 CLEANING, YOU HAVE TO CLEAN MORE FREQUENTLY, THAT'S NOT

9 A PHYSICAL ALTERATION TO YOUR PROPERTY.  YOUR PROPERTY

10 HAS NOT SUFFERED A PHYSICAL DAMAGE.  THAT'S WHAT THOSE

11 WORDS IN THE POLICY MEAN.  IT MEANS PHYSICAL DAMAGE TO

12 THE PROPERTY.  SO I DON'T THINK THAT THIS CAN

13 ANTICIPATE -- I DON'T THINK THAT PLAINTIFFS COULD ADD

14 ANYTHING, AMEND THEIR COMPLAINT TO MAKE THIS A VIABLE

15 CLAIM.  THEY'VE HAD THE OPPORTUNITY, AS I SAID, TO DO

16 THAT.

17     THEY SUGGEST IN THEIR OPPOSITION THAT THEY

18 RECENTLY LEARNED THERE'S AN EMPLOYEE THAT TESTED

19 POSITIVE RECENTLY.  WHAT, IN THE LAST MONTH?  HARD TO

20 SAY, THEY DON'T SAY AT WORK SPECIFIC.  THEY DON'T SAY IF

21 IT'S A PERSON WHO CONTRACTED THE VIRUS AT THE HOTEL.

22 THEY DON'T SAY HOW THAT EQUATES WITH PHYSICAL DAMAGE TO

23 THE PROPERTY.  SO I THINK WHAT IT SHOWS IS THEY STILL

24 DON'T HAVE PHYSICAL DAMAGE TO THE PROPERTY; OTHERWISE,

25 THEY WOULD HAVE SAID SO.

26     SO UNDER NONE OF THE COVERAGES CAN THEY STATE A

27 VIABLE CLAIM AND, THEREFORE, THE DEMURRER IS APPROPRIATE

28 RATHER THAN HAVING THE PARTY BRING A MOTION FOR SUMMARY

1    JUDGMENT.

2          THANK YOU, YOUR HONOR.

3          THE COURT:  GOOD ARGUMENT, COUNSEL.

4          ALL RIGHT.  PLAINTIFF, WHAT DO YOU SAY IN

5    RESPONSE?

6          MR. LIMANDRI:  I WILL GO AHEAD, YOUR HONOR,

7    CHARLES LIMANDRI SPEAKING, ADDRESS POINTS THAT I

8    UNDERSTOOD COUNSEL WAS MAKING IN HER REMARKS BECAUSE I

9    WANT TO COVER IT IN A MORE ORGANIZED FASHION ACCORDING

10   TO THE NOTES THAT I WANTED TO USE.  BUT SPECIFICALLY,

11   WITH REGARD TO THE POINTS THAT MS. THORPE ENDEAVORED TO

12   MAKE, SHE SAID THE DENIAL LETTER IS SOME TYPE OF

13   ADMISSION.  THE DENIAL LETTER IS ATTACHED TO THE

14   COMPLAINT.  IT'S GOT SOME SELF-SERVING COMMENT THAT PER

15   OUR CONVERSATION, ON MARCH 20TH THERE WAS NO DIRECT,

16   PHYSICAL DAMAGE TO THE COVERED PROPERTY.

17         WELL, I DON'T KNOW EXACTLY WHAT WAS IN THAT

18   CONVERSATION.  OBVIOUSLY, IT'S INCUMBENT UPON THE

19   INSURANCE CARRIER TO INFORM THE INSURED OF THEIR RIGHTS

20   AND BENEFITS AVAILABLE TO THEM UNDER THE POLICY, BUT

21   WHAT I SEE IN THIS LETTER AND WHAT I HEAR FROM

22   MS. THORPE IS THEY ARE JUST CONVENIENTLY FOCUSING ON

23   THOSE WORDS IN THE POLICY THAT THEY THINK BEST SERVE THE

24   INSURANCE COMPANY'S INTEREST, WHICH, OF COURSE, IS NOT

25   THEIR JOB UNDER FAITH AND FAIR DEALING.  THE ACTUAL

