# Exhibit 9

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| COUNTY OF DURHAM | CASE NO. 20-CVS-02569 |

2020 OCT -9 P 3: 14

NORTH STATE DELI, LLC d/b/a LUCKY'S DELICATESSEN, MOTHERS & SONS, LLC d/b/a MOTHERS & SONS TRATTORIA, MATEO TAPAS, L.L.C. d/b/a MATEO BAR DE TAPAS, SAINT JAMES SHELLFISH LLC d/b/a SAINT JAMES SEAFOOD, CALAMARI ENTERPRISES, INC. d/b/a PARIZADE, BIN 54, LLC d/b/a BIN 54, ARYA, INC. d/b/a CITY KITCHEN and VILLAGE BURGER, GRASSHOPPER LLC d/b/a NASHER CAFE, VERDE CAFE INCORPORATED d/b/a LOCAL 22, FLOGA, INC. d/b/a KIPOS GREEK TAVERNA, KUZINA, LLC d/b/a GOLDEN FLEECE, VIN ROUGE, INC. d/b/a VIN ROUGE, KIPOS ROSE GARDEN CLUB LLC d/b/a ROSEWATER, and GIRA SOLE, INC. d/b/a FARM TABLE and GATEHOUSE TAVERN,

    *Plaintiffs*,

v.

THE CINCINNATI INSURANCE COMPANY; THE CINCINNATI CASUALTY COMPANY; MORRIS INSURANCE AGENCY INC.; and DOES 1 THROUGH 20, INCLUSIVE,

    *Defendants*.

**ORDER GRANTING PLAINTIFFS' RULE 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER was heard on September 23, 2020, before Senior Resident Superior Court Judge Orlando F. Hudson, Jr., with Gagan Gupta appearing for the plaintiff-restaurants (including Vin Rouge, Parizade, Mateo Bar de Tapas, Rosewater, Mothers & Sons Trattoria, Saint James Seafood, Lucky's Delicatessen, Bin 54, City Kitchen, Village Burger, Nasher Cafe,

Local 22, Kipos Greek Taverna, Golden Fleece, Farm Table, and Gatehouse Tavern[1]), and Brian Reid and Drew Vanore appearing for defendant-insurers The Cincinnati Insurance Company and The Cincinnati Casualty Company (collectively, "Cincinnati"). Plaintiffs brought a Motion for Partial Summary Judgment ("Motion") with respect to Count I of their Second Amended Complaint, seeking a declaratory judgment that Cincinnati must replace Plaintiffs' lost business income and extra expenses under insurance policy contracts entered into between the parties.[2]

THE COURT, having considered the pleadings, the Motion, the briefs filed in support of and in opposition to the Motion, the oral arguments of counsel at the hearing on the Motion, the declaration of Gagan Gupta, the affidavit testimony of the Plaintiffs and their supporting affidavits of Giorgios Nikolaos Bakatsias, Matthew Raymond Kelly, and Djafar "Jay" Mehdian, the applicable law, and other appropriate matters of record, GRANTS Plaintiffs' Motion.

Upon a review of the entire record, the Court holds there are no genuine issues as to any material fact and Plaintiffs are entitled to partial summary judgment against Cincinnati as a matter of law on the issue of liability under Count I of the Second Amended Complaint. To that end, the Court sets forth its primary reasoning herein.

---

[1] The parent companies of these restaurants, and the entities bringing this lawsuit, are Vin Rouge, Inc. d/b/a Vin Rouge; Calamari Enterprises, Inc. d/b/a Parizade; Mateo Tapas, L.L.C. d/b/a Mateo Bar de Tapas; Kipos Rose Garden Club LLC d/b/a Rosewater; Mothers & Sons, LLC d/b/a Mothers & Sons Trattoria; Saint James Shellfish LLC d/b/a Saint James Seafood; North State Deli, LLC d/b/a Lucky's Delicatessen; Bin 54, LLC d/b/a Bin 54; Arya, Inc. d/b/a City Kitchen and Village Burger; Grasshopper LLC d/b/a Nasher Cafe; Verde Cafe Incorporated d/b/a Local 22; Floga, Inc. d/b/a Kipos Greek Taverna; Kuzina, LLC d/b/a Golden Fleece; and Gira Sole, Inc. d/b/a Farm Table and Gatehouse Tavern (collectively, "Plaintiffs").

[2] The operative pleading to which this Order applies is the Second Amended Complaint.

