# Exhibit 10



CAUSE NO. DC-20-05751-A

| | | |
|---|---|---|
| LOMBARDI'S, INC., et al | § | IN THE JUDICIAL COURT |
| | § | |
| VS. | § | 14TH DISTRICT COURT |
| | | |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | | DALLAS COUNTY |

## ORDER DENYING MOTION TO DISMISS PURSUANT TO RULE 91A

On this date came to be heard Defendant Indemnity Insurance Company of North America's Amended Motion to Dismiss Pursuant to Rule 91A. After considering the pleadings on file and arguments of Counsel the Court is of the opinion that the Motion should be **DENIED**.

**IT IS SO ORDERED**.

Signed this 15th day of October 2020

_____
JUDGE ERIC MOYÉ
14TH DISTRICT COURT

# Complaint

1 CIT/ESERVE

FILED
4/16/2020 4:53 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Alicia Mata DEPUTY

CAUSE NO: DC-20-05751

| | | |
|---|---|---|
| LOMBARDI'S INC.; LOMBARDI'S FAMILY CONCEPTS, INC.; PENNE SNIDER, LLC; PENNE PRESTON, LLC; ALBERTO LOMBARDI INTERESTS, LLC; TAVERNA DOMAIN AUSTIN, LP; CAFÉ TOULOUSE RIVER OAKS DISTRICT, LP; CAFÉ MONACO HPV, LLC; PENNE LAKEWOOD, LLC; TAVERNA BUCKHEAD, LP; TAVERNA DOMAIN AUSTIN LP; TAVERNA AUSTIN, L.L.C.; TAVERNA FT. WORTH, LLC; TOULOUSE KNOX BISTRO, LLC; TAVERNA ARMSTRONG, L.L.C.; TOULOUSE DOMAIN AUSTIN, LP; BISTRO 31 LEGACY, LP; TAVERNA LEGACY, LP; TAVERNA BUCKHEAD, LP; AND LOMBARDI'S OF DESERT PASSAGE, INC. | § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS, | § § | |
| V. | § § | DALLAS COUNTY, TEXAS |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | § § § | |
| DEFENDANT. | § § | A-14TH JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs Lombardi's Inc.; Lombardi's Family Concepts, Inc.; Penne Snider, LLC; Penne Preston, LLC; Alberto Lombardi Interests, LLC; Taverna Domain Austin, LP; Café Toulouse River Oaks District, LP; Café Monaco HPV, LLC; Penne Lakewood, LLC; Taverna Buckhead, LP; Taverna Domain Austin LP; Taverna Austin, L.L.C.; Taverna Ft. Worth, LLC; Toulouse Knox Bistro, LLC; Taverna Armstrong, L.L.C.; Toulouse Domain Austin, LP;

PLAINTIFFS ORIGINAL PETITION     1

4853-0333-1258v.4

Bistro 31 Legacy, LP; Taverna Legacy, LP; Taverna Buckhead, LP; and Lombardi's Of Desert Passage, Inc., (collectively "Lombardi's") complain of Indemnity Insurance Company of North America ("Chubb") Defendant, as follows:

## I. DISCOVERY CONTROL PLAN

1. Lombardi's intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4.

## II. RULE 47 STATEMENT

2. Lombardi's seeks monetary relief of more than $1,000,000 in costs, expenses, pre-judgment interest, and attorney fees.

## III. PARTIES, JURISDICTION & VENUE

3. The Plaintiffs are:

   a. Lombardi's Inc., a corporation organized under Texas law and doing business in Dallas County, Texas;

   b. Lombardi's Family Concepts, Inc., a corporation organized under Texas law and doing business in Dallas County, Texas;

   c. Penne Snider, LLC; Penne Preston, LLC; Alberto Lombardi Interests, LLC; Taverna Domain Austin, LP; Café Toulouse River Oaks District, LP; Cafe Monaco HPV, LLC; Penne Lakewood, LLC; Taverna Buckhead, LP; Taverna Domain Austin, LP; Taverna Austin, L.L.C.; Taverna Ft. Worth, LLC; Toulouse Knox Bistro, LLC; and Taverna Armstrong, L.L.C. each are limited liability companies organized under Texas law and doing business in Dallas County, Texas;

d. Toulouse Domain Austin, LP; Bistro 31 Legacy, LP; Taverna Legacy, LP; and Taverna Buckhead, LP each are limited partnerships organized under Texas law and doing business in Dallas County, Texas; and

e. Lombardi's of Desert Passage, Inc. is a foreign corporation organized under Nevada and doing business in Nevada.

