# Exhibit 16

Don Springmeyer, Esq. (NSB No. 1021)
Bradley Schrager, Esq. (NSB No. 10217)
Royi Moas, Esq. (NSB No. 10686)
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200
Facsimile: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
rmoas@wrslawyers.com

Robin L. Cohen, Esq. (*pro hac vice to be submitted*)
Marc T. Ladd, Esq. (*admitted pro hac vice*)
**MCKOOL SMITH, P.C.**
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel: (212) 402-9400
Fax: (212) 402-9444
rcohen@mckoolsmith.com
mladd@mckoolsmith.com

*Attorneys for Plaintiff*
*JGB Vegas Retail Lessee, LLC*

# DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| JGB VEGAS RETAIL LESSEE, LLC, | Case No.: A-20-816628-B<br>Dept. No.: XIII |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT STARR SURPLUS LINES INSURANCE COMPANY'S MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE** |
| STARR SURPLUS LINES INSURANCE COMPANY, | |
| Defendant. | |

**ORDER DENYING MOTION TO DISMISS**

On June 16, 2020, Plaintiff JGB Vegas Retail Lessee, LLC ("Plaintiff" or "JGB") filed its Complaint against Defendant Starr Surplus Lines Insurance Company ("Defendant" or "Starr") asserting four causes of action arising from its insurance claim for coverage under Policy No. SLSTPTY11245819 issued by Starr to JGB (the "Policy"). JGB alleged causes of action for: (1) Breach of Contract; (2) Declaratory Judgment; (3) Violations of the Nevada Unfair Claims Practices Act, N.R.S. 686A.310; and (4) Breach of the Covenant of Good Faith and Fair Dealing.[1] On September 16, 2020, Starr moved to dismiss the entire Complaint with prejudice ("Motion to Dismiss"). JGB filed its opposition to the Motion to Dismiss on October 14, 2020, and Starr filed a Reply in support of the Motion ("Reply") on November 4, 2020. Pursuant to its Minute Order on November 9, 2020, the Court vacated the scheduled hearing due to the continuing coronavirus situation and deemed the matter submitted on the briefs and under advisement as of November 12, 2020. The Court, having reviewed the pleadings and the parties' filings related to the Motion to Dismiss (excluding the supplemental filings of Plaintiff on October 26 and November 10, 2020, which have not been reviewed or considered by the Court), rules as follows.[2]

The Court first rejects the argument in Starr's Motion to Dismiss that the Policy designates New York as the sole and exclusive venue to resolve any and all disputes arising out of the Policy, and therefore, that Nevada is not the proper forum to adjudicate this action. As Starr contends, the Policy form "General Conditions" provides that "[a]ny suit, action, or proceeding against the COMPANY [*i.e.* Starr] must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York." Policy, Property Coverage, General Conditions, § 12(e). However, at Endorsement #27, the Policy also includes a "Service of Process Clause Endorsement," which provides, in part, that:

---

[1] On July 23, 2020, Starr removed this action to the United States District Court for the District of Nevada, on the basis of diversity of citizenship. On September 1, 2020, the United States District Court entered the parties' stipulation and order to remand the action to this Court based on a lack of complete diversity between the parties.

[2] The Court provides no opinion regarding which state's law is applicable in denying Starr's Motion to Dismiss.

> In the event of failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed . . . that [for] any suit instituted against the Insurer upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

Policy, Endt. 27. The Service of Process Clause Endorsement continues, that "pursuant to any statute of any state, territory, or district of the United States," Starr "designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute" as its agent for service of process. *Id.* The Court finds that there is a conflict between these two provisions and, as an endorsement, the Service of Process Clause Endorsement governs over the forum selection clause in the Policy's form. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1162-65 (S.D. Cal. 2015) (holding that the Service of Suit Endorsement "changed the original insurance agreement" that contained a forum selection clause and "unambiguously permits Plaintiff to bring suit in a forum of its choosing."); *Wayne Cnty. Airport Auth. v. Allianz Glob. Risks U.S. Ins. Co.*, No. 11-15472, 2012 WL 3134074, at *3 (E.D. Mich. Aug. 1, 2012) ("[Insurers] seek dismissal and enforcement of the forum selection clause that was bargained away. The [insurers] are not entitled to enforce the forum selection clause in the policy over that in the endorsement."). Moreover, Starr has failed to show that Nevada is an inconvenient forum to justify dismissal. *See* N.R.S. 13.050(2)(c); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 131 Nev. 296, 300-07, 350 P.3d 392, 396-400 (2015). Accordingly, this action is properly within the jurisdiction of this Court, and Starr's Motion to Dismiss on forum is denied.

The Court next analyzes Starr's arguments for dismissal under NRCP 12(b)(5). When a court considers a motion to dismiss under NRCP 12(b)(5), the "court will recognize all factual allegations in [the] complaint as true and draw all inferences in its favor." *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). "A complaint need only set forth sufficient facts to demonstrate the necessary elements of a claim for relief so that the defending party has adequate notice of the nature of the claim and relief sought." *W. States Constr., Inc. v. Michoff*, 108

Nev. 931, 936, 840 P.2d 1220, 1223 (1992). Thus, the complaint "should be dismissed only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672.

