# Exhibit 1

2021 WL 168422
Only the Westlaw citation is currently available.
United States District Court,
N.D. Ohio, Eastern Division.

HENDERSON ROAD RESTAURANT SYSTEMS,
INC., dba Hyde Park Grille, et al., Plaintiff,
v.
ZURICH AMERICAN INS. CO., Defendant.

CASE NO: 1:20 CV 1239
|
01/19/2021

Dan Aaron Polster, United States District Judge

#### OPINION AND ORDER

**\*1** Before the Court are the following motions:

1. Defendant Zurich American Insurance Company's ("Zurich") Motion for summary Judgment (ECF Doc. 14); and

2. Plaintiffs' Motion for Summary Judgment on the Issue of Coverage under the Zurich Policy (ECF Doc. 15).

On December 4, 2020, Zurich and Plaintiffs filed opposition briefs (ECF Doc. 16 and ECF Doc. 17), and on December 18, 2020, both parties filed replies. ECF Doc. 18 and ECF Doc. 19. On December 23, 2020, Zurich filed a notice of supplemental authority (ECF Doc. 20), and on December 31, 2020, plaintiff filed a response to the supplemental authority. ECF Doc. 21.

For the reasons explained below, the Court GRANTS summary judgment in favor of Plaintiffs on the insurance coverage issues alleged in Counts I and III of their complaint and DENIES summary judgment on Count II. Conversely, the Court DENIES Zurich's motion for summary judgment on Counts I and III of Plaintiffs' complaint and GRANTS summary judgment on Count II.

The Court's order is final and appealable on Counts II and III. The Court's order is not final or appealable on Count I because damages have not yet been determined. However, because the Court's opinion on Count I involves a question of law that will control the outcome of Plaintiffs' breach of contract claim, the Court certifies its order on Count I for interlocutory appeal, pursuant to 28 U.S.C.S. § 1292(b). An interlocutory appeal of this dispositive issue will enable the parties to appeal the legal issue before spending additional time and money on the issue of damages.

**I. Relevant Facts**

Plaintiffs, Henderson Road Restaurant Systems, Inc. dba Hyde park Grille, Coventry Restaurant Systems, Inc., dba Hyde Park Chop House, Chagrin Restaurants, LLC dba Hyde Park Prime Steak House, JR Park LLC dba Hyde Park Prime Steak House, HP CAP LLC, dba Hyde Park Prime Steakhouse, NSHP, LLC dba Hyde Park Prime Steakhouse, HPD Restaurant Systems, Inc. dba Hyde Park Prime Steak House, 457 High Street Development, LLC, CAP Restaurant Development LLC, RJ Moreland Hills, LLC and Northville Development, LLC ("Plaintiffs") operated restaurants in Ohio, Pennsylvania, Michigan, Indiana and Florida. In the spring of 2020, state governments issued orders restricting the operations of restaurants in an effort to abate the spread of the coronavirus ("COVID-19"). In response to these orders, Plaintiffs closed all but four of their Ohio restaurants on March 15, 2020. Those four Ohio restaurants continued to provide only carry-out dining until March 17, 2020, and then they closed. ECF Doc. 12 at 6.

Prior to the government closings, Plaintiffs' restaurants received very few take-out orders; their businesses were comprised almost exclusively of in-person dining. ECF Doc. 15-1 at 1 ("Saccone Decl.") ¶ 4. As a result of the closings, Plaintiffs were forced to lay off staff and suffered significant financial losses. *Id.* ¶ 2. They speculate that some of their restaurants may never re-open due to new seating capacity restrictions, and those that have reopened have reduced staffing and suffered financial loss. [1] *Id.* ¶ 3.

**\*2** On March 24, 2020, Plaintiffs submitted a claim to Zurich under commercial insurance policy No. CPO 6220911-06 ("Policy") [2] for loss of business income caused by the state orders. ECF Doc. 12 at 7, ¶ 50. Zurich denied coverage on April 27, 2020. ECF Doc. 12 at 8, ¶ 53. The parties have identified the following portions of the Policy as relevant to their dispute:

**Business Income Coverage Form**

**A. COVERAGE**

We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"Covered cause of loss".** We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that **"premises."**

B. ADDITIONAL COVERAGES

**1. Civil Authority**

We will pay for the actual loss of **"business income"** you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary **"suspension"** or delay in the start of your **"operations"** if the **"suspension"** or delay is caused by order of civil authority that prohibits access to the **"premises"** or **"reported unscheduled premises."** That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the **"premises"** or **"reported unscheduled premises"** which sustains a **"business income"** loss. The loss or damage must be directly caused by a **"covered cause of loss".**
ECF Doc. 12-1 at 168.

The Policy defines "Period of restoration" as the time that begins when:

**a.** The direct physical loss or damages that causes **"suspension"** of your **"operations"** occurs; or

**b.** The date **"operations"** would have begun if the start of **"operations"** is delayed because of loss of or damage to any of the following:

**1) "Real property",** whether complete or under construction;

**2)** Alterations or additions to **"real property"**; or

**3) "Personal property"**:

**a.** Used in such construction, alterations, or additions;

**b.** Incidental to the occupancy of the area intended for construction, alteration, or addition; or

**c.** Incidental to the alteration of the occupancy of an existing building or structure.

If you resume **"operations"**, with reasonable speed, the **"period of restoration"** ends on the earlier of:

**a.** The date when the location where the loss or damage occurred could have been physically capable of resuming the level of **"operations"** which existed prior to the loss or damage, if the location had been restored to the physical size, construction, configuration, location, and material specifications which would satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents; or

**b.** The date when a new permanent location is *physically capable* of resuming the level of **"operations"** which existed prior to the loss or damage, if you resume **"operations"** at a *new permanent location.*

If you do not resume **"operations"**, or do not resume **"operations"** with reasonable speed (whether at your **"premises"** or **"reported unscheduled premises"** or elsewhere), the **"period of restoration"** will end on the date when the location where the loss or damage occurred could have been restored to the physical size, construction, configuration, location, and material specifications which existed at the time of loss or damage, with no consideration for any time:

 **\*3 a.** Which would have been required to make changes in order to satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents; and

**b.** Which would have been necessary to make the location physically capable of resuming the level of **"operations"** which existed prior to the loss or damage after the completion of repairs, replacement or rebuilding.

**"Period of restoration"** does not include any increased period required due to the enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or *in any way respond to, or assess the effects of* "**pollutants**" or "*microorganisms.*"

The expiration of this policy will not cut short the **"period of restoration."** ECF Doc. 12-1 at 94.

