IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRESCENT PLAZA HOTEL OWNER L.P., individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.  20 C 3463 |
| v. | ) ) | Judge Robert W. Gettleman |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Crescent Plaza Hotel Owner L.P., individually and on behalf of all others

similarly situated, has brought a sixteen count first amended putative class action complaint

against its insurer, defendant Zurich American Insurance Company, seeking a declaration that

defendant must provide coverage to plaintiff under the policies in question for losses plaintiff

sustained due to COVID-19 and civil authority closure orders intended to slow the spread of the

Coronavirus and COVID-19, as well claims for breach of contract for failing to provide such

coverage.   Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim.   For the reasons set forth below, the court grants defendant's motion.

## BACKGROUND

Plaintiff owns the Ritz-Carlton Hotel in Dallas, Texas, which is operated by Marriott

International, Inc. pursuant to an operating agreement with plaintiff.   Marriott purchased

property insurance policies for 2019-2020 and 2020-2021 from defendant.to cover physical loss

or damage to property and associated business losses at certain Marriott-branded hotels.

Plaintiff claims to be an additional insured on those policies.

On March 12, 2020, Judge Clay Jenkins declared a public health emergency in Dallas County, Texas due to the spread of the coronavirus. In the following weeks Judge Jenkins issued multiple orders limiting restaurant service to take-out or delivery and closing bars, lounges, taverns, arcades, private clubs, and gyms, to help slow the spread of the virus and to safeguard public health and safety. Hotels were allowed to operate so long as fifty or more people were not in a single enclosed area at one time. On March 24, 2020, Judge Jenkins ordered non-essential businesses in Dallas County to cease operations except for work at home. Hotels were designated essential businesses for lodging and delivery or carry-out food services, but were required to comply with social distancing rules to the greatest extent possible, including maintaining six feet social distancing. These rules remained in place until May,15, 2020, when a more limited order was issued, focusing on individuals with COVID-19 symptoms and lifting all restrictions on hotels. Texas Governor Greg Abbott also issued multiple executive orders during this period in an attempt to stop the spread of the virus, but none directly required hotels to cease operating or to limit the number of guests served.

### DISCUSSION

Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The purpose of such a motion is to test the sufficiency of the complaint, not to judge the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. McMillan v. Collection Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must plead sufficient facts to plausibly suggest that plaintiff has a right to

relief and raise that possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff asserts claims for breach of contract and declaratory judgment under nine separate coverage provisions, seeking payment from defendant for losses allegedly caused by the limitations on its operations resulting from COVID-19 and the various government orders issued to restrict its spread. Each of the provisions requires "direct physical loss or damage" to insured property to trigger coverage. Defendant argues that plaintiff has failed to allege any direct physical loss or damage to the hotel property.

In Illinois, the construction of an insurance policy is a question of law.[1] Country Mut. Ins. Co. v. Livorsi Marine, Inc., 856 N.E.2d 338, 342 (Ill. 2006). An insurance policy is to be construed as a whole, "giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." Valley Forge Ins. Co. v. Swiderski Elecs., Inc., 860 N.E.2d 307, 314 (Ill. 2006). "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." Cent. Ill. Light Co. v. Home Ins. Co., 821 N.E.2d 206, 213 (Ill. 2004). However, "[a] policy provision is not rendered ambiguous simply because the parties disagree as to its meaning." Founders Ins. Co. v. Munoz, 930 N.E.2d 999 (Ill. 2010).

This is not the first time this court has addressed whether civil closure orders cause a "direct physical loss" to property. In Sandy Point Dental, PC v. Cincinnati Insurance Company, ___F.3d ___, 2020 WL 5630465, at *2 (N.D. Ill Sept. 21, 2020), the court stated:

___

1 Defendant suggests that Texas law should apply, but agrees that there is no conflict between Texas and Illinois law that would be outcome determinative and, as a result, the court can apply Illinois law as it is the law of the forum. See NAR Bus. Park, LLC v. Ozark Auto Distbs., LLC, 430 F. Supp. 3d 443, 451 (N.D. Ill. 2019).

The critical policy language here—"direct physical loss"—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words "direct" and "physical," which modify the word "loss," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure. See Newman Myers Kreines Gross, P.C. v. Great Northern Ins. Co., 17 F.Supp.3d 323 (S.D.N.Y. 2014) (law firm did not suffer "direct physical loss" when electric utility preemptively shut off power in advance of Hurricane Sandy). Plaintiff simply cannot show any such loss as a result of either inability to access its own office or the presence of the virus on its physical surfaces, the latter of which plaintiff fails to allege in its complaint. Plaintiff has not pled any facts showing physical alteration or structural degradation of the property. Nothing about the property has been altered since March 2020. Plaintiff need not make any repairs or change any part of the building to continue its business. Compare Id. (explaining that "repair" and "replace" in period of restoration clause "contemplate physical damage to the insured premises as opposed to loss of use of it"); with Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co., 720 N.E.2d 622, 625-26 (Ill. Ct. App. 1999), as modified on denial of rehearing (Dec. 3, 1999) (finding physical damage to the property, and thus coverage, because plaintiff was required to conduct repairs and remove asbestos-causing materials from the premises).

Plaintiff attempts to distinguish Sandy Point by arguing that it has alleged that it performed "repairs" to the property, including installing special air filters, plexiglass partitions and protection shields at the front and bell desks, as well as installing hand sanitizers in certain areas of the hotel, and that those repairs demonstrate that the presence of CIVID-19 altered the physical space of the property, causing "physical loss or damage." The court rejects this attempted distinction. As in Sandy Point, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. As this court has held, "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property." Sandy Point, 2020 WL 5630465 at *3.

Plaintiff also argues that the court should follow the decision in Studio 417, Inc. v. Cincinnati Insurance Co., 478 F. Supp.3d 794 (W.D. Mo. 2020), which found that the

4

coronavirus caused a physical loss to property warranting coverage.    To the extent that the case can be read to hold that a physical loss occurs whenever a property is uninhabitable or unusable for its intended purpose, regardless of any actual physical damage, this court respectfully disagrees.    As noted by Judge Kocoras in Bradley Hotel Corp. v. Aspen Specialty Ins. Co., ___ F. Supp.3d ___, 2020 WL 7889047, at *3 (N.D. Ill. Dec. 22, 2020), the overwhelming majority of courts have found no coverage when interpreting similar language.    See T & E Chicago LLC v. Cincinnati Ins. Co., ___ F. Supp.3d ___, 2020 WL 6801845 at *4 (N.D. Nov. 19, 2020) (collecting cases).

Finally, plaintiff argues that the use of the disjunctive in "direct physical loss or damage" requires that "loss" and "damage" be interpreted differently.    According to plaintiff, the term "loss" provides coverage when there was no structural alteration to the property, such as when there is a mere loss of use.    Any other interpretation would, plaintiff argues, render "loss" and "damage" redundant.    Once again, the court disagrees.    The plain wording of the phrase requires either a permanent disposition of the property due to a physical change ("loss"), or physical injury to the property requiring repair ("damage").    See Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am., 2020 WL 6503405 at *5 (S.D. Miss. Nov. 4, 2020).    Plaintiff has not and cannot allege either.    Consequently, plaintiff has failed to allege "direct physical loss or damage," a prerequisite for coverage.    Defendant's motion to dismiss is granted.

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss [Doc. 35] is granted.


**ENTER:**


Robert W. Gettleman
**United States District Judge**


**DATE: February 18, 2021**


6