26   LANGUAGE IS DIRECT PHYSICAL LOSS OR DAMAGE, WHICH WAS

27   VERY IMPORTANT TO THE COURT IN THE STUDIO 417 CASE,

28   BECAUSE IT IS IN THE DISJUNCTIVE.

1          IF MS. THORPE WANTS TO KEEP HAMMERING ON -- ON

2     DAMAGE, THE WAY THAT SEQUOIA MISLEADINGLY DID IN THE

3     DENIAL LETTER, OKAY, BUT LOSS CONNOTES LOSS OF USE.  AND

4     IN THE CASES THAT WE CITED, INCLUDING STUDIO 417, WHICH

5     IS VERY MUCH ON POINT TO OUR FACTS AS WELL AS THE COOPER

6     CASE WHICH WAS A CASE INVOLVING BACTERIA AS WELL AS THE

7     PATEL CASE, WHICH IS A CASE INVOLVING SMOKE.  AND QUITE

8     FRANKLY, YOUR HONOR, I'M SURPRISED AT THE ADMISSION, AND

9     THAT'S WHAT IT IS, OF MS. THORPE THAT SMOKE IS INDEED A

10    PROPERTY DAMAGE BECAUSE YOU'VE GOT TO CLEAN SURFACES.

11    ISN'T THAT WHAT WE'RE TALKING ABOUT HERE?  ISN'T THAT

12    WHAT MY CLIENT HAD TO DO?  ISN'T THAT WHAT IS, IN FACT,

13    IN THE PROTOCOLS THAT THEY ASKED THE COURT TO TAKE

14    JUDICIAL NOTICE OF, THAT A PART OF THE COUNTY ORDERS

15    THAT REQUIRE SANITATION STANDARDS.  SO ARE YOU GOING TO

16    HAVE TO CLEAN THE SMOKE ONCE AND THAT'S ENOUGH, BUT IF

17    YOU HAVE TO WIPE DOWN THE COUNTERS AND LARGE SURFACES IN

18    A HOTEL EVERY DAY FOR SIX MONTHS, THAT'S NOT ENOUGH?

19         YOUR HONOR, ISN'T THAT AT LEAST A FACTUAL QUESTION

20    AND ISN'T THAT SOMETHING THAT SHOULD BE RAISED AT

21    SUMMARY JUDGMENT OR TRIAL, FOR A JUDGE OR JURY TO DECIDE

22    AS OPPOSED TO A DEMURRER WHERE ALL FACTUAL INFERENCES

23    HAVE TO BE INTERPRETED IN FAVOR OF THE PLAINTIFF.  AND

24    IT IS TWO PLACES IN THIS COMPLAINT.  AND I LIKE THE WAY

25    COUNSEL JUST STOPPED READING WHEN IT'S CONVENIENT.

26    BECAUSE THE PARAGRAPH 18 DOESN'T JUST TALK ABOUT THE

27    COUNTY ORDERS THAT -- THAT THINGS MAY BE INFECTED, WELL,

28    THAT'S TRUE, THEY MAY BE.

1    BUT THEN WE GO ON TO SAY THAT IN THIS CASE IT

2    CONTINUES TO BE REPEATEDLY INFECTED BY INDIVIDUALS

3    COMING AND GOING FROM THE PREMISES UNTIL THE VIRUS IS

4    ELIMINATED IN THE REGION.  THIS IS BASICALLY A HOTEL

5    AIRPORT.  IT'S IN OLD TOWN, BUT IT'S A MILE OR SO OF THE

6    AIRPORT.  AND THEY HAVE -- IF I HAD TO -- I SHOULDN'T

7    HAVE TO, I'VE GOT ADDITIONAL FACTS, BUT THEY HAVE

8    AIRLINE PERSONNEL CONSTANTLY STAYING THERE EXPOSED TO

9    EVERYBODY FROM EVERYWHERE.

10    BUT BEYOND THAT, ON PARAGRAPH 25, WHICH AS

11    MS. THORPE POINTED OUT, WE QUOTED IN THE COMPLAINT, IT