## I. BACKGROUND[3]

Plaintiffs, which operate sixteen restaurants in the North Carolina counties of Durham, Wake, Orange, Chatham, and Buncombe, purchased "all risk" property insurance policies ("Policies") from Cincinnati to cover their restaurants. All risk policies cover all risks of loss unless those risks are expressly excluded or limited. Plaintiffs' Policies were effective during all relevant time periods and contain the same relevant language.

The Policies include a Building and Personal Property Coverage Form and a Business Income (and Extra Expense) Coverage Form. These forms provide that Cincinnati will pay for business interruption coverage as follows:

> (1) **Business Income**
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.
>
> . . .
>
> (2) **Extra Expense**
> We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain . . . during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

Under the Policies, "Covered Cause of Loss" means "direct 'loss' unless the 'loss' is excluded or limited" therein. The Policies define "loss" to mean "accidental physical loss or accidental physical damage." Therefore, absent an exclusion or limitation, the Policies provide

---

[3] The Court has not resolved any disputed issues of fact, as findings of fact are unnecessary for adjudicating Plaintiffs' Motion for Partial Summary Judgment. Rather, the Court offers an overview of key undisputed facts underlying the ultimate disposition.

3

coverage under these provisions where the policyholder shows (i) direct "accidental physical loss" to property, *or* (ii) direct "accidental physical damage" to property. The Policies do not define "direct," "accidental," "physical loss," or "physical damage."

Plaintiffs seek coverage under the Policies for losses arising out of the response to the SARS-CoV-2 ("COVID-19") pandemic. Beginning in March 2020, governmental authorities across North Carolina entered civil authority orders mandating the suspension of business operations at various establishments, including Plaintiffs' restaurants (hereafter, "Government Orders"). The orders also prohibited, via stay-at-home mandates and travel restrictions, all non-essential movement by all residents.

On August 3, 2020, Plaintiffs filed their Motion for Partial Summary Judgment ("Motion"), seeking a declaratory judgment against Cincinnati under Count I that the Government Orders constitute covered perils under the Policies that caused "direct 'loss' to property" at the described premises, and that therefore Cincinnati must pay for the resulting lost Business Income and Extra Expenses as defined by the Policies. Plaintiffs' primary contention is that the Government Orders forced Plaintiffs to lose the physical use of and access to their restaurant property and premises, which constitutes a non-excluded "direct physical loss."

## II. STANDARDS OF INTERPRETATION FOR INSURANCE POLICIES

The meaning of an insurance policy is a question of law, *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454, 456 (2020), and it is black-letter law that an undefined policy term is to be given its "ordinary meaning"; in doing so, North Carolina courts have determined that it is "appropriate to consult a standard dictionary." *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94-95, 518 S.E.2d 814, 817 (N.C. Ct. App. 1999). If the term is nevertheless "reasonably susceptible to more than one interpretation," then it is ambiguous and

4

only then is the contract subject to judicial construction. *Id.*; *see also Joyner v. Nationwide Ins.*, 46 N.C. App. 807, 809, 266 S.E.2d 30, 31 (1980) ("[I]n deciding whether the language is plain or ambiguous, the test is what a reasonable person in the position of the insured would have understood it to mean, and not what the insurer intended."). "[A]ny ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary." *Accardi*, 373 N.C. at 295, 838 S.E.2d at 456.

### III. DISCUSSION

As an initial matter, the Policies do not define the terms "direct," "physical loss," or "physical damage."[4] The Court must therefore turn first to the ordinary meaning of those terms. Merriam-Webster defines "direct," when used as an adjective, as "characterized by close logical, causal, or consequential relationship," as "stemming immediately from a source," or as "proceeding from one point to another in time or space without deviation or interruption." *Direct*, Merriam-Webster (Online ed. 2020). Merriam-Webster defines "physical" as relating to "material things" that are "perceptible especially through the senses." *Physical*, Merriam-Webster (Online ed. 2020). The term is also defined in a way that is tied to the body: "of or relating to the body." *Id.* Webster's Third New International Dictionary defines physical as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary." *Physical*, Webster's Third New International Dictionary (2020). The definition from Black's Law Dictionary comports: "Of, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, Black's Law Dictionary (11th ed. 2019). Finally, "loss" is defined as "the act of losing possession," "the harm of privation resulting from loss or separation," or the "failure to gain, win, obtain, or utilize." *Loss*, Merriam-Webster (Online ed.