4. Defendant, <u>Indemnity Insurance Company of North America</u> ("Chubb"), is a foreign fire and casualty insurance company domiciled in Pennsylvania and authorized by the Texas Department of Insurance to conduct insurance business in Texas. This suit arises out of insurance business purposefully and continuously conducted with plaintiff in the State of Texas. Chubb may be served with process in this suit by delivering citation to the following serving as its registered agent at the following <u>registered address: CT Corporation System, 1999 Bryan Street, Ste. 990, Dallas, Texas 75201-3136</u>.

5. Jurisdiction is proper in the District Court of Dallas County, Texas because the amount in controversy is within the jurisdictional limits of this court.

6. Venue is proper in Dallas County pursuant to Texas Civil Practice and Remedies Code §15.002 because the cause of action arises out of events that occurred in Dallas County and pursuant to Texas Civil Practice and Remedies Code §15.053 because insured properties are situated in Dallas County.

## IV. FACTUAL BACKGROUND

7. Chubb[1] entered into a contract of commercial property insurance with the Lombardi's family of restaurants.[2] Lombardi's agreed to pay significant premiums in exchange for Chubb's promises of indemnify for losses, including but not limited to, business income losses at several different locations ("the Insured Properties").

8. The Insured Properties are covered under policy number MCRD38196169, which was renewed for the June 30, 2019, to June 30, 2020, policy period ("the Policy"). Lombardi's fulfilled all of their responsibilities under the insurance contract, dutifully paying hundreds of thousands of dollars in premiums to Chubb over the years.

9. The Policy has been continuously in full force and effect since inception, providing first-party property, business personal property and business income, extra expense and additional coverages.

10. Chubb promised under the Policy to pay "for direct physical *loss of* or damage to Covered Property at the premises described in the Declarations caused by or resulting from *any* Covered Cause of Loss."

11. The Insured Properties covered under the Policy are subject to a Business Income (and Extra Expense) Coverage limit of $18,952,419. The Policy provides "all risks" insurance.

12. A pneumonia of unknown origin was first reported to the World Health Organization ("WHO") on December 31, 2019. China provided the genetic sequence for what has become known as the 2019 Novel Coronavirus (2019-nCoV) on or about January 12, 2020. The WHO

---

[1] Indemnity Insurance Company is part of the Chubb Group of Companies. "Chubb N.A. Claims" handled the adjusting on behalf of Indemnity, what little there was, on Lombardi's claim. "Chubb" is stamped in numerous places on the policy. In the April 3, 2020, denial letter, the Chubb N.A. adjuster used "Chubb" as the shorthand or synonymous reference to Indemnity Insurance Company of North America.

[2] The Policy was a commercial package policy including both commercial property and general liability coverage.

recognized on January 25, 2020, that the 2019 Novel Coronavirus is a "global threat to human health . . . ." On January 30, 2020, the Director of WHO declared the 2019 Novel Coronavirus "outbreak a Public Health Emergency of International Concern." The disease caused by the 2019 Novel Coronavirus was identified as "COVID-19" on February 11, 2020. On March 11, WHO characterized COVID-19 as a pandemic. WHO saw "alarming levels of spread and severity, and by the alarming levels of inaction." WHO representatives stated: "Pandemic is not a word to use lightly or carelessly . . . ***We have never before seen a pandemic sparked by a coronavirus***. This is the first pandemic caused by a coronavirus. And we have never before seen a pandemic that can be controlled, at the same time." (Emphasis added.) The pandemic spread from China to surrounding countries and then to Italy, Iran, Spain and across the globe.

13. The Center for Disease Control ("CDC") has stated that a "pandemic is a global outbreak of disease. Pandemics happen when a new virus emerges to infect people and can spread between people sustainably. Because there is little to no pre-existing immunity against the new virus, it spreads worldwide."

14. On January 31, 2020, President Trump signed the Presidential Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus (the First Proclamation), suspending the entry of all aliens (i.e., non-citizens) who were physically present within the People's Republic of China (excluding the Special Administrative Regions of Hong Kong and Macau) during the 14-day period preceding their attempted entry into the United States. On February 29, 2020, President Trump signed the Presidential Proclamation on the Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus (the Second Proclamation), suspending the entry of all aliens who were physically present within the Islamic Republic of Iran

during the 14-day period preceding their attempted entry into the United States. On March 11, 2020, President Trump signed the Presidential Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus (the Third Proclamation), resulting in a travel ban and of the entry of all aliens who were physically present in any of the 26 European countries that make up the Schengen Area during the 14-day period preceding their attempted entry into the United States. The Schengen Area included: Austria, Belgium, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Italy, Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Netherlands, Norway, Poland, Portugal, Slovakia, Slovenia, Spain, Sweden and Switzerland.