On the first cause of action, JGB states a ~~valid~~ claim for relief for breach of the Policy. The Policy's initial coverage grant provides that it "covers the property insured hereunder against all risks of direct physical loss or damage to covered property while at INSURED LOCATIONS occurring during the Term of this POLICY, except as hereinafter excluded or limited." Policy, Property Coverage, General Conditions, § 1; *see* Compl. ¶¶ 30-32. The Policy also provides certain "TIME ELEMENT" coverages for business interruption losses; the main section provides coverage for "[l]oss directly resulting from necessary interruption of the Insured's NORMAL business operations caused by direct physical loss or damage to real or personal property covered herein[.]" Policy, Business Interruption, § 1; *see* Compl. ¶¶ 33-40. Also included in the TIME ELEMENT COVERAGE is "Interruption by Civil or Military Authority."[3]

JGB's Complaint alleges the physical presence and known facts about the coronavirus, including that it spreads through infected droplets that "are physical objects that attach to and cause harm to other objects" based on its ability to "survive on surfaces" and then infect other people. Compl. ¶¶ 16-20. JGB also alleges that by March 11, 2020, COVID-19 was present at the Mirage casino, within one mile from JGB's Grand Bazaar Shops. *Id.* ¶ 21. JGB alleges that based on these facts and the location and characteristics of the Grand Bazaar Shops, that it was "highly likely that the novel coronavirus that causes COVID-19 has been present on the premises of the Grand Bazaar Shops, thus damaging the property JGB had leased to its tenants." *Id.* ¶ 26; *see also id.* ¶ 7. The Complaint also states that because the presence of COVID-19 at or near the Grand Bazaar Shops and

---

[3] The coverage part for "Interruption by Civil or Military Authority" provides that:

This POLICY is extended to include, starting at the time of physical loss or damage, the actual loss sustained by the Insured, resulting directly from an interruption of business as covered hereunder, during the length of time, not exceeding the number of days shown under TIME LIMITS stated in the Declarations, when, as a direct result of damage to or destruction of property within one (1) statute mile of an INSURED LOCATION by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.

Policy, Business Interruption, § 7.

-3-

Governor Sisolak's March 20, 2020 Order restricting and prohibiting access to non-essential business, the Grand Bazaar Shops were forced to close and the few restaurants that remained open were severely limited in their operations, resulting in significant losses. *Id.* ¶¶ 26-28.

The Court finds that JGB's Complaint sufficiently alleges losses stemming from the direct physical loss and/or damage to property from COVID-19 to trigger Starr's obligations under the property and TIME ELEMENT coverage provisions in the Policy, including coverage for general business interruption and Interruption by Civil or Military Authority. *See, e.g., Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385, at *2, *4 (W.D. Mo. Aug. 12, 2020) (complaint alleged direct physical loss, because it alleged that the virus "is a physical substance," which "live[s] on" and is "active on inert physical surfaces," and that "it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus" and "the presence of COVID-19 'renders physical property in their vicinity unsafe and unusable'").[4]

Starr also moves to dismiss JGB's claim for breach of contract (and related claims) on the basis that any loss or damage suffered by JGB is nonetheless excluded by the Policy's "Pollution and Contamination Exclusion." Motion to Dismiss at 24-26; Reply at 24-27. The Pollution and Contamination Exclusion provides:

> b. Pollution and Contamination Clause:
>
>> This POLICY does not insure against loss or damage caused by or resulting from any of the following regardless of any cause or event contributing concurrently or in any other sequence to the loss:
>
> 1. contamination;
> 2. the actual or threatened release, discharge, dispersal, migration or seepage of POLLUTANTS at an INSURED LOCATION during the Term of this POLICY unless the release, discharge, dispersal, migration, or seepage is caused by fire, lightning, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke, riot, civil commotion or vandalism. This POLICY does not insure off premises cleanup costs arising from any cause and the coverage afforded by this clause shall not be construed otherwise.

---

[4] *See also Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20, 2020 WL 5806576 (N.J. Super. L. Aug. 13, 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-cv-00383, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020).

-4-

Policy, Property Coverage, General Conditions, § 7(b). The Policy does not define "contamination," but defines "POLLUTANT or CONTAMINANTS" as:

> any solid, liquid, gaseous or thermal irritant or CONTAMINANT including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, virus, waste, (waste includes materials to be recycled, reconditioned or reclaimed) or hazardous substances as listed in the Federal WATER Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

Policy, Property Coverage, General Conditions, § 13(T).