The Policy defines "covered cause of loss" as "a fortuitous cause or event, not otherwise excluded, which actually occurs

during this policy period." ECF Doc. 12-1 at 86. The Business Income Coverage Form states, in relevant part:

c. EXCLUSIONS

1. Real or Personal Property

The exclusions * * * below and the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM, except Off-Premises Service Interruption, apply to loss of **"business income"** caused by or resulting from loss of damage to any property * * *"
ECF Doc. 12-1 at 171.
The Real and Personal Property Coverage Form includes the following exclusions:

B. EXCLUDED CAUSES OF LOSS

11. Loss of Market or Delay

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction."**

12. Microorganisms

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms",** unless resulting from fire or lightning. Such loss or damage is excluded regardless or any other cause or event, including a **"mistake"** or **"malfunction,"** or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of the excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss".**

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms".**
ECF Doc. 12-1 at 106.

On April 30, 2020, Plaintiffs filed this case in the Cuyahoga County Court of Common Pleas. ECF Doc. 1-2. Plaintiffs asserted a claim for breach of contract (Count I), a claim for bad faith denial of coverage (Count II), and a claim for declaratory judgment (Count III). ECF Doc. 1-2 at 15-16. Defendant removed the case to federal court on June 5, 2020. ECF Doc. 1. The parties filed stipulated facts on October 27, 2020, which state in relevant part:

> **\*4** 44. None of Plaintiffs' Insured Premises were closed as the result of the known or confirmed presence of SARS-CoV-2 or COVID 19 at any of the Insured Premises.
>
> * * *
>
> 46. Plaintiffs did not provide any delivery, carry-out, take-out and/or curbside service from any of its Insured Premises while they were closed, [with the exception of the four Ohio locations.]
>
> 47. There were no known or presumed infected person(s) with COVID-19 at any of the Insured Premises at any time from March 15, 2020 to April 27, 2020.
>
> 48. There was no physical alteration or structural damage to any property at an Insured Premises any time from March 15, 2020 to April 27, 2020.
>
> 49. There was no physical obstruction affecting ingress or egress to any of the Insured Locations at any time from March 15, 2020 to April 27, 2020.

ECF Doc. 12 at 7.

II. Statement of the Parties' Arguments [3]

A. Zurich's Motion for Summary Judgment
Zurich filed its motion for summary judgment on October 30, 2020. Zurich argues that it is entitled to declaratory judgment because Plaintiffs' losses were not covered by the Policy as a matter of law. Zurich contends that Plaintiffs' economic losses are not covered by the Policy because they were not caused by "physical loss or damage to property." ECF Doc. 14 at 13. In support of this argument, Zurich does not rely directly on the Policy's language; rather, it relies on case law interpreting language from other Ohio insurance policies. *See e.g., Mastellone v. Lightning Rod Mut. Ins. Co.,* 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130 (8th Dist.); *Universal Image Prods., Inc. v. Fed. Ins. Co.,* 475 F. App'x 569, 573 (6th Cir. 2012); *Schmidt v. Travelers Indem. Co. of*

*Am.,* 101 F. Supp. 3d 768, 781, (S.D. Ohio 2015); *Santo's Italian Café LLC dba Santosuossos Pizza Pasta Vino v. Acuity Insurance Co.,* No. 1:20 cv 01192 (N. D. Ohio Dec. 21, 2020), ECF Doc. 20-1.

Alternatively, Zurich argues that, even if there had been direct physical loss to Plaintiffs' property, the Microorganism exclusion would exclude coverage. Simply summarized, Zurich argues that the underlying cause of loss was COVID-19; that COVID-19 is a microorganism; and that the Microorganism exclusion applies. ECF Doc. 14 at 19.

Zurich also contends that the additional Civil Authority provision does not apply because the states' orders did not "prohibit access" to Plaintiffs' premises. Zurich argues that the states' orders permitted Plaintiffs to continue to operate on a carry-out and delivery basis and, therefore, did not prohibit access to Plaintiffs' restaurants as required by the Policy. Zurich also argues that the Civil Authority coverage is inapplicable because the states' orders did not respond to a direct physical loss of or damage to property located within one mile from the premises. ECF Doc. 14 at 16. Zurich cites other federal cases holding that civil authority provisions do not provide coverage in the COVID-19 context. *See, e.g., Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.,* No. 20-cv-03213, 2020 U.S. Dist. LEXIS 168385 at *19 (N.D. Cal. Sept. 23, 2020).

**\*5** Finally, Zurich argues that, because it properly denied coverage, it is entitled to summary judgment on Plaintiffs' bad faith claim. Zurich argues that, even if the Court decides that coverage exists, its denial was not "arbitrary or capricious." ECF Doc. 14 at 18.

Plaintiffs filed a memorandum in opposition on December 4, 2020. ECF Doc. 17. Plaintiffs argue that Zurich could have easily drafted the Policy language to limit coverage to physical or structural alteration/damage to tangible property. Instead, Zurich chose the language "direct physical loss of or damage to property." Plaintiffs argue that "direct physical loss of" includes an inability to possess something in the real, material or bodily world, and that the government orders caused Plaintiffs to lose their property in this manner. Plaintiffs point out that Zurich's Policy does not state that "direct physical loss of or damage to property" required "physical alteration or structural damage to any property at the Insured Premises."

Plaintiffs also contend that Zurich's cases are not on point. Plaintiffs argue that different policy language was involved in *Mastellone;* the court found that there was no evidence that the building was substantially "unusable" in *Universal Image*; and the *Schmidt* decision determined that a fraudulent cashier's check did not constitute "physical loss of or damage to property." ECF Doc. 17 at 9-10.

Instead, Plaintiffs argue that the Court should find persuasive *North State Deli, LLC, v. Cincinnati Ins. Co.,* No. 20 CVS 02569, 2020 N.C. Super LEXIS 38 (N.C. Super Ct. Oct. 7, 2020), which decided that the ordinary meaning of the phrase "direct physical loss" included the inability to possess something in the real, material or bodily world, resulting from a given cause without the intervention of other conditions. Plaintiffs also cite *Cajun Conti LLC v. Certain Underwriters at Lloyd's,* No. 2020-02558 (La Dist. Ct. Nov. 4, 2020) in which the court denied an insurer's dispositive motion because the restaurant had to drastically change its operations to exclude sit-down customers who were the majority of the restaurant's patrons. ECF Doc. 17 at 12.

Plaintiffs argue that even if the Court finds that the Policy's "direct physical loss of or damage to property" language does not unambiguously provide coverage for their claims, that the language is, at a minimum, ambiguous. And, if the language is ambiguous, the Court must construe it in favor of the insured and against the insurer. *Neal-Pettit v. Lahman,* 125 Ohio St.3d 327, 2010-Ohio-1829, 928 N.E.2d 421, 424 (Ohio 2010).