12    SAYS, THE VIRUS WAS CARRIED INTO THIS COUNTRY BY

13    INDIVIDUALS TRAVELING BETWEEN COUNTRIES WHO INFECTED

14    OTHERS AND THE FACILITIES THEY VISITED, INFECTING

15    PROPERTY IN AND AROUND THE INSURED PROPERTIES.  NOW, I

16    COULD HAVE GONE ON AND ELABORATED AD NAUSEAM, BUT THE

17    FACT IS WE SAID THE VIRUS INFECTED THE INSURED PROPERTY

18    AND PROPERTY AROUND THE INSURED PROPERTY.  THAT'S

19    SUFFICIENT FOR THE PURPOSES OF SHOWING THAT THERE IS

20    DIRECT PHYSICAL LOSS OR DAMAGE PARTICULARLY IN LIGHT OF

21    THE CASES THAT WE CITED WHERE LOSS WOULD INCLUDE

22    SOMETHING MORE AKIN TO A LOSS OF USE.

23    AND AGAIN, THAT'S NOT JUST STUDIO 417, PATEL, IT'S

24    THE COOPER CASE, WHICH INVOLVED BACTERIA, FOR PETE'S

25    SAKE.  I DON'T KNOW HOW ONE CAN MAKE A DISTINCTION

26    BETWEEN A VIRUS AND BACTERIA, WHICH ARE BOTH

27    MICROORGANISMS, PARTICULARLY WHEN -- AND I THINK THIS IS

28    AN OVERRIDING POINT, YOUR HONOR, THERE'S NO VIRUS

1    EXCLUSION IN THIS POLICY, WHICH THERE IS IN SOME

2    80 PERCENT OF THESE BUSINESS INCOME LOSS POLICIES, WOULD

3    HAVE BEEN VERY EASY FOR SEQUOIA TO PUT THEM IN THE

4    POLICY AFTER THE SARS EPIDEMIC IN 2005.  THE CARRIERS

5    ALL STARTED TO DO THAT IN 2006.  THIS CARRIER CHOSE NOT

6    TO DO THAT.  SO AT THE VERY LEAST, IT'S CREATED AN

7    AMBIGUITY, WHICH, OF COURSE, UNDER BASIC INSURANCE LAW

8    HAS TO BE INTERPRETED IN FAVOR OF THE INSURED.  AND

9    EVERY INFERENCE, AGAIN, WHEN THERE ARE TWO REASONABLE

10   WAYS TO INTERPRET THE POLICY IS THAT IT HAS TO GO IN

11   FAVOR OF THE INSURED.

12        THERE IS NO DEFINITION OF DIRECT PHYSICAL LOSS OR

13   DAMAGE IN THIS POLICY.  MS. THORPE KEEPS TALKING ABOUT,

14   OH, YOU HAVE TO SHOW STRUCTURAL DAMAGE.  REALLY?  WHERE

15   DOES IT SAY THAT IN THE POLICY?  THE CLOSEST IT COMES IS

16   IN THE PART OF THE POLICY DEALING WITH LIABILITY

17   COVERAGE WHERE THE ONLY DEFINITION GIVEN FOR PROPERTY

18   DAMAGE SPECIFICALLY INCLUDES LOSS OF USE.  THEY'RE GOING

19   TO SAY, OH, WELL, THAT'S A THIRD-PARTY LIABILITY.  YOU

20   INTERPRET THE POLICY AS A WHOLE.  YOU HAVE TO LOOK AT IT

21   THE WAY THE REASONABLE INSURED WOULD DO IT, SOMEONE WHO

22   IS NOT NECESSARILY TRAINED AS A JUDGE OR LAWYER WHO DOES

23   THIS AS A LIVING.  THE REASONABLE INSURED WHO PURCHASED

24   THIS POLICY THAT THIS IS GOING TO INCLUDE BUSINESS

25   INCOME LOSS, AND THEN THEY BASICALLY HAVE EITHER