---

[4] Cincinnati does not contest whether Plaintiffs' losses were "accidental."

5

2020). Another dictionary defines the term as "the state of being deprived of or of being without something that one has had." *Loss*, Random House Unabridged Dictionary (Online ed. 2020).

Applying these definitions reveals that the ordinary meaning of the phrase "direct physical loss" includes the inability to utilize or possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions. In the context of the Policies, therefore, "direct physical loss" describes the scenario where businessowners and their employees, customers, vendors, suppliers, and others lose the full range of rights and advantages of using or accessing their business property. This is precisely the loss caused by the Government Orders. Plaintiffs were expressly forbidden by government decree from accessing and putting their property to use for the income-generating purposes for which the property was insured. These decrees resulted in the immediate loss of use and access without any intervening conditions. In ordinary terms, this loss is unambiguously a "direct physical loss," and the Policies afford coverage.

The parties sharply dispute the meaning of the phrase "direct physical loss." Cincinnati argues that "the policies do not provide coverage for pure economic harm in the absence of direct physical loss to property, which requires some form of physical alteration to property." Even if Cincinnati's proffered ordinary meaning is reasonable, the ordinary meaning set forth above is also reasonable, rendering the Policies at least ambiguous. Accordingly, in giving the ambiguous terms the reasonable definition which favors coverage, the phrase "direct physical loss" includes the loss of use or access to covered property even where that property has not been structurally altered. *See Accardi*, 373 N.C. at 295, 838 S.E.2d at 456 ("[A]ny ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary.").

6

Moreover, it is well-accepted that "[t]he various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *See C. D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990). Here, the Policies provide coverage for "accidental physical loss ***or*** accidental physical damage." Cincinnati's argument that the Policies require physical alteration conflates "physical loss" and "physical damage." The use of the conjunction "or" means—at the very least—that a reasonable insured could understand the terms "physical loss" and "physical damage" to have distinct and separate meanings. The term "physical damage" reasonably requires alteration to property. *See Damage*, Merriam-Webster (Online ed. 2020) ("loss or harm resulting from injury to person, property, or reputation"). Under Cincinnati's argument, however, if "physical loss" also requires structural alteration to property, then the term "physical damage" would be rendered meaningless. But the Court must give meaning to both terms.

Finally, nothing in the Policies excludes coverage for Plaintiffs' losses. Notably, it is undisputed that the Policies do not exclude virus-related causes of loss. Cincinnati instead contends that three other exclusions apply: the "Ordinance or Law" exclusion, the "Acts or Decisions" exclusion, and the "Delay or Loss of Use" exclusion. Upon a review of the entire record, the Court concludes that these exclusions, based on their terms and the undisputed facts, do not apply to Plaintiffs' losses as a matter of law.

For these primary reasons, the Court concludes that the Policies provide coverage for Business Income and Extra Expenses for Plaintiffs' loss of use and access to covered property mandated by the Government Orders as a matter of law.

7

## IV. CONCLUSION

Accordingly, Plaintiffs' Motion for Partial Summary Judgment is GRANTED. This Court certifies, pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, that this Order represents a final judgment as to Count I of the Second Amended Complaint and is immediately appealable as there is no just reason for delay of any such appeal. **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS**: That partial summary judgment is hereby granted in favor of Plaintiffs and against Cincinnati, jointly and severally, on Count I (Declaratory Judgment).

This the 7th day of October, 2020.

ORLANDO F. HUDSON, JR.
SENIOR RESIDENT SUPERIOR COURT JUDGE

# CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the foregoing Order in the above captioned action on all parties by depositing a copy hereof in a postpaid wrapper in a post office depository under the exclusive care and custody of the United Postal Service, addressed as follows:

STUART M. PAYNTER
GAGAN GUPTA
106 S. Churton Street, Suite 200
Hillsborough, NC 27278
*Counsel for Plaintiffs*

ANDREW A. VANORE III
Post Office Box 1729
Raleigh, NC 27602-1729
*Counsel for Defendant, The Cincinnati Insurance Company*

KENDRA STARK
JUSTIN M. PULEO
421 Fayetteville Street, Suite 330
Raleigh, NC 27601
*Counsel for Defendant Morris Insurance Agency, Inc.*

This the 9th day of October, 2020.

_____
ASSISTANT CLERK OF COURT
DURHAM COUNTY