15. On March 12, 2020, the Mayor of Dallas "declared a local state of disaster" for the City of Dallas resulting "from the COVID-19 Pandemic" and issued an order prohibiting public gatherings of more than 500 people. Texas Government Code Section 418.108 authorizes the Mayor to order the evacuation of all or part of the population from a ***stricken or threatened area*** under the jurisdiction and authority of the Mayor if the Mayor considers the action necessary for the preservation of life or other disaster mitigation, response or recovery. Section 418 further authorizes the Mayor to control ingress to and egress from a disaster area under the jurisdiction and authority of the Mayor and control the movement of persons and the occupancy of premises in that area. Moreover, the Mayor's initial order and all subsequent orders note that Section 14B-7 of the Dallas City Code authorizes the City Manager to "promulgate such regulations as he or she deems necessary ***to protect life and property*** and preserve critical resources" while a state of disaster is in effect. (Emphasis added.)

16. On March 12, 2020, under authority of Texas Government Code section 108, Dallas County Judge Clay Jenkins issued a DECLARATION OF LOCAL DISASTER FOR PUBLIC HEALTH

EMERGENCY. The Declaration noted that WHO had declared a world-wide pandemic. The Declaration stated that "a local state of disaster for public health emergency is hereby declared for Dallas County, Texas, pursuant to section 418.108(a) of the Texas Government Code." Also on March 12, 2020, Judge Jenkins issued an order stating: "The virus that causes 2019 Coronavirus Disease (COVID-19) is *easily transmitted* through person to person contact, especially in group settings, and it is essential that the spread of the virus be slowed to *protect the ability of public and private health care providers* to handle the influx of new patients and safeguard public health and safety." (Emphasis added.) Accordingly, community gatherings of more than 500 were prohibited.[3]

17. On March 14, 2020, President Trump signed the Proclamation on the Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus (the Fourth Proclamation), further suspending the entry of all aliens who were physically present in the United Kingdom (excluding overseas territories outside of Europe) or the Republic of Ireland during the 14-day period preceding their attempted entry into the United States.

18. Four days later, on March 16, 2020, an Amended Order was issued by the County of Dallas. This order barred public, private or community gatherings of more than fifty. It also provided: "Restaurants with or without drive-in or drive-through services and microbreweries, micro-distilleries, or wineries may only provide take out, delivery, or drive-through services as allowed by law."

---

[3] Similar orders were entered in Georgia and Nevada, the locations of two of the Lombardi's Plaintiffs, declaring emergencies and setting forth orders for how the states were going to respond to the pandemic. These orders also noted the extreme risk, pointing out that there is a correlation between the density of persons gathered and transmission of the virus. The Georgia Order (010) emphasized that "proximity to other persons is currently contraindicated by public health and medical best practices to combat" the spread of COVID-19.

19. An Amended Order by the City of Dallas was also entered March 16, 2020, prohibiting access and use of any premises operated as dine-in restaurants, but allowing operation only as regulated take-out services. The Amended Dallas City Order further provided that "[t]he owner, manager, or operator of any facility that is likely to be impacted by these regulations shall post a copy of these regulations onsite and visible to users of the facility and provide a copy to any user of the facility asking for a copy."

20. On March 18, 2020, Dallas County issued another Amended Order. This Order noted: "On March 16, 2020, President Trump acknowledged the gravity of the COVID-19 pandemic, releasing strict new guidelines to limit people's interactions, including that Americans should avoid groups of more than 10 people." The March 18th Amended Dallas County Order prohibited "Public or private Recreational Gatherings and Community Gatherings." It further ordered that "[b]ars, lounges, taverns, private clubs, arcades, and gyms shall close."

21. On March 20, 2020, Governor Greg Abbott announced that the U.S. Small Business Administration (SBA), at his request, had included the entire state of Texas in its Economic Injury Disaster Declaration. The Governor's request for inclusion in this Declaration was based on economic losses being suffered across Texas Related to major event cancellations, loss of walk-in customers, depletion of stock from suppliers, and client cancellations. "The overriding message of this time in history is that we are all in this together," said Governor Abbott. "From people responsibly remaining at home to protect themselves and their communities to the small businesses adapting to serve them, Texans are showing their willingness to serve the greater good and that's why we'll overcome this together. That's what Texans do. We are not only Texas Strong, we are #TexasBizStrong."