Starr contends that the Pollution and Contamination Exclusion clearly and unambiguously applies on its face to exclude JGB's claims. Reply at 24-25. As the insurer, Starr bears the burden to prove any clause excludes coverage. *See Nat'l Auto. & Cas. Ins. Co. v. Havas*, 75 Nev. 301, 303, 339 P.2d 767, 768 (1959). "[I]f an insurer wishes to exclude coverage by virtue of an exclusion in its policy, it must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case." *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 164, 252 P.3d 668, 674 (2011) (citing *Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 367 (S.D.N.Y. 2007)); *see also Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (stating "policy exclusions are given a strict and narrow construction"). Starr has not shown that it is unreasonable to interpret the Pollution and Contamination Exclusion to apply only to instances of traditional environmental and industrial pollution and contamination that is not at issue here,[5] where JGB's losses are alleged to be the result of a naturally-occurring, communicable disease. This is the case, even though the Exclusion contains the word "virus." *See, e.g., Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co.*, No. 6:20-cv-1174, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) ("Denying coverage for losses stemming from COVID-19, however, does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these

---

[5] *See, e.g., Century Surety Co. v. Casino W., Inc.*, 130 Nev. 395, 398-401, 329 P.3d 614, 616-18 (2014); *Belt Painting*, 100 N.Y.2d at 383-88.

-5-

kinds of business losses."). Accordingly, the Court finds that the Pollution and Contamination Exclusion does not apply to exclude JGB's claims.

On the second cause of action for declaratory relief, for the reasons stated above (*supra* at 2-5), the Court finds that JGB's Complaint sufficiently alleges facts to state a claim upon which relief can be granted for declaratory relief under Nevada law. *See* N.R.S. 30.010 *et seq*. Accordingly, Starr's Motion to Dismiss this cause of action is denied.

On the third cause of action, an insurer violates the Unfair Claims Practices Act for, *inter alia*, "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue" or "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." N.R.S. 686A.310(1)(a) & (e). Regarding the fourth cause of action, "an implied covenant of good faith and fair dealing [is] in every contract." *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 792-93, 858 P.2d 380, 382 (1993). "[W]ith respect to the covenant of good faith and fair dealing . . . '[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith.'" *Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (1995) (citing *Hilton Hotels v. Butch Lewis Prods.*, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991)); *see also Pemberton*, 109 Nev. at 793, 858 P.2d at 382 ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy."); *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 92 N.Y.S.3d 231, 232-34 (App. Div. 1st Dep't 2019).

The Complaint alleges that Starr denied the claim, did so unreasonably, and did so with knowledge that denial was unreasonable. Compl. ¶¶ 10, 46, 61. JGB also alleged that Starr misrepresented the facts of the claim by asserting that "there [wa]s no mention of the [Nevada] orders having been issued because of physical loss or damage" and that it did "not appear that the [Nevada] orders in question prohibited access to the insured premises[.]" *Id*. ¶¶ 45-47. Moreover, JGB alleged that Starr misrepresented the scope of the Policy by citing the Pollution and Contamination Exclusion to apply to coverage, and by requiring that JGB be "physical prevent[ed]" from the premises in order to trigger the TIME ELEMENT coverages. *Id*. ¶¶ 48, 49, 52. Finally, JGB

alleged consequential damages from Starr's allegedly unreasonable denial of coverage. *See, e.g., id.* ¶ 83. The Court finds that JGB's Complaint sufficiently alleges facts to state claims upon which relief can be granted for violation of the Nevada Unfair Claims Practices Act and for breach of the implied covenant of good faith and fair dealing.

Lastly, Starr's request to deny Plaintiff leave to amend the Complaint is denied as moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **IS DENIED IN ITS ENTIRETY** without prejudice.

November 30, 2020.

Respectfully submitted,

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

*/s/ Don Springmeyer*
Don Springmeyer, Esq. (NSB No. 1021)
Bradley Schrager, Esq. (NSB No. 10217)
Royi Moas, Esq. (NSB No. 10686)
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200
Facsimile: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
rmoas@wrslawyers.com

Robin L. Cohen, Esq. (*pro hac vice to be submitted*)
Marc T. Ladd, Esq. (*admitted pro hac vice*)
MCKOOL SMITH, P.C.
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
Tel: (212) 402-9400
Fax: (212) 402-9444
rcohen@mckoolsmith.com
mladd@mckoolsmith.com
*Attorneys for Plaintiff JGB Vegas Retail Lessee, LLC*

Approved/<u>disapproved</u> as to form

Approved/<u>disapproved</u> as to content

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC

By: _____
Lee H. Gorlin (NSB No. 13879)
2200 Paseo Verde Parkway, Suite 280
Henderson, NV 89502
Telephone: (702) 827-1510
Facsimile: (312) 863-5099
lgorlin@fgppr.com

Amy M. Samberg (NSB No. 10212)
400 East Van Buren St., Suite 550
Phoenix, AZ 85004
Telephone: (602) 926-9880
Facsimile: (312) 863-5099
asamberg@fgppr.com

*Attorneys for Starr Surplus Lines Insurance Company*