Plaintiffs also argue that the government closure cases cited by Zurich are distinguishable. Plaintiffs argue that *Diesel Barbershop, LLC v. State Farm Lloyds,* No. 5:20 CV 461-DAE, 2020 U.S. Dist. LEXIS 147276 (W.D. Tex. Aug. 13, 2020) and *Sandy Point Dental*, *PC v. Cincinnati Ins., Co.,* 2020 U.S. Dist. LEXIS 171979 (N.D. Ill. Sept. 21, 2020) involved policies that only covered "accidental direct physical loss to" or "direct physical loss to property." Plaintiffs argue that here, the Policy language covering "direct physical loss *of* or damage to property" is more expansive and must be interpreted differently.

Plaintiffs also argue that *10e v. Travelers Indem. Co.,* 2:20 CV 04418-SVW-AS, 2020 U.S. Dist. LEXIS 165252 (C.D. Cal. Sept. 2, 2020) and *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.,* No.: 20-CV 907-CAB-BLM, 2020 U.S. Dist. LEXIS 166808 (S.D. Cal. Sept. 11, 2020) are inapposite. In those cases, the courts imposed a "permanent dispossession" requirement that was not based on any

language in the relevant policies but on a different case. Plaintiffs also distinguish *Malaube, LLC v. Greenwich Ins. Co.,* No. 20-22615, 2020 U.S. Dist. LEXIS156027 (S.D. Fla. Aug. 26, 2020) and *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London,* No. 8:20 cv 1605-T-30-AEP, 2020 U.S. Dist. LEXIS 182497 (M.D. Fla. Sept. 28, 2020) both of which relied on *Mama Jo's, Inc. v. Sparta Ins. Co.,* 823 F. App'x 868 (11th Cir. 2020), a case which involved reduced business due to construction dust that needed to be cleaned before the premises could be used for their intended purpose. ECF Doc. 17 at 18.

**\*6** Plaintiffs argue that the Microorganism exclusion does not apply because COVID-19 was not the underlying cause of Plaintiffs' loss. Plaintiffs acknowledge that the government closure orders were issued in response to COVID-19, but argue that they were not actually *caused by* COVID-19. They argue that the Anti-Concurrent causation language does not exclude coverage because Zurich's interpretation of that clause would expand the Microorganism exclusion far beyond anything the parties could have reasonably intended or understood. ECF Doc. 17 at 22. They also argue that a virus is not technically a Microorganism. ECF Doc. 17 at 23.

Finally, Plaintiffs concede that, if the Court finds that Zurich properly denied coverage, Plaintiffs' bad faith claim should be summarily dismissed. However, if the Court finds that there *is* coverage, Plaintiffs request that they be given more time to conduct discovery and refile their motion for summary judgment on the bad faith claim. ECF Doc. 17 at 19-20.

Zurich filed a reply on December 18, 2020. ECF Doc. 18. Zurich argues that the Court should follow the "growing consensus among federal courts" that have dismissed COVID-19 business interruption claims because the insured parties did not sufficiently allege or prove physical loss or damage. Zurich also argues that the Policy's business interruption provision cannot be read as a stand-alone policy; it must be read as a part of the entire policy – a policy related to the Plaintiffs' *physical* property.

Zurich continues to argue that Plaintiffs cannot avoid the plain language of the Microorganism exclusion. Zurich argues that the Policy clearly excludes coverage for damages caused directly or indirectly by viruses and that there is no need for the Court to consider the dictionary definitions of microorganisms. Zurich argues that Plaintiffs' losses were caused by COVID-19 and that the governmental orders were issued in direct response to the virus. Zurich also continues to argue that it should not be estopped from arguing that the Microorganism exclusion applies.

**B. Plaintiffs' Motion for Summary Judgment**

Plaintiffs filed a cross-motion for summary judgment on October 30, 2020. ECF Doc. 15. Plaintiffs argue that they are entitled to business income coverage under the plain language of the Policy. As stated above, the Business Income Coverage provides:

> We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"Covered cause of loss"**.

In accordance with this language, Plaintiffs argue that they are entitled to coverage if they show that 1) they necessarily suspended their operations; 2) they suffered a loss of business income due to the suspension of their operations; 3) the suspension was caused by a direct physical loss of or damage to property a premises, and 4) the loss or damage was directly caused by a covered cause of loss. ECF Doc. 14 at 5. Plaintiffs argue that they *have* shown each of these facts and are entitled to coverage under the plain language of the Policy. ECF Doc. 15 at 5-15.

Plaintiffs also argue that none of the Policy's exclusions preclude coverage. First, they contend that, under the Policy's plain language, the Microorganism exclusion does not apply. They further assert that Zurich should be estopped from arguing that this exclusion applies based on its 2006 representations to the Ohio Department of Insurance when the exclusion was first approved for inclusion in property casualty insurance policies. ECF Doc. 15 at 15-20. Plaintiffs also argue that the Loss of Market or Delay exclusion does not apply. They contend that the purpose of the business income coverage would be completely undermined if the "loss of use" exclusion applied. (ECF Doc. 15 at 20).

**\*7** Zurich filed a response in opposition to Plaintiffs' motion for summary judgment on December 4, 2020. ECF Doc. 16. Zurich argues that coverage under the Policy required *permanent* dispossession and that the states' orders did not permanently dispossess Plaintiffs of their property or terminate their leasehold rights. Zurich asserts that the states' orders did not preclude Plaintiffs from entering their premises and using them for carry-out and delivery service. Zurich also argues that the Court should reject Plaintiffs' interpretation of the language "physical loss of or damage to property." ECF Doc. 16 at 3-4. Zurich cites several federal cases applying California law and rejecting similar attempts to expand coverage by focusing on this language. *See, e.g. 10E, LLC v. Travelers Indem. Co.,* Case No. 2:20 cv 04418, 2020 U.S. Dist. LEXIS 217482 (C.D. Cal. Nov. 13, 2020); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.,* Case No. 20 CV 907- CAB-BLM, 2020 U.S. Dist. LEXIS 166808 at \*11 (S. D. Cal. Sept. 11, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut,* No. 2:20 CV 04423-AB-SK, 2020 U.S. Dist. LEXIS 188463 at \* 10 (C. D. Calif. Oct. 2, 2020).