26   COMPLETELY SHUT DOWN OR IN THIS CASE, AGAIN, MUCH MORE

27   LIBERAL AND BROAD LANGUAGE THAT SAYS SUSPENSION, WHICH

28   IT DOES DEFINE TO INCLUDE A SLOW DOWN.  A LOT OF

1     POLICIES SAY YOU HAVE TO HAVE A COMPLETE SHUT DOWN.

2     THIS POLICY DOESN'T.

3          NOT ONLY THAT, THIS POLICY HAS VERY BROAD LANGUAGE

4     BOTH FOR THE CIVIL ACTION COVERAGE AND FOR THE DEFENDANT

5     PROPERTY COVERAGE.  FOR THE CIVIL ACTION COVERAGE,

6     UNLIKE CASES CITED BY SEQUOIA, IT DOESN'T SAY THAT THE

7     SHUTDOWN ORDER HAS TO BE DIRECTED TO THIS SPECIFIC

8     INSURED.  IT DOESN'T SAY THAT ACCESS HAS TO BE

9     COMPLETELY BLOCKED.  STUDIO 417 ADDRESSES THAT.  IT SAYS

10    YOU COULD ACCEPT ANY ACCESS OR ALL ACCESS, BUT YOU JUST

11    SAID ACCESS.  SO THERE WAS A PARTIAL LOSS OF BUSINESS IN

12    STUDIO 417 AS THERE OBVIOUSLY WAS TO OUR CLIENT AS IS

13    PLED IN THE COMPLAINT.  AND AGAIN, ON DEMURRER, ALL OF

14    THIS IS TAKEN AS TRUE.  THEY WANT TO CHALLENGE IT ON

15    SUMMARY JUDGMENT FACTUALLY, GO FOR IT.  OKAY.  WE'LL --

16    WE'LL BE HAPPY TO DO THAT.  BUT ON DEMURRER, EVERYTHING

17    IN THE COMPLAINT SHOULD BE TAKEN AS TRUE.

18         AS FAR AS DEPENDENT PROPERTY GOES, THEY COULD HAVE

19    SAID WE'RE ONLY GOING TO ALLOW YOU TO COVER IF CERTAIN

20    OF YOUR LEADER PROPERTIES ARE INFECTED BY COVID-19 OR --

21    OR OTHERWISE DAMAGED IN SOME WAY.  AGAIN, THEY WOULDN'T

22    HAVE IDENTIFIED COVID-19, BUT THEY COULD HAVE IDENTIFIED

23    THE LEADER PROPERTIES.  THEY DON'T DO THAT.  OTHER

24    POLICIES DO.  THEY DON'T EVEN HAD HAVE A MILEAGE

25    LIMITATION FOR THE DAMAGE TO OTHER PROPERTIES FOR THE

26    DEPENDENT PROPERTY COVERAGE OR THE CIVIL ACTION

27    COVERAGE.  IT'S A VERY BROAD COVERAGE.

28         NOW, WE SUBMITTED A REQUEST FOR JUDICIAL NOTICE,

1  BUT, YOUR HONOR, IT'S COMMON KNOWLEDGE AS WELL THAT

2  COVID-19 WAS PRESENT IN SAN DIEGO, RIGHT, ALL THE MAJOR

3  TOURIST ATTRACTIONS CLOSED DOWN, SEA WORLD, THE ZOO,

4  MOST OF OLD TOWN.  SO ALL OF THESE AREAS WHERE OUR

5  CLIENT WOULD DRAW BUSINESS FROM, THEY COULDN'T DRAW

6  BUSINESS FROM THERE.  SO THEY HAD A SLOWDOWN OR

7  SHUTDOWN.

8      IF THEY WANT TO HAVE A SUMMARY JUDGMENT AND THEY

9  CAN SHOW THAT SOMEONE AT SEA WORLD OR THE ZOO, YOU KNOW,

10  HAD COVID-19, THAT'S FINE.  I ALREADY INDICATED THAT

11  SOMEONE AT THE HOTEL DID, WHICH WE LEARNED AFTER WE

12  FILED THE COMPLAINT.  BUT WE HAVE SUFFICIENT FACTS PLED