22. On March 24, 2020, the World Health Organization indicated that the United States had the potential to become the center of the COVID-19 pandemic. Also on March 24, 2020, Dallas County issued is Stay Home Stay Safe Order, requiring those living in Dallas County to shelter at their residence. Only essential businesses were allowed to continue to operate.

23. On March 29, 2020, Dallas County issued another Amended Order, again recognizing: "[I]t is essential that the spread of the virus be slowed *to protect the ability of public and private health care providers* to handle the influx of new patients and safeguard public health and safety. Because of the *risk of the rapid spread of the virus*, and the need to protect the most vulnerable members of the community, this Order requires all individuals anywhere in Dallas County to shelter in place – that is, stay at home – except for certain essential activities and work to provide essential business and government services or perform essential public infrastructure construction, including housing." (Emphasis added.)

24. Dallas County issued an Amended Order on April 6, 2020, continuing the extraordinary rules and regulations previously adopted. This Amended Dallas County Order stated:

> WHEREAS, this Emergency Order is necessary because of the *propensity of the virus to spread person to person* and also because the *virus is physically causing property damage* due to its proclivity to attach to surfaces for prolonged periods of time;
>
> WHEREAS, this Emergency Order is necessary to protect the lives, health, welfare, and safety of the County's residents from the devastating impacts of this pandemic . . . .

The Amended Dallas County Order further provides as to Restaurants:

> Restaurants. Restaurants with or without drive-in or drive-through services and microbreweries, micro-distilleries, or wineries may only provide take out, delivery, or drive-through services as allowed by law. *In-person service is prohibited*. Customers may order and pay inside, but are prohibited from waiting inside the restaurant for their food. *All food must be brought outside to customers*. To allow for increased access to restaurants, this Order hereby suspends all laws and regulations prohibiting people from walking in a drive-through.

4853-0333-1258v.4

(Emphasis added.)

25. As of April 11, 2020, all 50 states as well as the U.S. Virgin Islands, the Northern Mariana Islands, Washington, D.C., Guam and Puerto Rico have received a federal disaster declaration as a result of the pandemic. American Samoa is the only U.S. territory that is not under a major disaster declaration.

26. On March 16, 2020, prior to submitting any claim, Lombardi's insurance agent represented to Lombardi's that Chubb had been asked how BI [business interruption] might respond in connection with the restaurant program in which Lombardi's was insured, and the response was that "Chubb [was] having high level discussions and we are awaiting their direction."

27. Lombardi's provided a notice of a claim under the Policy and other policies in connection with the recent events involving the 2019 Novel Coronavirus pandemic on March 17, 2020. Chubb acknowledged the notice was received on March 18, 2020.

28. On March 18, 2020, the same day notice was provided, Chubb adjuster Jennifer Dixon informed Lombardi's in a telephone call that Chubb was going by the "black and white" written word in the Policy and that there were *no physical damages* to cause the payment of a business interruption claim. No other basis for this preemptive and pre-textual denial was provided.

29. On March 19, 2020, the Chubb adjuster informed Lombardi's by telephone that Chubb would be drafting a *reservation of rights* letter to send to Lombardi's. The adjuster said this letter would state the claim was under investigation and was ongoing and that this *would not be a hard "no."* She stated the letter would look like a declination letter, and it would outline what parts of Lombardi's policy were under review/investigation and might be used to deny coverage at some point. She advised that this allowed Chubb to keep the claim open with the opportunity to learn of changes that would allow them to pay the claim.

PLAINTIFFS ORIGINAL PETITION                                                             10

4853-0333-1258v.4

30. On March 24, 2020, Lombardi's emailed a letter to Chubb stating:

> We strongly disagree with the approach Chubb has taken to regarding this claim. Just a few hours after it was submitted, you made very clear in a phone conversation ... there was no physical damage to ... property. You stated that Chubb was strictly following the letter of the contract. Then, the next day you said Chubb would be issuing a reservation of rights letter that would look like a declination letter. Clearly, Chubb is denying for now, and the reservation is a tool for Chubb to try and keep the claim open in the event it sees something that might change its mind.
>
> Your insured is less than twenty-four hours from having to let go of over 700 employees. We do not have a week or ten days to wait to see what Chubb's position is. You have obviously as a company been working on these issues in anticipation of such claims. You noted all of these letters, being sent to insureds across the country, were a part of a Chubb special review process for these events.