As already argued in its motion for summary judgment, Zurich argues here that there is a growing consensus of cases around the country that have held that the business interruptions caused by COVID-19 do not involve the physical loss of or damage to property necessary to trigger coverage under a first-party commercial property policy. Zurich continues to assert that Ohio law provides that "direct physical loss" requires "harm to the property that adversely affects the structural integrity of the [premises]." ECF Doc. 16 at 5-6. Zurich contends that the cases cited by Plaintiffs are inapposite. ECF Doc. 16 at 6-8. Zurich also cites the Policy's "Period of Restoration" definition in support of its argument that the Policy requires a "physical" loss. Zurich argues that the fact the Business Income Coverage ends when the location is physically capable of resuming operation supports its argument that "loss" must be of a physical nature. ECF Doc. 16 at 8-10.

Zurich argues again that the Microorganism exclusion bars coverage and that the governmental orders were issued in response to the SARS-CoV2 virus and COVID-19 disease. Zurich argues that the Microorganism exclusion applies to all loss "directly or *indirectly* caused by, contributed to, or aggravated by the … spread, or any activity of 'microorganisms.' " Zurich argues that it should not be estopped from arguing that the microorganism exclusion applies because Ohio has not recognized the doctrine of regulatory estoppel and, even if it had, it would be inapplicable here. ECF Doc. 16 at 12-14.

Zurich argues that the loss of use exclusion also bars coverage. Zurich argues that its interpretation of this exclusion is not non-sensical (as argued by Plaintiffs) because it does not bar coverage when there is physical damage – which Zurich argues is necessary for coverage. ECF Doc. 16 at 14. Finally, Zurich points out that Plaintiffs did not move for summary judgment on the Civil Authority provision of the Policy and are not entitled to coverage on that ground. ECF Doc. 16 at 14-15.

Plaintiffs filed a reply brief on December 18, 2020. ECF Doc. 19. Plaintiffs construe Zurich's argument regarding "permanent" dispossession of property as a concession that direct physical loss of property *could* mean "being dispossessed of covered property." However, Plaintiffs contend that the "permanent" requirement is not supported by the Policy language. Citing the Policy's definition of "suspension," Plaintiffs argue that the Policy provides coverage both when there is a cessation or a **"slowdown"** of business activities. ECF Doc. 12-1 at 101. Accordingly, Plaintiffs contend that Zurich's argument for "permanent" dispossession finds no support in the Policy.

**\*8** Plaintiffs also distinguish the *Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.,* 17-cv-04908, 2018 U.S. Dist. LEXIS 216917 (C.D. Cal. July 11, 2018) case cited by Zurich in support of its argument that physical loss of the premises requires permanent dispossession. The *Total Intermodal* court acknowledged that the same phrase in a different kind of insurance contract could mean something else. Plaintiffs also point out that, unlike Zurich's Policy, Travelers' policy provided coverage for "sums [the insured became] legally obligated to pay as damages as a Motor Carrier, Warehouseman, Freight Forwarder, Logistics Service Provider or Other Bailee for direct physical loss of or damage to covered property." *Id.,* at \*3-4.

Plaintiffs also contend that the "Period of Restoration" definition does not redefine the business income coverage. Plaintiffs argue that, under the unambiguous language of the Policy, the "Period of Restoration" began on the dates the relevant government orders went into effect and ended or will end on the dates the in-person dining restrictions were/are fully lifted. ECF Doc. 19 at 9.

Plaintiffs continue to argue that Zurich should be estopped from arguing that the Microorganism exclusion applies based on Zurich's past representations to the Ohio Department of Insurance. And, they continue to argue that the Policy's loss of market or delay exclusion cannot be interpreted as completely canceling the Business Income coverage. ECF Doc. 19 at 12-13.

**C. Zurich's Supplemental Authority**
On December 23, 2020, Zurich filed supplemental authority in support of its motion for summary judgment. The supplemental authority is a Memorandum of Opinion and Order granting an insurer's motion to dismiss in *Santo's Italian Café LLC dba Santosuossos Pizza Pasta Vino v. Acuity Insurance Company,* No. 1:20 cv 00192 (N.D. Ohio Dec. 21, 2020). This supplemental authority embraces some of Zurich's arguments. Specifically, the *Santo's* court, relying on *Mastellone* and *Universal Image Prods, Inc.,* found that plaintiff failed to plead a threshold claim of 'direct physical loss of or damage to' its premises and that the government orders did not constitute a "physical intrusion on Santo's property." The *Santo's* court also accepted the insurer's interpretation of the period of restoration term and decided that coverage was excluded under the insurer's policy's virus exclusion, as argued by Zurich in the instant case.

On December 31, 2020, Plaintiffs filed a response to Zurich's notice of supplemental authority. ECF Doc. 21. Plaintiffs argue that the *Santo's* court uncritically transmuted "physical injury" to mean "physical loss of or damage to" without explaining why these different terms should be interpreted the same. Plaintiffs further contend that the "period of restoration" set forth in the *Santo's* case was different that the language here, and that the *Santo's* decision provides minimal insight into Zurich's microorganism exclusion. In short, Plaintiffs' argue that the *Santo's* decision does not bolster Zurich's argument, and that this Court should not be persuaded by its holding.

**III. Law & Analysis**

**A. Standard of Review**
Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that there is no material issue in dispute. *Id.* at 607 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Here, the parties have filed cross-motions for summary judgment and agree that the Court must determine whether the language contained in Zurich's Policy is ambiguous as a matter of law. *See Potti v. Duramed Pharm., Inc.,* 938 F.2d 641, 647 (6th Cir. 1991).

**B. Ohio Law Interpretation of Insurance Contracts**
 *\*9*  A federal court sitting in diversity applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001). Because this Court is located in Ohio, it must apply Ohio law to the Zurich policy. [4] Courts generally apply contract law when interpreting insurance policies. *St. Mary's Foundry Inc. v Emp'rs Ins. of Wausau,* 332 F.3d 989. Determining whether language in an insurance policy is ambiguous is a matter of law decided by the Court. *Potti v. Duramed Pharm.,* 938 F.2d 641, 647.