13  ALREADY WITHOUT HAVING TO BE SPECIFIC.  THEY CAN TEST

14  THAT IN DISCOVERY AT SUMMARY JUDGMENT IF THEY FEEL THAT

15  THAT'S PERTINENT.

16      FOR THE PURPOSES OF TODAY'S HEARING, I BELIEVE

17  YOUR HONOR GOT IT EXACTLY RIGHT ON THE TENTATIVE RULING.

18  THE COMPLAINT HAS SUFFICIENT FACTS AND THE CASES THAT

19  THEY CITE ALL HAVE UNIQUE POLICY PROVISIONS, UNIQUE

20  FACTS, AND UNIQUE APPLICATIONS OF LAW FROM OTHER

21  JURISDICTIONS, MOST OF WHICH ARE NOT NEARLY AS LIBERAL

22  IN THEIR INTERPRETATION OF THE LAW AS IT APPLIES TO

23  FINDING COVERAGE TO SUIT THE REASONABLE EXPECTATIONS OF

24  THE INSURED AS EXISTS UNDER CALIFORNIA LAW.

25      SO I CAN GO ON, YOUR HONOR, I HAD AN OUTLINE OF

26  OTHER SPECIFIC POINTS THAT I HAD WANTED TO ADDRESS.  I

27  SHOULD MENTION SINCE COUNSEL CITED THE MRI CASE.  IT'S

28  WHOLLY DISTINGUISHABLE.  THERE THE INSURED SHUT DOWN

1    THEIR OWN MACHINE, THERE WAS NO EXTERNAL FORCE THAT CAME

2    TO BEAR AS WE HAVE WITH THE VIRUS PANDEMIC THAT

3    BASICALLY AFFECTED THE ENTIRE WORLD AND CERTAINLY MY

4    CLIENT'S HOTEL.  AND IT WASN'T EVEN A

5    LOSS-OF-BUSINESS-INCOME CLAIM ON THE MRI CASE THAT IS

6    CITED; WHEREAS, THE CASES THAT WE CITE THAT INVOLVE A

7    LOSS OF USE, BUT THEY FOUND THAT THAT WOULD ALSO FIT THE

8    DIRECT PHYSICAL LOSS OR DAMAGE REQUIREMENT, HOWEVER ONE

9    WANTS TO CHARACTERIZE IT AS A LOSS OF USE OR DAMAGE.  WE

10   CITED THE THEE SOMBRERO, I HAVE TO FIND IT, THE SOMBRERO

11   CASE AS WELL AS THE PATEL CASE AS WELL AS THE ARMSTRONG

12   CASE WHERE THEY SAID JUST HAVING ASBESTOS IN THE

13   BUILDING THAT WASN'T RELEASED COULD BE SUFFICIENT TO

14   TRIGGER COVERAGE.

15        SOME OF THESE ARE THIRD-PARTY POLICIES THAT TALK

16   ABOUT PHYSICAL LOSS, BUT THEY'RE TALKING ABOUT IT IN THE

17   SAME WAY AS IT APPEARS IN THE FIRST-PARTY CONTEXT IN

18   THIS CASE.  IN THE PATEL CASE INVOLVING SMOKE THAT BOTH

19   PARTIES CITED WAS A FIRST-PARTY CASE WHERE THERE WAS

20   COVERAGE FOR THE CLEANING OF THE SMOKE.  SO BETWEEN THAT

21   AND THE THEE SOMBRERO WHICH SAID YOU CAN CAP YOUR OWN TO

22   CREATE A STENCH, WHICH WOULD MAKE A PLACE UNINHABITABLE,

23   WOULD CREATE COVERAGE FOR LOSS OF USE OR DAMAGE.  THOSE

24   ARE ALL CALIFORNIA LAW CASES, YOUR HONOR.

25        BUT THIS CASE IS BOTH [INAUDIBLE] IN ITS FACTS DUE

26   TO 417 WHERE THE JUDGE WENT THROUGH THIS ANALYSIS AND

27   SAID THERE WERE SUFFICIENT FACTS PLED FOR THE PLEADING