Lombardi's received no acknowledgement or response to this letter.

31. On April 6, 2020, Chubb finally provided its coverage position letter. It was not a "soft" reservation of rights as promised. It was "hard" denial. The letter contained several blatant misrepresentations:

- "Indemnity Insurance Company of North America ("Chubb") has completed its factual investigation . . . ."
    - Chubb made no request to Lombardi's for documents or information relating to the claim.
    - Chubb denied on the same day the claim was presented and could not have done a proper or thorough investigation.
- "There is no information supporting any direct ***physical loss or damage*** has occurred that caused such orders to be issued."
    - Chubb misstates the terms of the Policy. The Policy actually states: "We will pay for direct physical ***loss of*** or damage to Covered Property . . . ." (Emphasis added. The same requirement is stated in the Business Interruption insuring agreement.) Chubb rewrote the policy to try to make it look like ***only*** a physical impact or change to the property was covered and would permit coverage for business income loss. At the very least, Lombardi's suffered a physical loss of the covered property as a result of actions taken to limit the impact of the pandemic on the health care system. Further, Lombardi's clearly suffered a loss of use of

> Covered Property because was unable to operate and use the restaurant for in-person dining.

- o This same deliberate and significant omission has been used by Chubb in hundreds of letter notifications regarding its position on coverage provided to policyholders in the State of New York. These coverage position statements were issued by Chubb in response to an order of the New York Department of Financial Services to provide policyholders with detailed information regarding Chubb's position regarding the various types of policies written in that state in connection with the 2019 Novel Coronavirus.

- o Chubb wrongly suggests that "independent adjusters or experts" were retained by it to investigate and adjust the claim when there is no evidence that any investigation was actually undertaken.

- o Chubb states: "[I]t is our understanding that governmental authorities ordered the captioned premises to *reduce occupancy* and subsequently close as a precaution to *prevent the spread of the COVID-19 virus*." (Emphasis added.) The orders prohibited any occupancy for in-person dining. Moreover, Chubb's statement admits the widespread nature of the pandemic and that the threat it presents requires prohibiting the use of the insured property. This is clearly a loss of the property that is caused by a pandemic and the need to protect the health system and the community.

- o Chubb relies alternatively on the EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA as a basis for denial even though it was not a stated basis in Chubb's initial denial. Contrary to Chubb's assertion, this is *not* a pandemic exclusion. Chubb ignores the fact that the exclusion states that it applies only where a virus, that is a microorganism, is the fully realized and actual cause of the loss. It does not state that it applies to a loss caused by the need to prevent against the threat of viral transmission.

## V. CAUSES OF ACTION

### A. Breach of Contract

32. The Plaintiffs incorporate each and every allegation set forth in this Petition as if fully set forth in this section.

33. Lombardi's has satisfied and performed all applicable terms and conditions of the Policy. Alternatively, Chubb has waived any such term or condition and may not assert any term or condition in the Policy as a defense to liability thereunder.

34. The pandemic and health care crisis has resulted in the Plaintiffs suffering a physical loss of the insured properties, and alternatively damage to the insured properties and suspension of their businesses that are covered under the business income loss (and extra expense) provisions of the Policy. Alternatively, coverage is available under civil authority coverage under the Policy.

35. The Exclusion of Loss Due to Virus or Bacteria has no application to the Lombardi's claims in light of its plain language. Alternatively, the exclusion is ambiguous and must be construed in the light most favorable to Lombardi's. Contrary to the assertions of Chubb, this exclusion is not a pandemic exclusion.

36. Chubb is estopped and/or has waived the right to rely on the exclusion as a result of its premature and limited denial of coverage.

37. Chubb failed to give proper notice and disclosure of the presence of the exclusion and is thus barred from reliance upon it.

38. On information and belief, Chubb is barred from relying on the exclusion as a result of regulatory and/or administrative estoppel.

39. Alternatively, the exclusion as interpreted by Chubb is unconscionable and/or contrary to public policy and cannot be enforced as written.

40. Lombardi's operations remain suspended as a result of the threat presented by the current circumstances.

41. Chubb has breached the contract by its wrongful denial, causing delay and/or loss of receipt of the policy benefits and additional actual and/or consequential damages.

42. Chubb is entitled to recovery of attorney's fees incurred in the prosecution of these claims. TEX. CIV. PRAC. & REM CODE §38.001(8).