A court must "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. However, "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.,* 35 Ohio St. 3d 208, 519 N.E.2d 1380, 1383 (Ohio 1988). The Ohio Supreme Court has repeatedly affirmed this bedrock principle of law. *See, e.g., Faruque v. Provident Life & Acci. Ins. Co.*, 31 Ohio St. 3d 34, 508 N.E.2d 949, 952 (Ohio 1987) ("Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer.") (*quoting Buckeye Union Ins. Co. v. Price*, 39 Ohio St. 2d 95, 313 N.E.2d 844 (Ohio 1974); *Thompson v. Preferred Risk Mut. Ins. Co.,* 32 Ohio St. 3d 340, 513 N.E.2d 733, 736 (Ohio 1987) ("[I]t is beyond question that any ambiguity will be resolved in favor of the insured and against the insurer."); *Marusa v. Erie Ins. Co.,* 136 Ohio St. 3d 118, 2013-Ohio-1957, 991 N.E.2d 232, 234 ("Because the cause before us involves the interpretation of an insurance contract, any ambiguities will be construed strictly against the insurer and liberally in favor of the insured.") (citation omitted). When a contract is subject to more than one interpretation, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such interpretation is the only one that can fairly be placed on the

language in question." *Andersen v. Highland House Co.,* 93 Ohio St.3d 547, 2001-Ohio-1607 (Ohio 2001); *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 183 Ohio App. 3d 29, 2009- Ohio 2526, 915 N.E.2d 687, 692-93 (Ohio Ct. App. 2009) (emphasis added); *see also Lane v. Grange Mut. Companies,* 45 Ohio St. 3d 63, 543 N.E.2d 488, 490 (Ohio 1989) ("[A]n exclusion from liability must be clear and exact in order to be given effect." (citation omitted).

### C. The Plain Language of the Policy

#### 1. Ambiguity

**\*10** The parties agree that Ohio law applies and that the Court must determine whether the Policy's language is ambiguous. Thus, the Court must first decide whether the Policy language is reasonably susceptible of more than one interpretation. As explained below, it is.

Zurich's Policy provides that it will pay for "direct physical loss of or damage to **'real property'**…" ECF Doc. 12-1 at 104. Based on this language, Plaintiffs argue that physical loss *of* the real property means something different than damage to the real property, and this is a valid argument. Otherwise, why would both phrases appear side-by-side separated by the disjunctive conjunction "or"? Plaintiffs argue that they lost their real property when the state governments ordered that the properties could no longer be used for their intended purposes – as dine-in restaurants. The Policy's language *is* susceptible to this interpretation.

Zurich does not focus on the language in the Policy. Instead, it argues that this Court must apply Ohio law interpreting the Policy language. But Zurich has not cited any Ohio cases interpreting the same language and applying it to real property. Zurich primarily relies on the Ohio Court of Appeals' decision in *Mastellone v. Lightning Rod Mut. Ins. Co.,* 175 Ohio App.3d 23. The *Mastellone* case involved a claim submitted on a residential homeowners' policy, which did not provide business income coverage. The *Mastellone* policy provided coverage for direct loss to property "only if that loss is a physical loss to property," and it excluded coverage for loss caused by "smog, rust or other corrosion, mold, wet or dry rot." *Id.* at ¶ 60. Because the policy did not define "physical loss to property" the court found that coverage required a "physical injury."[5] The *Mastellone* court then construed "physical injury" to mean "a harm to the property that adversely affects the structural integrity of the house."

Zurich urges this Court to apply the *Mastellone* definition of "physical loss to" or "physical injury" to its policy and deny coverage on that basis. But the policy in *Mastellone* did not cover "direct physical loss *of* or damage to" the premises; it expressly specified that it would cover loss "only if that loss [was] physical loss *to* property." Here, Zurich's policy does not expressly limit coverage to physical loss to property; it extends coverage to direct physical loss *of* property as well. There is no reason to believe that the Ohio Court of Appeals would have interpreted the Zurich Policy language as it did the homeowners' policy in *Mastellone.* The distinct Policies used different language and were applied to different facts. Thus, the *Mastellone* decision offers little guidance in interpreting Zurich's Policy.

Zurich also cites *Universal Image Prods., Inc. v. Fed. Ins. Co.,* 475 F. App'x 569, 573 (6th Cir. 2012) for the proposition that Ohio law requires "tangible, physical losses," not mere "economic losses." ECF Doc. 14 at 9. In *Universal Image*, the Sixth Circuit applied Michigan law to a policy providing coverage for ""direct physical loss or damage to building or personal property." The *Universal Image* insurance policy specified that "building" did not mean "land, water or air, either inside or outside of the structure." The air quality in the *Universal Image* commercial property had been affected by a bacterial contamination in the buildings ductwork. But given the policy's language, the Sixth Circuit upheld summary judgment in favor of the insurer. In doing so, the Sixth Circuit considered case law from other states that had interpreted the insurance term "physical damage." The Sixth Circuit cited *Mastellone* for the proposition that mold does not constitute "physical damage" because "[t]he presence of mold did not alter or otherwise affect the structural integrity of the [property]". *Universal Image*, 475 F. App'x at 573.

**\*11** Like the *Mastellone* decision*,* the *Universal Image* decision did not interpret the same policy language as in the Zurich policy. Moreover, the Sixth Circuit's reference to *Mastellone* was only *dicta* and was directly related to mold contamination to a property. Consequently, the *Universal Image* decision provides very little guidance to the Court when interpreting Zurich's policy language.

Zurich also cites *Schmidt v. Travelers Indemnity Co. of America,* 101 F. Supp.3d 768, 781 (S.D. Ohio 2015) in which the court held that the alleged loss was not covered because there was no " 'direct physical loss of or damage to' the cashier's checks because they were not physically lost or damaged, unlike [such as being] destroyed and lost in a fire."

ECF Doc. 14 at 14. The Traveler's policy further specified that "Covered Causes of Loss" are "DIRECT PHYSICAL LOSS unless the loss is" limited or excluded.

Unlike the other two Ohio cases cited by Zurich, the policy language in *Schmidt* is similar to Zurich's policy in that it provides coverage for "direct physical loss *of* or damage to" property. However, in *Schmidt* the insured sought coverage for a loss of personal property (cashier's checks), and the checks had not been lost or damaged. They were fraudulent. Thus, in *Schmidt* the interpretation and application of the policy language was relatively straight-forward. The court granted summary judgment because there had been no physical loss of or damage to the cashier's checks. The insured in *Schmidt* did not show that the policy language (as applied to the cashier's checks) was susceptible of more than one interpretation. But the application of the language "loss of" to personal property is different than it is to real property. Here, Plaintiffs experienced a loss *of* their real property – property which they had been using for dine-in customers.

Zurich contends that the state orders did not preclude Plaintiffs from using their property, because they were still permitted to use them for take out orders. However, Zurich has not disputed that prior to the states' orders, Plaintiffs' properties were used almost exclusively for in person dining. Saccone Decl., ¶ 4, ECF Doc. 15-1 at 2. Nor has Zurich asserted any facts showing that Plaintiffs would have been able to realistically transition their businesses to take-out restaurants or that they could have still used their properties (which were mostly used for dine-in customers) for take-out orders.