28   STAGE AS THERE ARE IN THIS CASE PARTICULARLY UNDER

1  PARAGRAPH 18 AND 25, WHICH I READ TO THE COURT AT THE

2  OUTSET OF MY ARGUMENT.  I BELIEVE I HAVE NOW ADDRESSED

3  THE PRINCIPLE POINTS THAT I WANTED TO THAT WERE

4  ADDRESSED BY MS. THORPE.

5       THERE'S OTHER POINTS I CAN MAKE ABOUT WHY, YOU

6  KNOW, FOR EXAMPLE, EXTRA EXPENSE COVERAGE, YOUR HONOR --

7  EXTRA EXPENSE COVERAGE SPECIFICALLY WOULD DEAL WITH THE

8  NEED TO IMPLEMENT SANITATION PROCEDURES AND WE DO

9  INDICATE IN THE COMPLAINT ON PAGES 4, LINES 21 THROUGH

10  23 THAT THE COVID-19, WHICH EVERYBODY KNOWS BY NOW, I

11  THINK, CAN AND DOES ATTACH TO SURFACES.  AGAIN, DIRECT

12  PHYSICAL LOSS AND WE HAVE THE SHUTDOWN ORDERS, WHICH THE

13  DEFENSE ATTACHED TO THEIR PAPERS OR THE COURT SHOWED

14  JUDICIAL NOTICE OF, WHICH TALKS ABOUT THE NEED FOR

15  SANITATION STANDARDS.

16       SO, AGAIN, WITH ALL OF THOSE FACTS PLED AND

17  OTHERWISE INFORMATION AVAILABLE THROUGH THE REQUEST FOR

18  JUDICIAL NOTICE THAT THIS COURT HAS GRANTED, I BELIEVE

19  THE COMPLAINT SHOULD BE MORE THAN SUFFICIENT TO SURVIVE

20  DEMUR AT THIS JUNCTURE.

21       THE ONLY OTHER THING I THINK I WANTED TO

22  MENTION -- I MAY HAVE DONE IT -- YEAH, I THINK I DID

23  THAT SUSPENSION IN THIS CASE ONLY REQUIRED A SLOWDOWN,

24  NOT SHUTDOWN.  AND ON THE ISSUE THAT THE CALIFORNIA

25  COURTS WILL LOOK AT THE DIRECT PHYSICAL LOSS OR DAMAGE

26  AS SUSTAINED IS DIFFERENT AND NOT THE SAME THE WAY

27  SEQUOIA WANTS TO APPLY THEM, WE CITED A CALIFORNIA CASE

28  IN ADDITION TO THE STUDIO 417 CASE, WHICH WAS COOPER

1    VERSUS TRAVELERS INDEM. CO. OF ILLINOIS WHICH ALSO MAKES

2    THAT POINT.

3         SO WITH THAT, YOUR HONOR, I BELIEVE I'VE COVERED

4    THE MAIN POINTS THAT I FELT WOULD BE NECESSARY AT THIS

5    JUNCTURE.  OF COURSE, I'M HAPPY TO ADDRESS ANY OTHER

6    POINTS THAT THE COURT MAY FEEL ARE IMPORTANT AT THIS

7    PARTICULAR TIME.  THANK YOU VERY MUCH, YOUR HONOR.

8         MS. THORPE:  YOUR HONOR, COULD I MAKE THREE

9    POINTS?

10        THE COURT:  OF COURSE.

11        MS. THORPE:  OKAY.  SO FIRST OF ALL, SEQUOIA IS

12   NOT CHERRY PICKING LANGUAGE OUT OF THE POLICY, BUT

13   RATHER GOING RIGHT TO THE INSURING AGREEMENT.  AND WE

14   DON'T GET OUT OF THE INSURING AGREEMENT AND DON'T HAVE

15   TO TALK ABOUT EXCLUSIONS BECAUSE THE CLAIM DOESN'T SIT

16   WITHIN THE INSURING AGREEMENT.  SO THE INSURING

17   AGREEMENT DOES SAY THAT THE INSURED HAS TO SHOW THERE