**B.     Breach of The Duty of Good Faith and Fair Dealing**

43. The Plaintiffs incorporate each and every allegation set forth in this Petition as if fully set forth in this section.

44. A special relationship exists and continues to exist between Chubb and the Plaintiffs as a result of the first-party insurance policy issued by Chubb. Inherently unequal bargaining power exists between Lombardi's and Chubb.

45. Chubb had no reasonable basis for denying or delaying payment of Lombardi's claims and it knew or should have known that it had no reasonable basis for denial. Chubb considered only its own interests, proceeded only according to its one-sided and self-serving interpretation of the Policy, and attempted to conceal from Lombardi's that Chubb in fact made no effort to consider Lombardi's interests. Chubb pre-textually looked only for ways to avoid coverage rather than first trying to find coverage.

46. Chubb had a duty to investigate the claims fairly and objectively but it clearly failed to make any attempt to do so. Nonetheless, it is deemed to have it is charged with full and complete knowledge of what a reasonable investigation would have revealed, and its actions must be judged accordingly.

47. Accordingly, Chubb failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim where its liability had become reasonably clear.

48. Chubb's breach of the duty of good faith and fair dealing proximately caused actual and consequential damages to the Plaintiffs.

**C.      Punitive Damages**

49. The Plaintiffs incorporate each and every allegation set forth in this Petition as if fully set forth in this section.

50. Chubb's breach of the duty of good faith was malicious and/or grossly negligent and therefore supports an award of punitive damages. Chubb was directly informed of and had actual knowledge of the grievous damages and extraordinary harm that would be caused by breach of its duty of good faith in the event of a wrongful denial of coverage.

**D.      Violation of Texas Prompt Pay Act**

51. The Plaintiffs incorporate each and every allegation set forth in this Petition as if fully set forth in this section.

52. Chubb has failed to timely and promptly pay as required under TEX. INS. CODE §§ 542.055-542.059.

53. Chubb should be ordered to pay "in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees. Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law." TEX. INS. CODE sec. 542.060(a).

54. The Plaintiffs were forced to retain the services of an attorney and law firm to represent them with respect to their claims against Chubb because of Chubb's wrongful acts or omissions. *Id.* at sec. 542.060(b).

## VI.      JURY TRIAL DEMANDED

55. Plaintiffs demand a jury trial and tenders the appropriate fee with this petition.

## VII. WRITTEN DISCOVERY REQUESTS

56  Pursuant to Rule 194, Defendant is hereby requested to disclose the information or material described in Rule 194.2 (a)-(1) within fifty (50) days of the service of this request. Additionally, under Texas Rules of Civil Procedure 196, 197, 198 and 193.3 (b), Plaintiffs request that within fifty (50) days of service of this request that Chubb respond to Plaintiffs' First Request for Production and Request for Privilege Log, made a part of this petition as Exhibit "A."

## VIII. INTENT TO USE DEFENDANT'S DOCUMENTS

57.  In accordance With Texas Rules of Civil Procedure 193.7, any documents produced by Defendant in response to written discovery will be used by Plaintiffs at any pre-trial proceeding or trial.

## IX. PRAYER

58.  The Plaintiffs pray that Chubb be served with process and appear herein and that, upon final hearing hereof, this Honorable Court enter a judgement for Plaintiffs awarding the following relief:

   a.  Actual and consequential damages for Chubb's breach of contract;

   b.  Actual damages for Chubb's breach of the duty of good faith and fair dealing;

   c.  Punitive damages for Chubb's grossly negligent and/or malicious violations of the duty of good faith and fair dealing;

   d.  An 18% penalty under TEX. INS. CODE section 542.060 et seq.;

   e.  Reasonable and necessary attorney's fees and costs;

   f.  Pre-judgment and post-judgment as allowed by law;

g. Such other and further relief as is equitable and just, both at law and in equity, as Plaintiffs may, at the time of trial, show themselves justly entitled.

Respectfully submitted,

*/s/ Michael W. Huddleston*
Michael W. Huddleston
Texas State Bar No. 1048415
Munsch Hardt Kopf & Harr, P.C.
3800 Ross Tower
500 North Akard Street
Dallas, TX 75201-7584
(214) 855-7500 Main Tel.
(214) 855-7584 Facsimile
(214) 855-7572 Direct Tel.
mhuddleston@munsch.com

**ATTORNEY FOR PLAINTIFFS**