Zurich also argues that there is no coverage under the Policy because Plaintiffs did not permanently lose their properties. Zurich cites a case interpreting similar policy language and holding that coverage required a "permanent" loss, *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.,* Case No. 2:20 cv 00087-KS-MTP, ___ F. Supp.3d ___, 2020 U.S. Dist. LEXIS 208599 (S.D. Miss. Nov. 4, 2020). The *Real Hospitality* court, applying Mississippi law (similar to Ohio's), rejected the plaintiffs argument that the "loss of" their property due to a closure in response to governmental orders was covered under the Travelers policy because the loss had not involved a "permanent dispossession" of real property. In requiring a *permanent* loss, the court stated that it was following the insurer's logical approach to the phrase "loss of," and it cited *Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.,* Case No. CV 17-4908, 2018 U.S. Dist. LEXIS 216917, another case examining the language "direct physical loss of or damage to Covered Property."

**\*12** But in *Total Intermodal,* the court rejected the insurer's argument that "loss of" and "damage to" were interchangeable phrases. Rather, the court held that each phrase must be given its own meaning. The *Total Intermodal* court properly construed the language and gave each phrase its "ordinary and popular sense." *Id.* at \*8-10. And, in holding that "loss of" included a "permanent dispossession" of something, the court chose one popular definition, but recognized that "the same phrase in a different kind of insurance contract could mean something else, and that the issue here is simply whether the phrase "loss of" includes physical dispossession in the absence of physical damage. The Court therefore uses the word "includes" to make clear that its construction is non-limiting." *Id.* at fn. 4. Given this court's explanation, it is difficult to understand why the *Real Hospitality* court relied on *Total Intermodal* to support the insurer's approach to the phrase "loss of."

Moreover, by accepting the "logical" approach of the insurer's interpretation of "loss of" as a "permanent dispossession," the *Real Hospitality* court construed Travelers' policy language - language chosen by Travelers – in Travelers' favor. As shown below, the standard definitions of the word "loss," a word not otherwise defined by Zurich's policy, is not limited to "*permanent* dispossession." The word lost does not always involve permanency, and real property can be lost and later returned or restored. If a term is not defined in the policy, the Court must look to the plain meaning of the words, not persuasive authority from other courts. Zurich's Policy did not require a permanent "loss of" property and permanency is not embodied in the definition of loss. Adding this requirement would only be interpreting an ambiguous term in favor of the insurer – something Ohio law does not permit.

Zurich correctly argues that the Court must apply Ohio law to the interpretation of its Policy. Ohio law provides that if a policy is reasonably susceptible of more than one interpretation, it must be construed strictly against the insurer and in favor of the insured. *See*, *King v. Nationwide Ins. Co.,* 35 Ohio St. 3d at 208. Here, because Zurich's Policy is susceptible of more than one interpretation, it must be construed liberally in favor of the insureds, i.e., Plaintiffs. Zurich has not cited any Ohio law constraining this Court to its interpretation of the Policy. And because there is more than one interpretation, the Policy must be construed liberally in Plaintiffs' favor. As further explained below, when the Policy

is liberally construed in Plaintiffs' favor, it provides coverage for Plaintiffs' lost business income.

## 2. Coverage [6]

Zurich's policy provides business income coverage for:

> The actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss."**

ECF Doc. 12-1 at 168.

Plaintiffs have shown that there was a suspension of their operations. The Policy defines "suspension" as "[t]he slowdown or cessation of your business activities." ECF Doc. 12-1 at 101. It defines "operations" as "[y]our business activities occurring at the covered location prior to the physical loss or damage;" and "[t]he location is tenantable prior to the physical loss or damage." The parties stipulated that the Plaintiffs closed their premises on various dates in response to the states' orders. ECF Doc. 12 at 6-7. Thus, Plaintiffs have shown that there was a necessary "suspension" or "slowdown or cessation" of their business activities.

*13 Plaintiffs have shown that there was a loss of business income due to the suspension of their operations. The Policy defines "business income" as "Net income"; plus "Continuing expenses." ECF Doc. 12-1 at 84. "Net income" means "the net profit or loss, including rental income from tenants, that would have been earned or incurred before taxes." ECF Doc. 12-1 at 200. "Continuing expenses" is defined as:

**a.** Your continuing normal operating expenses including, but not limited to:

**1)** Payroll;

**2)** Rental payments as tenants; and

**3)** Factory overhead; and

* * *

Plaintiffs have submitted the declaration of Joseph Saccone stating that Plaintiffs have suffered significant financial losses as a result of the government closures. ECF Doc. 15-1 at 1. And Zurich does not deny that Plaintiffs have suffered a loss of business income.

Plaintiffs argue that, because the Policy does not define "physical," "loss," "damage," or "property," the Court should consider Webster's Dictionary to define these terms:

**Definition of** *physical* [7] 2 a **:** having material existence **:** perceptible especially through the senses and subject

to the laws of nature everything physical is measurable by weight, motion, and resistance— Thomas De Quincey

b **:** of or relating to material things **Definition of** *loss* [8]

1 : DESTRUCTION, RUIN
// to save the world from utter loss— John Milton 2 a : the act of losing possession : DEPRIVATION //loss of sight **Definition of** *damage* [9]

1 : loss or harm resulting from injury to person, property, or reputation

// flood damage // sustained severe damage to her knee; 2 damages plural : compensation in money imposed by law for loss or injury

// The judge awarded them $5,000 in damages.

**Definition of** *property* [10]

* * *

2 a : something owned or possessed specifically : a piece of real estate b : the exclusive right to possess, enjoy, and dispose of a thing : ownership

c : something to which a person or business has a legal title After considering the ordinary definitions of the undefined words in the Policy, the Court finds that the Plaintiffs have

shown that their business operations were suspended by direct physical loss of or damage to property at the premises.

Plaintiffs have also shown, applying a plain reading of the definition of "period of restoration," that the period ended or will end on the dates the states' restrictions are lifted because that will constitute the "date when the location where the loss or damage occurred could have been physically capable of resuming the level of 'operations' which existed prior to the loss or damage." ECF Doc. 12-1 at 94. Plaintiffs are now permitted, in some capacity, to operate their restaurants in Ohio, Indiana, Michigan, Pennsylvania, and Florida with in-person dining. ECF Doc. 15-1 at ¶7.