18   WAS DIRECT PHYSICAL LOSS OF OR DAMAGE TO COVERED

19   PROPERTY.  I FOCUSSED ON PHYSICAL DAMAGE.

20        COUNSEL SUGGEST LOSS OF USE IS A COVERAGE HERE,

21   BUT NOTICE THE POLICY SAID DIRECT PHYSICAL LOSS OF

22   PROPERTY.  AND THE BEST EXAMPLE I WAS ABLE TO FIND IN

23   THE CALIFORNIA CASE LAW, BECAUSE IT JUST MAKES SO MUCH

24   SENSE, IS IN THE WARD CASE.  IT TALKS ABOUT USE AND IT

25   TALKS ABOUT HOW THIS IS AN EXAMPLE OF LOSS OF PROPERTY.

26        THE INSURED HAD A BUILDING AND LAND AROUND THE

27   BUILDING AND THE -- WHAT HAPPENED WAS THE LAND SUBSIDED,

28   IT GOT WASHED AWAY, AND SO THEY COULDN'T USE THE

1  BUILDING AND THEY SOUGHT COVERAGE UNDER THEIR POLICY FOR

2  DAMAGE TO THE BUILDING.  SO THE -- THEY LOST THE

3  BUILDING.  THEY LOST -- BECAUSE THEY LOST THE LAND, THEY

4  COULDN'T -- THEY DIDN'T HAVE THE BUILDING, EVEN THOUGH

5  THE BUILDING ITSELF WAS NOT PHYSICALLY DAMAGED.  BUT

6  THERE WAS PHYSICAL DAMAGE.  IT WAS TO THE LAND RIGHT

7  BESIDE IT.  SO THAT'S A GOOD EXAMPLE OF WHAT IS MEANT BY

8  LOSS OF PROPERTY.

9        THIRD, STUDIO 417.  NOW, WHY SHOULDN'T WE LOOK AT

10 MISSOURI LAW?  IT'S BECAUSE WE HAVE CALIFORNIA LAW, WE

11 DON'T NEED TO LOOK OUTSIDE CALIFORNIA.  AND IF YOU WOULD

12 LOOK AT THAT LARGE COMPENDIUM OF CASES WE PROVIDED, IT

13 SHOWS THAT ALMOST EVERY CASE -- THIS IS UNFORTUNATELY A

14 BIG ISSUE.  RIGHT?  BUSINESSES ARE SHUT DOWN, BUSINESSES

15 ARE HAVING PROBLEMS BECAUSE OF ORDERS FROM COURT -- FROM

16 GOVERNMENT ENTITIES, AND IT'S BECAUSE OF THOSE

17 GOVERNMENT ORDERS, NOT BECAUSE OF PHYSICAL DAMAGE THAT

18 THEY SUSTAIN, THAT MANY BUSINESSES ARE HAVING A HARD

19 TIME.  AND SO THEY HAVE, OF COURSE, LOOKED TO INSURANCE

20 AND THEIR INSURANCE COMPANIES HAVE DENIED THE CLAIMS AND

21 THAT'S CREATED LAWSUITS AND WE HAVE HAD MANY, MANY

22 MOTIONS TO DISMISS AND DEMURRERS AROUND THE COUNTRY.

23        AND YOU WILL SEE THAT THOSE MOTIONS TO DISMISS AND

24 DEMURRERS ARE BEING GRANTED EXCEPT FOR MISSOURI.  AND

25 WHY IS THAT?  MISSOURI JUST HAS DIFFERENT LAWS THAN

26 CALIFORNIA ON WHAT THAT TERM, "DIRECT PHYSICAL LOSS OF

27 OR DAMAGE TO INSURED PROPERTY" MEANS.  AND MISSOURI IS

28 NOT APPLYING THE MRI HEALTH CARE'S DEFINITION.  NOT

1    APPLYING DISTINCT, DEMONSTRABLE, PHYSICAL ALTERATION OF

2    THE PROPERTY.  IT'S JUST DIFFERENT.

3          SO MISSOURI COURTS CAN DECIDE HOW THEY WANT TO

4    INTERPRET THE CASE LAW, BUT CALIFORNIA HAS ALREADY