Finally, Plaintiffs have shown that the loss or damage was caused by a "covered cause of loss." The Policy defines "covered cause of loss" as a "fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period." Webster's dictionary defines "fortuitous" as "occurring by chance."[11] Plaintiffs have shown that the state orders leading to the restaurants' closings were caused by a fortuitous event. As argued by Plaintiffs, no one could have anticipated that state governments would issue orders shutting down or greatly restricting Plaintiffs' restaurants – this was an "occurrence of chance." Because Zurich's Policy is susceptible of more than one interpretation and because Plaintiffs have shown that they incurred "loss of **'business income'** due to the necessary **'suspension'** of their **'operations'** during the **'period of restoration'** " "caused by direct physical loss of or damage to property at a **'premises,'**" they are entitled to summary judgment on the issue of coverage under the Policy.

### D. Exclusions

#### 1. Microorganism Exclusion

 *14  Zurich argues that the Policy's Microorganism exclusion applies to exclude coverage in this case. The Policy's Microorganism exclusion states:

#### 12. Microorganisms

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms",** unless resulting from fire or lightning. Such loss or damage is excluded regardless or any other cause or event, including a **"mistake"** or **"malfunction,"** or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of the excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss".**

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms".**
ECF Doc. 12-1 at 106.
Plaintiffs argue that the Microorganism exclusion does not apply because the loss of their properties was not "directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms." In fact, the parties stipulated that "none of Plaintiffs' Insured Premises were closed as a result of the known or confirmed presence of SARS-CoV-2 or COVID-19 at any of the Insured Premises." ECF Doc. 12 at 7, ¶ 44. Instead, Plaintiffs argue that the loss of their properties was caused by the government closures and that those closures (in the absence of any presence or outbreaks at their restaurants) are not excluded by the Policy.

Zurich argues that COVID-19 "indirectly" caused Plaintiffs to close their restaurants. But this is not entirely accurate. There was "no known or presumed infected person(s) with COVID-19 at any of the Insured Premises at any time from March 15, 2020 to April 27, 2020." ECF Doc. 12 at 7, ¶ 47. Thus, it was clearly the government's orders that caused the closures. Ironically, Zurich later argues in its motion for summary judgment that the government orders "responded to a public health crisis," and were not related to any damage at the Plaintiffs' properties. ECF Doc. 14 at 16. This argument seems to undermine the purpose of the Microorganism exclusion which was plainly to exclude coverage for damage caused by microorganisms *at* the Plaintiffs' properties.

The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect. *Lane v. Grange Mut. Cos.,* 45 Ohio St. 3d at 65, citing *American Financial Corp. v. Fireman's Fund Ins. Co.,* 15 Ohio St. 2d 171, 239 N.E. 2d 33 (1968). Here, Plaintiffs' argument prevails because the Microorganism exclusion does

not clearly exclude loss of property caused by a government closure. Plaintiffs' restaurants were not closed because there was an outbreak of COVID-19 at their properties; they were closed as a result of governmental orders. Because Zurich's Microorganism exclusion did not identify the possibility that, even absent "the presence, growth, proliferation, spread, or any activity of **"microorganisms"** damaging the Plaintiffs' properties, the Plaintiffs may be required to close their dine-in restaurants due to government orders responding to a public health crisis, the Microorganism Exclusion does not apply.

**\*15** Going forward, Zurich could undoubtedly include an exclusion for government closures in its policies. But the Policy that Plaintiffs purchased did not contain such an exclusion. Thus, it would be contrary to Ohio's laws of contract interpretation to apply the Microorganism Exclusion to the unprecedented government closures that occurred in 2020, particularly when the parties have stipulated that their premises were not closed as the result of known or confirmed presence of COVID-19 at any of the premises. ECF Doc. 12 at 7, ¶ 47. This is the conclusion that must be reached under Ohio law because the Policy's language did not clearly identify the unusual and unforeseeable events that led to the closings of Plaintiffs' properties. Nor could Plaintiffs have been aware of such an exclusion when they purchased a policy and paid premiums to Zurich for coverage.

This interpretation is further supported by the fact that, in 2006, when insurers sought approval from the Ohio Department of Insurance for the Microorganisms exclusion, they explained that, despite the broad language of the exclusion, they were seeking to avoid coverage for "viral and bacterial contamination" of properties. Zurich argues that Ohio law has not recognized the doctrine of regulatory estoppel. ECF Doc. 16 at 12. That may be. But, at the least, the 2006 representations to the Ohio Department of Insurers show the insurers' intent in adding the Microorganisms exclusion to their policies. They were attempting to exclude coverage for property damage caused by the contamination of viruses and bacteria on the insureds' premises, not the loss of business income caused by a government closure. And here, the Plaintiffs' properties were not damaged by the contamination of a virus or bacteria.

Zurich argues that the anti-concurrent causation language in the Microorganism exclusion further supports its position. Zurich cites the Microorganism exclusion's language stating that "regardless of any other cause or event… that *contributes concurrently or in any sequence to* the loss, *even if such other cause or event would otherwise be covered."* But this argument is dependent on a finding that Microorganisms caused, at least in part, damage to Plaintiffs' property. Such a finding would be contrary to the parties' stipulation that none of Plaintiffs' restaurants "were closed as the result of the known or confirmed presence of SARS-CoV-2 or COVID 19 at any of the Insured Premises." ECF Doc. 12, ¶44. Similarly, *Boughan v. Nationwide Property & Cas. Co.,* No. 1-04-57, 2005-Ohio-244, 2005 Ohio App. LEXIS 179 at \*10 (3rd Dist.), the Ohio case cited by Zurich stating that "Ohio courts look to the underlying cause of loss" is inapposite because the *Boughan* decision was based on the recognized application of the policy's exclusion to the insureds' damages – settling floors and rotting floorboards. The anti-concurrent language of the exclusion does not apply *here* because it cannot be said that one of the causes of loss was contamination of COVID-19 on the Plaintiffs' premises, a fact to which Zurich has stipulated.

Under Ohio law, the Court must attempt to construe an exclusion, not in conformity with "what the insurer now says it intended the words to mean," but "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Bluemile, Inc., Atlas Indus. Contrs, Ltd.,* Nos. 16AP-789, 16AP-791, ¶ 24, 2017-Ohio-9196, 102 N.E.3d 579 (10th Dist.). Here, we know that insurers included the Microorganism exclusion in their polices to exclude coverage for damage to properties caused by the contamination of viruses or bacteria *on the premises.* And, the parties have stipulated to the fact that COVID-19 did not contaminate the Plaintiffs' premises. ECF Doc. 12, ¶44. Thus, in conformance with the parties' intentions and Ohio's laws of contract interpretation, the Court finds that the Microorganism Exclusion does not exclude business income coverage in this case.