5    INTERPRETED THIS POLICY LANGUAGE AND HAS SAID THAT

6    DIRECT PHYSICAL LOSS OF OR DAMAGE TO COVERED PROPERTY

7    REQUIRES A DISTINCT, DEMONSTRABLE, PHYSICAL ALTERATION

8    OF THE PROPERTY AND, THEREFORE, YOU DON'T NEED TO LOOK

9    TO STUDIO 417 OR ANY OTHER CASE FROM MISSOURI TO DECIDE

10   HOW CALIFORNIA COURTS ARE GOING TO DECIDE THIS QUESTION.

11         THOSE ARE MY LAST POINTS, YOUR HONOR.  WE WOULD

12   ASK THAT YOU TAKE ANOTHER LOOK AT THE ALLEGATIONS AND I

13   THINK YOU'LL CONCLUDE THAT THERE IS NOT ENOUGH ALLEGED

14   HERE TO PASS THE DEMURRER STAGE.

15         THE COURT:  I WANT TO THANK YOU BOTH, COUNSEL.

16   THIS IS WHY WE HAVE ARGUMENT.  YOU BOTH PRESENT VERY

17   GOOD ARGUMENTS.  OBVIOUSLY, FOR THIS COURT, THIS IS A

18   CASE OF FIRST IMPRESSION AND I WANT TO MAKE SURE I'M

19   COMFORTABLE WITH MY RULING.  I AM GOING TO TAKE THIS

20   UNDER SUBMISSION AND LOOK AT IT OVER THE WEEKEND, BUT

21   YOU'LL HAVE A RULING TUESDAY FROM THIS COURT.  RULING

22   TUESDAY.  BOTH COUNSEL.

23         MR. LIMANDRI:  THANK YOU, YOUR HONOR, FOR ALLOWING

24   US THE TIME.  I APPRECIATE IT.

25         MS. THORPE:  THANK YOU, YOUR HONOR.

26         THE COURT:  WAIT A SECOND.  COUNSEL, IT WILL BE

27   DONE BY FRIDAY.  I'VE GOT A TRIAL ON TUESDAY.  SORRY.

28         MS. THORPE:  OKAY.

1        MR. LIMANDRI:  OKAY.

2        MS. THORPE:  WE UNDERSTAND.

3        MR. LIMANDRI:  OKAY.  WE'LL LOOK FORWARD TO IT.

4   THANK YOU, YOUR HONOR.

5        MS. THORPE:  THANK YOU.

6        MR. LIMANDRI:  APPRECIATE IT.  HAVE A GREAT

7   WEEKEND.

8        (PROCEEDINGS ADJOURNED AT 10:19 A.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    STATE OF CALIFORNIA)
                            :SS
2    COUNTY OF SAN DIEGO)

3

4          I, MICHELLE NEUENSWANDER, OFFICIAL REPORTER FOR

5    THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND

6    FOR THE COUNTY OF SAN DIEGO, DO HEREBY CERTIFY:

7          THAT AS SUCH REPORTER, I REPORTED IN MACHINE

8    SHORTHAND THE PROCEEDINGS HELD IN THE FOREGOING CASE;

9          THAT MY NOTES WERE TRANSCRIBED INTO TYPEWRITING

10   UNDER MY DIRECTION AND THE PROCEEDINGS HELD ON

11   SEPTEMBER 25, 2020, CONTAINED WITHIN PAGES 1 THROUGH 21,

12   ARE A TRUE AND CORRECT TRANSCRIPTION.

13          DATED THIS 1ST DAY OF OCTOBER 2020.

14

15

16

17

18   _____
     MICHELLE NEUENSWANDER
19   CSR NO. 12508

20

21

22

23

24

25

26

27

28