**2. Loss of Use Exclusion.**

**\*16** In their motion for summary judgment, Plaintiffs anticipated that Zurich would argue that that the "Loss of Market or Delay" exclusion will exclude coverage in this case. Zurich did not actually argue this exclusion in its motion, but in subsequent filings it takes up this argument. See ECF Doc. 16 at 14. The "Loss of Market or Delay" exclusion provides:

> We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction."**

ECF Doc. 12-1 at 106. Plaintiffs argue that this exclusion does not apply because, if it did, it would void business income coverage in its entirety. Plaintiff cites case law (later vacated by agreement of the parties) finding a similar exclusion inapplicable because it would have vitiated the policy's business income coverage. *Oregon Shakespeare Festival Ass'n, v. Great Am. Ins. Co.,* Case No. 1:15 cv 1932-CL, 2016 U.S. Dist. LEXIS 74450 at *15 (D. Or. June 7, 2016).

Zurich argues that this provision would not bar coverage when there is physical damage caused by a covered peril, such as a fire, that closes a restaurant while it is being repaired. ECF Doc. 16 at 14. But that is not at all clear from a plain reading of the Loss of Market or Delay exclusion. In fact, this exclusion *could* be argued to exclude coverage if an insured lost the use of property. The Business Income Coverage provides that Zurich will pay for "loss of business income" sustained "due to the necessary suspension of operations caused by direct physical loss of or damage to property". Here, the Loss of Use exclusion *would* vitiate the Loss of Business Income coverage. Moreover, Zurich did not even argue that this exclusion applied until after Plaintiffs argued that it didn't. Because the Policy must be read in its entirety and disputed terms interpreted in a manner calculated to give the agreement its intended effect, the "Loss of Use" exclusion does not exclude coverage under the Business Income coverage of the Policy. *See Karabin v. State Auto. Mut. Ins. Co.,* 10 Ohio St. 3d 163, 167, 462 N.E. 2d 403, 406 (1984), quoting *German Fire Ins. Co. v. Roost,* 55 Ohio St. 581, paragraph one of the syllabus (1897). Because the Policy provides coverage and none of the exclusions apply, Plaintiffs are entitled to summary judgment on the coverage issues alleged in Counts I and III of their complaint.

**E. Bad Faith**

Count II of Plaintiffs' complaint is a bad faith claim based on Zurich's denial of coverage. It is well established that an allegation of bad faith made against an insurer for its handling a claim for coverage will survive only if the record shows that there were no circumstances in the case which could be viewed as creating a reasonable justification for that carrier's actions. *See Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 644 N.E.2d 397, paragraph one of the syllabus (1994). Plaintiffs have requested additional time to conduct discovery on the issue of bad faith. However, no amount of discovery would change the fact that Zurich had a reasonable justification for determining that there was no coverage under its Policy.

Although this Court disagrees with the holding in Zurich's supplemental authority, it does illustrate that Zurich had a reasonable justification for denying coverage. Other courts have agreed with the arguments asserted by Zurich and found in favor of insurers. Zurich denied coverage based on its own interpretation of the Policy. Because the Policy was susceptible to more than one interpretation, it must be construed in favor of Plaintiffs as this Court has done in accordance with Ohio law. However, given the "growing consensus of courts" that have rejected COVID-19 business interruption claims, it cannot be said that Zurich did not have a reasonable justification for denying coverage. Because Zurich had a reasonable justification for denying coverage, it is entitled to summary judgment on plaintiff's bad faith claim as a matter of law. *See Addington v. Allstate Ins. Co.,* 142 Ohio App.3d 677, 681, 756 N.E.2d 750 (9th Dist. July 5, 2001) (holding that, as a matter of law, Allstate had not acted in bad faith by denying coverage at a time when the district had rejected similar insurance claims.) No amount of discovery would change the Court's ruling on this claim.

**IV. Conclusion**

**\*17** Based on the foregoing, the Court GRANTS, in part and DENIES, in part, Plaintiffs' (ECF Doc. 15) and Defendant's (ECF Doc. 14) Motions for Summary Judgment. The Court GRANTS summary judgment to Plaintiffs on the insurance coverage issue alleged in Counts I and III of their complaint and DENIES summary judgment on Plaintiffs' bad faith claim in Count II. Conversely, the Court DENIES summary judgment to Defendant Zurich on Counts I and III of Plaintiffs' complaint and GRANTS summary judgment on Plaintiffs' bad faith claims.

The Court's order on Counts II and III is final and appealable. The Court's order on Plaintiffs' Count I - breach of contract claim is not final and appealable because damages have not yet been determined. The Court and parties agreed to

accelerate the legal issues in this litigation before conducting discovery on damages. Because Count I involves a controlling question of law as to which there is substantial ground for difference of opinion and because an immediate appeal from this order may materially advance the ultimate termination of the litigation, I hereby certify the legal issue in Count I for interlocutory appeal pursuant to 28 U.S.C.S. § 1292(b). This will permit the immediate appeal of the Court's opinion. And an immediate appeal of the legal issues in this case would accelerate the final disposition of this case and, if affirmed, provide the most expedient path to the economic relief sought by Plaintiffs.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster* ___

**Dan Aaron Polster**

**United States District Judge**

**All Citations**

Slip Copy, 2021 WL 168422

## Footnotes

1 Plaintiffs are now permitted, in some capacity, to operate their restaurants in Ohio, Indiana, Michigan, Pennsylvania, and Florida with in-person dining. ECF Doc. 15-1 at ¶7.
2 The Policy is located in ECF Doc. 12-1.
3 The statement of arguments identifies the main arguments in the parties' filings, which speak for themselves. The Court has only paraphrased the parties' arguments and has not attempted to exhaustively restate them herein. However, the Court has fully considered the thorough arguments asserted in the parties' filings.
4 The Court applies "the law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir. 1995) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). "If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from all relevant data." *Id.* (internal quotation marks and citation omitted). "[A]n intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *FL Aerospace v. Aetna Cas. & Sur. Co.,* 897 F.2d 214, 218-19 (6th Cir. 1990) (internal quotation marks and citation omitted).
5 It is unclear why the *Mastellone* court found that "physical loss to property" equated to "physical injury. *Id.* at ¶ 60.
6 It is not necessary to evaluate whether the additional "Civil Authority" coverage provides coverage because general coverage exists under the Business Income Coverage Form. ECF Doc. 12-1 at 168.
7 https://www.merriam-webster.com/dictionary/physical
8 https://www.merriam-webster.com/dictionary/loss
9 https://www.merriam-webster.com/dictionary/damage
10 https://www.merriam-webster.com/dictionary/property
11 https://www.merriam-webster.com/dictionary/fortuitous

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.